## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| NO SPILL INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-2683 JAR/KGG |
| | ) | |
| SCEPTER CORPORATION and | ) | |
| SCEPTER MANUFACTURING LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM, OR ALTERNATIVELY, TO TRANSFER TO THE DISTRICT OF DELAWARE

# TABLE OF CONTENTS

Page

I.  NATURE OF THE MATTER BEFORE THE COURT ...................................................1

II.  CONCISE STATEMENT OF FACTS .............................................................................2

III.  QUESTIONS PRESENTED ............................................................................................3

IV.  ARGUMENT ...................................................................................................................3

A.  The District of Kansas Has No Personal Jurisdiction over Scepter
Corporation ...........................................................................................................3

1.  No Spill bears the burden of establishing that the District of
Kansas has personal jurisdiction over Scepter Corporation. ......................3

2.  Scepter Corporation is not "at home" in Kansas, thus there is no
general jurisdiction. ....................................................................................5

3.  No Spill cannot establish personal jurisdiction over Scepter
Corporation based on the acts of Scepter Manufacturing. ..........................5

B.  The Patent Claims Should Be Dismissed Because No Spill Knew or
Should Have Known That It Filed Suit in an Improper Forum .............................7

C.  No Spill Fails to Adequately Plead a Breach, Thus Its Contract Claims
Should Be Dismissed ............................................................................................8

1.  No Spill fails to plead adequate facts to support a breach of
contract based on failure to meet production requirements. .......................9

2.  No Spill fails to plead adequate facts to support a breach of
contract based on failure to sell the Bekum molding machine. ................11

D.  No Spill Does Not and Cannot Adequately Plead Distinctiveness and Non-
Functionality, Thus Its Trade Dress Claims Should Be Dismissed .....................12

1.  The features of No Spill's alleged "trade dress." ....................................13

2.  No Spill's alleged gas can design is functional on its face and the
Complaint contains no factual allegations demonstrating otherwise. ........14

3.  No Spill fails to adequately plead that its gas can design has
acquired distinctiveness. ..........................................................................16

E.   The Entire Case Should Be Dismissed, or Alternatively, Transferred to the District of Delaware Where Venue Is Proper. ........................................................19

    1.   Plaintiff's choice of forum is entitled to little weight. ..............................20

    2.   Convenience of witnesses strongly favors transfer....................................21

    3.   Judicial economy strongly favors transfer. .................................................22

    4.   Neither court has an appreciably more congested docket..........................22

    5.   The remaining factors cannot overcome the significant efficiency gained by transfer.........................................................................................22

V.   CONCLUSION..............................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................7, 9

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) ...................................................................................4

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) ...................................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................................9

*Bovino v. Incase Designs Corp.*,
  No. 13-cv-2106-WJM-MJW, 2014 WL 1796914 (D. Colo. May 6, 2014) ............21

*C5 Med. Werks, LLC v. CeramTec GmbH*,
  249 F. Supp. 3d 1210 (D. Colo. 2017) ......................................................................12

*Callahan v. Bledsoe*,
  No. 16-CV-2310-JAR-GLR, 2017 WL 1303269 (D. Kan. Apr. 6, 2017) ..............21

*Celgard, LLC v. SK Innovation Co., Ltd.*,
  792 F.3d 1373 (Fed. Cir. 2015) ...........................................................................3, 4, 6

*Cryovac, Inc. v. Pechiney Plastics Packaging, Inc.*,
  No. Civ. A. 04-1278-KAJ, 2006 WL 1493840 (D. Del. May 25, 2006) ................22

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  No. CV 15-769 PSG, 2015 WL 12731929 (C.D. Cal. May 8, 2015) ......................15

*Diaz-Oropeza v. Riverside Red X, Inc.*,
  No. 11-2012-JTM, 2011 WL 2580167 (D. Kan. June 28, 2011) ..............................8

*Dinkum Sys., Inc. v. Woodman Labs, Inc.*,
  No. 14-CV-00152-PAB-KMT, 2014 WL 4437310 (D. Colo. Sept. 8, 2014) ..................14, 16

*Domo, Inc. v. Grow, Inc.*,
  No. 2:17-CV-812, 2018 WL 2172937 (D. Utah May 10, 2018) ...........................14, 15, 17, 18

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ...................................................................................4

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ............................................................20

*Forney Indus., Inc. v. Daco of Mo., Inc.*,
    835 F.3d 1238 (10th Cir. 2016) ...........................................12, 17, 18, 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..........................................................................4, 5, 6

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012).................................................................6

*Hammerton, Inc. v. Heisterman*,
    No. 2:06-CV-00806 TS, 2008 WL 2004327 (D. Utah May 9, 2008).....................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................6

*Ingenito v. Riri USA, Inc.*,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) .......................................................5

*Inspired By Design, LLC v. Sammy's Sew Shop, LLC*,
    No. 16-CV-2290, 2016 WL 6093778 (D. Kan. Oct. 19, 2016) .........................18, 19

*Int'l Shoe Co. v. Washington*,
    326 U.S. 210 (1945)..................................................................................4

*Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*,
    No. 17-2666-JAR-GLR, 2018 WL 3744060 (D. Kan. Aug. 7, 2018) ..............12, 14

*Mike Vaughn Custom Sports, Inc. v. Piku*,
    15 F. Supp. 3d 735 (E.D. Mich. 2014).................................................14

*Millett v. Truelink, Inc.*,
    No. Civ. 05-599-SLR, 2006 WL 2583100 (D. Del. Sept. 7, 2006) .........................23

*Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N.A.*,
    No. 10-1346-SAC, 2011 WL 915392 (D. Kan. Mar. 15, 2011) .....................21, 22

*Quarles v. Fuqua Indus., Inc.*,
    504 F.2d 1358 (10th Cir. 1974) ................................................................7

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998).................................................................4

*Sally Beauty Co. v. Beautyco, Inc.*,
    304 F.3d 964 (10th Cir. 2002) ..............................................................17

*Savant Homes, Inc. v. Collins,*
 809 F.3d 1133 (10th Cir. 2016) ...............................................................12, 17, 18

*Smalls v. Stermer,*
 No. 10-3025-JTM, 2011 WL 1234781 (D. Kan. Mar. 31, 2011) ............................7

*Sprint Comm'n, L.P. v. Cox Comm'n, Inc.,*
 896 F. Supp. 2d 1049 (D. Kan. 2012)........................................................... *passim*

*Swierkiewicz v. Sorema N.A.,*
 534 U.S. 506 (2002)..............................................................................................8

*TC Heartland LLC v. Kraft Foods Group Brand LLC,*
 137 S. Ct. 1514 (2017)..........................................................................................8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
 532 U.S. 23 (2001)..................................................................................14, 16, 19

*Trujillo v. Williams,*
 465 F.3d 1210 (10th Cir. 2006) ............................................................................8

*Virgin Scent, Inc. v. Bel Air Naturals Care Corp.,*
 No. 17-08284-AB, 2018 WL 5264145 (C.D. Cal. Feb. 8, 2018) ..........................14

*Wal-Mart Stores v. Samara Bros., Inc.,*
 529 U.S. 205 (2000)............................................................................................17

*Winning Ways, Inc. v. Holloway Sportswear, Inc.,*
 913 F. Supp. 1454 (D. Kan. 1996) ......................................................................18

## STATUTES

15 U.S.C. § 1125(a)(3)..............................................................................................14

28 U.S.C. § 1404(a) .............................................................................................20, 21

Iowa Code Ann. § 214A.15 .................................................................................16, 19

## RULES

Fed. R. Civ. Proc. 8(a)(2)............................................................................................8

Fed. R. Civ. Proc. 12(b)(2) .........................................................................................7

Fed. R. Civ. Proc. 12(b)(3) .........................................................................................7

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................15

## REGULATIONS

29 C.F.R. § 1910.144 .................................................................................................................16, 19

## I.     NATURE OF THE MATTER BEFORE THE COURT

This case involves three types of claims (patent, contract, and trade dress) all related to the same subject matter—portable plastic fuel containers manufactured by Scepter Manufacturing, LLC ("Scepter Manufacturing").  But the central claims in this case are the patent claims, asserted only against Scepter Corporation, which is a Canadian corporation that no longer exists.  As such, this case does not belong in this District.

The District of Kansas cannot exercise personal jurisdiction (either general or specific) over Scepter Corporation.  As to general jurisdiction, Scepter Corporation has not been operating for almost five years.  Thus, Scepter Corporation has no "systematic and continuous" contacts that would render Kansas its home, nor does No Spill allege so.  As to specific jurisdiction, No Spill only alleges that the patent claims arise from Scepter Corporation's "direction and control" of Scepter Manufacturing.  But, even if Scepter Corporation did exist (and it does not), No Spill fails to allege any facts to support such allegations.  And, even if No Spill could allege such facts (which it cannot), they would be insufficient to confer personal jurisdiction over Scepter Corporation because separate corporate entities are treated as such unless evidence justifies disregard of the corporate form.

The remaining nominal contract and trade dress claims (tacked on to the patent claims in a failed attempt to maintain jurisdiction in this District) are similarly deficient.  As to the contract claims, No Spill fails to allege sufficient facts to support a claim for breach.  As to the trade dress claims, No Spill fails to plead distinctiveness and non-functionality required for trade dress.

Accordingly, this entire case should be dismissed for lack of personal jurisdiction and failure to state a claim.  But to the extent these claims survive dismissal, this Court should transfer

this entire case to the District of Delaware where the forum is proper and these claims can be efficiently litigated together.

## II.    CONCISE STATEMENT OF FACTS

1.     The Complaint includes six claims: two patent infringement claims asserted against Scepter Corporation (Doc. 1 ¶¶ 56-73), two breach of contract claims asserted against Scepter Manufacturing (*id.* ¶¶ 74-132), and two trade dress claims asserted against both Scepter Manufacturing and Scepter Corporation (*id.* ¶¶ 133-149).

2.     Scepter Manufacturing is incorporated in and exists under the laws of Delaware and maintains its principal place of business in Miami, Oklahoma. *Id.* ¶ 2.  Its parent, Scepter US, is incorporated in and exists under the laws of Ohio and maintains its principal place of business in Akron, Ohio. *Id.* ¶ 3.

3.     Scepter Manufacturing is a wholly-owned subsidiary of Scepter US. *Id.* ¶ 2. Scepter US is a wholly-owned subsidiary of Myers Industries, Inc. ("Myers Industries"). *Id.* The "Scepter" brand is known as a leading producer of portable plastic fuel containers, portable marine fuel tanks and water containers, ammunition containers, and storage totes. *Id.*, Attachment A at 4.

4.     Scepter Corporation was an Ontario, Canada corporation that no longer exists today. *Id.* ¶ 6.  In 2014, Myers Industries completed its acquisition of Scepter Corporation, transferring substantially all assets of Scepter Corporation to CA Acquisitions Inc., an Ontario, Canada corporation that was later named Scepter Canada Inc. ("Scepter Canada"). *Id.*; *see also id.*, Attachment B.  As part of the Asset Purchase Agreement, Scepter Corporation changed its name to 1216037 Ontario, Inc., a numbered Ontario corporation. *Id.*, Attachment B at 55.  Scepter Canada is a wholly-owned subsidiary of Myers Industries. *Id.* ¶ 5.

5.      On March 4, 2019, counsel for Scepter Manufacturing notified counsel for No Spill that the District of Kansas was not a proper forum for the asserted patent infringement claims for lack of personal jurisdiction.  Declaration of Lisa K. Nguyen ("Nguyen Decl."), Ex. A.  On March 8, 2019, counsel for No Spill responded: "We are reviewing and will respond to your assertions at the appropriate time."  *Id.*, Ex. B.  No Spill has provided no further response.

## III.    QUESTIONS PRESENTED

1.      Can the District of Kansas assert personal jurisdiction over Scepter Corporation, an Ontario corporation that no longer exists?

2.      Should the contract claims be dismissed for failure to adequately plead a breach?

3.      Should the trade dress claims be dismissed for failure to adequately plead distinctiveness and non-functionality?

4.      In the event that the claims survive dismissal, should this entire case be transferred to the District of Delaware where venue is proper and all claims can be litigated together?

## IV.    ARGUMENT

### A.    The District of Kansas Has No Personal Jurisdiction over Scepter Corporation

The patent claims should be dismissed because the District of Kansas cannot assert personal jurisdiction over Scepter Corporation.[1]

#### 1.    No Spill bears the burden of establishing that the District of Kansas has personal jurisdiction over Scepter Corporation.

As plaintiff, No Spill bears the burden of showing that jurisdiction is proper.  *Celgard, LLC*

---

[1] Further, substituting Scepter Corporation with its successor in business, Scepter Canada, would be futile.  Scepter Canada likewise has no contacts with Kansas to support the exercise of either general or specific personal jurisdiction in this District.  *See* Marshall Decl. ¶¶ 8-9.

*v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).[2]  The personal jurisdiction determination for an out-of-state defendant is a two-step inquiry: "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). "The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, therefore the Court proceeds directly to the constitutional analysis." *Sprint Comm'n, L.P. v. Cox Comm'n, Inc.*, 896 F. Supp. 2d 1049, 1055 (D. Kan. 2012).

"Due process requires that the defendant have sufficient 'minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Celgard*, 792 F.3d at 1377 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 210, 316 (1945)).  "Minimum contacts" can be established either by general or specific jurisdiction.  *Sprint*, 896 F. Supp. 2d at 1055.  General jurisdiction exists only where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  "Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  *Sprint*, 896 F. Supp. 2d at 1055 (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008)). Here, No Spill does not and cannot allege any contacts, let alone minimum contacts, to support general or specific jurisdiction over Scepter Corporation.

---

[2] The Court "applies the law of the Federal Circuit, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).

### 2. Scepter Corporation is not "at home" in Kansas, thus there is no general jurisdiction.

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. Generally, a corporation's "home" refers to its "domicile, place of incorporation, and principal place of business." *Id.* To establish general jurisdiction, the plaintiff must show that the "affiliations with [a forum] are so 'continuous and systematic' as to render [the defendant] essentially home" there. *Id.* Here, No Spill does not and cannot allege that Scepter Corporation has continuous and systematic contacts with the District of Kansas, because it no longer exists and has not been operating for almost five years. Marshall Decl. ¶ 6.

In *Ingenito v. Riri USA, Inc.*, the district court determined whether it could exercise personal jurisdiction over Riri Group, which "was, at one time, a separate corporate entity, but was merged . . . [and] no longer exists as an entity incorporated in any jurisdiction." 89 F. Supp. 3d 462, 469 (E.D.N.Y. 2015). As it no longer existed, Riri Group did "not do business in the state," was "not a taxable entity," and did "not have income, assets, employees, or any separate business of its own." *Id.* The district court found no personal jurisdiction, concluding that Riri Group SA was not a legal entity and "[e]ven assuming Riri Group did exist as a separate entity, Plaintiff ha[d] alleged no facts that would support a finding of jurisdiction." *Id.* at 474. The same conclusion follows here. Scepter Corporation does not exist, and even if it did, No Spill has not (because it cannot) alleged facts to support general jurisdiction.

### 3. No Spill cannot establish personal jurisdiction over Scepter Corporation based on the acts of Scepter Manufacturing.

Specific jurisdiction is confined to the adjudication of issues that "aris[es] out of or relate[s]

to the defendant's contacts with the forum." *Goodyear*, 564 U.S. at 923 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).   Specific jurisdiction is determined by applying a three-part test:  "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard*, 792 F.3d at 1378 (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012)).   As discussed above, Scepter Corporation no longer exists, and therefore, does not and cannot purposefully direct its activities at Kansas.  Thus, assertion of specific jurisdiction fails at the first prong of the test.

Further, No Spill fails at the second prong of the test.   To establish direct patent infringement, there must be "some act of making, using, offering to sell, selling, or importing products or services by the defendant [that] constitutes an infringement of the presumptively valid patent named in the suit."  *Sprint*, 896 F. Supp. 2d at 1063.   As such, "the patent infringement claims in this case must 'arise out of and relate to the defendant's alleged manufacturing, using, or selling of the claimed invention' in order to establish specific jurisdiction." *Id.* (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)).   Here, No Spill's patent claims do not arise from such activities by Scepter Corporation in this District.   Rather, No Spill alleges that they arise from Scepter Corporation's activities with Scepter Manufacturing, a Delaware corporation based in Oklahoma, not named as a defendant to the patent claims.   Thus, the second prong of the specific jurisdiction test is not met.

To the extent that No Spill attempts to confer specific jurisdiction over Scepter Corporation through the acts of Scepter Manufacturing, that also fails.   The only allegation in the Complaint

that relates to personal jurisdiction over Scepter Corporation is a single conclusory and unsupported statement:

> The Court has personal jurisdiction over Scepter, an alien, because Scepter has transacted business and/or committed tortious acts and/or participated in, directed, controlled and actively aided and abetted the commission of tortious acts within the State of Kansas out of which this action arises.

Doc. 1 ¶ 5. But a legal conclusion by itself is insufficient to support personal jurisdiction as a matter of law. "While legal conclusions can provide the framework of a complaint, ***they must be supported by factual allegations***." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added). No Spill does not allege such facts.

Regardless, even if No Spill could allege such facts (which it cannot), jurisdiction over Scepter Corporation cannot be based on the activities of Scepter Manufacturing without evidence justifying disregard of the corporate form. It is a "well-settled proposition that a 'holding or parent company has a separate corporate existence from its subsidiary and is thus treated separately in the absence of circumstances justifying the disregard of the corporate entity.'" *Sprint*, 896 F. Supp. 2d at 1057 (quoting *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974)). Here, No Spill has alleged no facts regarding the relationship between Scepter Corporation and Scepter Manufacturing, let alone facts justifying the disregard of the corporate structure. Accordingly, this District cannot exercise specific jurisdiction over Scepter Corporation.

### B.      The Patent Claims Should Be Dismissed Because No Spill Knew or Should Have Known That It Filed Suit in an Improper Forum

The patent claims should be dismissed because No Spill should have realized the District of Kansas is an improper forum for the patent claims. Once a court determines that a Rule 12(b)(2) or 12(b)(3) motion to dismiss is appropriate, "the court is faced with two options: dismiss plaintiff's claims against [defendants] or transfer the case to the proper jurisdiction." *Smalls v. Stermer*, No. 10-3025-JTM, 2011 WL 1234781, at *6 (D. Kan. Mar. 31, 2011). When deciding

whether to dismiss or transfer, a court looks at several factors, including "whether the original action was filed in good faith rather than filed after 'plaintiff either realized or should have realized that the forum in which he or she filed was improper.'" *Diaz-Oropeza v. Riverside Red X, Inc.*, No. 11-2012-JTM, 2011 WL 2580167, at *5 (D. Kan. June 28, 2011); *Trujillo v. Williams*, 465 F.3d 1210, 1223 n. 16 (10th Cir. 2006). Here, No Spill almost certainly knew that the District of Kansas is an improper forum for such claims.

No Spill admits that Scepter Manufacturing allegedly infringes its patent claims, not Scepter Corporation. Doc. 1 ¶ 23. Thus, No Spill knew that Scepter Manufacturing should have been named as a defendant for the patent claims in this action, not Scepter Corporation. But this District is not a proper forum for patent claims against Scepter Manufacturing due to recent Supreme Court precedent.[3] Rather than assert the patent claims against Scepter Manufacturing in a forum where both jurisdiction and venue are proper, No Spill alleged patent claims against Scepter Corporation (without factual support) in an attempt to manufacture jurisdiction over those claims in this District. Such action is improper, and should be deterred by dismissal.

### C.   No Spill Fails to Adequately Plead a Breach, Thus Its Contract Claims Should Be Dismissed

No Spill alleges two counts of contract breach:  failure to meet production requirements and refusal to honor a purchase option for a mold machine. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The

---

[3] The Supreme Court in *TC Heartland LLC v. Kraft Foods Group Brand LLC*, 137 S. Ct. 1514 (2017), narrowed proper venue in a patent case to the defendant's place of incorporation or regular and established place of business. Scepter Manufacturing indisputably meets neither requirement. Marshall Decl. ¶¶ 2, 11.

determination of the sufficiency of a claim is a two-step process.  First, the court must determine if the allegations are factual and entitled to an assumption of truth or merely legal conclusions that are not entitled to an assumption of truth.  *Iqbal*, 556 U.S. at 679.  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."  *Id.*  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires more than "a sheer possibility."  *Iqbal*, 556 U.S. at 678.  Thus "a formulaic recitation of the elements of a cause of action," standing alone, is insufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.  Here, No Spill fails to plead facts for either of its contract claims that would constitute more than "a sheer possibility" of breach.

### 1.  No Spill fails to plead adequate facts to support a breach of contract based on failure to meet production requirements.

No Spill first alleges breach of contract for failure to meet production requirements by refusing to keep the required level of truck load inventory on hand (Doc. 1 ¶ 103), refusing to supply order quantities submitted (*id.* ¶ 104), and refusing to manufacture No Spill's orders on weekends without additional charge (*id.* ¶ 106).  But none of these claims are adequately pled.

With respect to inventory on hand, No Spill never alleges any facts as to the level of inventory Scepter Manufacturing maintained nor how that level breached the requirements.  In particular, No Spill identifies three provisions allegedly breached by Scepter Manufacturing:

> 86.  Pursuant to the Supply Agreement, defendant Scepter Manufacturing agreed to: ". . . stock approximately eight (8) to ten (10) truck-loads of Product and all production will be made to purchase order based on a fourteen (14) day lead time. The initial purchase order of eight (8) to ten (10) truck loads will be warehoused by Supplier. This stock will be used to fill new purchase orders and then replenished as used (FIFO)" (*Id.* ¶ 4(a)).

> 87.  Within the First Amendment, the above provision was changed to increase defendant Scepter Manufacturing's inventory obligation as follows: "Supplier agrees to increase the current stock of 10 truck-loads of Product 20003 [5 gallon gasoline cans] to 11 truck-loads. Supplier agrees to stock 4 truck-loads of Product 20004 [5 gallon diesel cans]."

88.   Thereafter the parties agreed to increase the quantity of truck-loads Scepter Manufacturing was required to have on hand to 15.

Doc. 1 ¶¶ 86-88.  But Scepter Manufacturing fails to specify the relevant time period for each of these requirements, the specific levels maintained by Scepter Manufacturing during those periods, and how such levels were allegedly insufficient.  Ultimately, No Spill alleges no facts to establish how these provisions were breached.

With respect to the failure to meet order quantities and refusal to manufacture on the weekends without additional charge, No Spill only asserts a single legal conclusion for each:

104.   In breach of the Supply Agreement, defendant Scepter Manufacturing failed and refused to supply the Order quantities submitted by plaintiff No Spill.

106.   In breach of the Supply Agreement, Defendant Scepter Manufacturing then announced that it refused to manufacture No Spill's orders on weekends without additional charge.

Doc. 1 ¶¶ 104, 106.  No Spill does not identify the provisions in the Supply Agreement that were allegedly breached for either assertion.  Nor does No Spill identify any order quantity that was submitted that Scepter Manufacturing allegedly refused to fulfill.  Nor does No Spill specifically identify when and under what circumstances Scepter Manufacturing refused to manufacture over weekends, with or without additional charge, or whether manufacture over weekends was contractually required.  No Spill's single conclusory statement (without reference to the relevant provisions or facts) for each assertion provides no notice for these alleged breaches.

Removing legal conclusions, the Complaint does not sufficiently state factual allegations that establish a failure to meet production requirements under the parties' Supply Agreement.  Accordingly, No Spill does not state a claim for breach of contract on which relief is entitled.

10

## 2. No Spill fails to plead adequate facts to support a breach of contract based on failure to sell the Bekum molding machine.

No Spill also alleges breach of contract based on Scepter Manufacturing's alleged refusal to honor a purchase option within the contract.  Doc. 1 ¶ 127.  Specifically, No Spill states that the following terms were breached by Scepter Manufacturing:

> 121.  Section 9 of the Supply Agreement states: "**Option to Purchase Molding Machine and Ancillary Equipment.** Upon expiration of the Term or other termination of this Agreement, Buyer shall have the option, but not the obligation, to purchase the molding machine and ancillary equipment used in the production of the Products under the terms set forth in Exhibit D of this Agreement" [emphasis in original].

> 122. Exhibit D to the Supply Agreement identifies a Bekum blow molding machine by serial number, with described ancillary equipment, with a specified Initial Value.

Doc. 1 ¶¶ 121, 122.  But these provisions only establish that No Spill had the option of purchasing a specific Bekum blow molding machine identified by a specific serial number (Model BM-705D, Serial No. 204705-5-053), and No Spill nowhere in the Complaint alleges facts that support an allegation that Scepter Manufacturing refused to sell this specific machine.  To the contrary, the facts alleged by No Spill suggest that this specific machine was no longer in service and that the option was no longer available.  Specifically, No Spill admits that as part of its exercise of the purchase option, it asked "Scepter Manufacturing to state whether a different blow molding machine was being used to manufacture the Products." *Id.* ¶ 125.  Noticeably, No Spill fails to allege specific facts concerning how Scepter Manufacturing refused to sell the Bekum blow molding machine, Model BM-705D, Serial No. 204705-5-053 and instead simply states Scepter Manufacturing "refused plaintiff No Spill's exercise of its option to purchase the machine." *Id.* ¶ 126.  No Spill should have included these factual allegations but it did not (because it could not).

Accordingly, this Court should dismiss this claim for failure to state a claim.

**D.      No Spill Does Not and Cannot Adequately Plead Distinctiveness and Non-Functionality, Thus Its Trade Dress Claims Should Be Dismissed**

No Spill's Complaint also purports to assert claims for trade dress infringement under both federal and state law. To state either claim, however, No Spill must identify the specific features of its gas can that allegedly constitute protectable trade dress. No Spill must then plead facts plausibly demonstrating that, and how, those gas can features (1) are non-functional; and (2) have acquired distinctiveness, such that they identify No Spill as the source of the gas can. *See, e.g., Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016) (analyzing elements of trade dress infringement under the Lanham Act); *Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*, No. 17-2666-JAR-GLR, 2018 WL 3744060, at *7-8 (D. Kan. Aug. 7, 2018) (considering trade dress claim under Kansas common law).

No Spill does not and cannot meet this pleading standard, as the Complaint is devoid of facts supporting any claim that No Spill's gas can features are either non-functional or have acquired distinctiveness. Rather, No Spill's asserted features all appear facially functional, as they merely allow a user to store, handle, and pour gasoline. No Spill's repetitive assertion that various elements of its trade dress are "distinctive" does not make them so. Indeed, overcoming the presumption of functionality "is no easy task" and establishing acquired distinctiveness is "often the greatest hurdle" for a trade dress plaintiff. *See Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016); *C5 Med. Werks, LLC v. CeramTec GmbH*, 249 F. Supp. 3d 1210, 1216 (D. Colo. 2017). No Spill does not rise to the occasion here in either instance, by overcoming the presumption of functionality or establishing distinctiveness, and thus its claims should be dismissed.

1.     **The features of No Spill's alleged "trade dress."**

No Spill purports to have trade dress rights in "gas cans with a distinctive plastic nozzle assembly having a tapered spout," as pictured below.[4]  *See* Doc. 1 ¶ 36.  No Spill attempts to narrow the claim by identifying the following specific features of its alleged gas can design:

- a gas can made from red plastic with a nozzle made from black plastic (*id.* ¶ 49);
- an open handle formed into the top of the fuel storage container of the gas can (*id.* ¶ 42);
- a nozzle assembly installed on the top of the gas can adjacent to the open handle (*id.* ¶ 43);
- a tapered spout projecting horizontally (*id.* ¶ 44);
- a rotatable collar having spaced, elongated grips around the periphery of the collar, which creates an ornamental impression (*id.* ¶¶ 45-46);
- a decorative fin on the underside of the spout (¶ 47); and
- a cap for covering the end of the spout, tethered to the spout with a flexible plastic strap secured to the underside of the spout near the back of the decorative fin (*id.* ¶ 48).



No Spill alleges that it has advertised and sold gas cans with these characteristics since 1989.  *Id.* ¶ 36.  The rest of the trade dress-related allegations in the Complaint are merely unsupported legal conclusions, claiming that No Spill's gas can is "distinctive and non-functional," and has

---

[4] No Spill's can is on the left, while Scepter's can is on the right.  *Id.* ¶ 41.

acquired distinctiveness.  *See id.* ¶¶ 36–37.  No further supportive facts are alleged.  *Id.* ¶¶ 36–55; 134–143.

### 2. No Spill's alleged gas can design is functional on its face and the Complaint contains no factual allegations demonstrating otherwise.

"It is well established that 'trade dress protection may not be claimed for product features that are functional.'"  *Domo, Inc. v. Grow, Inc.*, No. 2:17-CV-812, 2018 WL 2172937, at *5 (D. Utah May 10, 2018) (quoting *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)).  Trade dress is presumed functional.  Product "features are deemed functional until proved otherwise by the party seeking trade dress protection."  *TrafFix Devices*, 532 U.S. at 30; *see also* 15 U.S.C. § 1125(a)(3) (plaintiff asserting unregistered trade dress "has the burden of proving that the matter sought to be protected is not functional").  A feature is functional if: (1) it is "essential to the use or purpose of the article or if it affects the cost or quality of the article;'' or (2) its "exclusive use . . . would put competitors at a significant non-reputation-related disadvantage." *Jenny Yoo*, 2018 WL 3744060, at *6.

These basic principles of trade dress law have been applied at the pleading stage to require "the plaintiff to allege, in more than a conclusory fashion, that the trade dress taken as a whole is non-functional."  *Domo*, 2018 WL 2172937, at *5; *see also Virgin Scent, Inc. v. Bel Air Naturals Care Corp.*, No. 17-08284-AB (RAOx), 2018 WL 5264145, at *4 (C.D. Cal. Feb. 8, 2018) (requiring a trade dress plaintiff "allege *how* a trade dress is non-functional"); *Dinkum Sys., Inc. v. Woodman Labs, Inc.*, No. 14-CV-00152-PAB-KMT, 2014 WL 4437310, at *3 (D. Colo. Sept. 8, 2014) (dismissing claim where plaintiff "allege[d] no facts that describe[d] the nonfunctional details of the ActionPod products' 'look and feel'"); *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 746–47 (E.D. Mich. 2014) ("[t]he failure to plead non-functionality with factual

particularity establishes merely the possibility and not the plausibility of [relief] and is therefore fatal to Plaintiff's trade dress claim.").

Here, No Spill fails to allege any facts demonstrating that, or how, the alleged trade dress features of its gas can design are, individually or collectively, non-functional.  Rather, the Complaint relies entirely on conclusory allegations that the design is non-functional, without any facts to support those conclusions.  *See, e.g.*, Doc. 1 ¶ 36-38.  In this respect, No Spill's trade dress claims are similar to those rejected by the *Domo* court:

> Because Domo has to state a claim to relief that is plausible on its face, and because Domo possesses all the facts about its product, simply making a conclusory statement that its 'features constitute a design choice not driven solely by function' is not sufficient to meet the *Iqbal* standard under Rule 12(b)(6).

2018 WL 2172937, at *5.

The absence of any factual allegations addressing the functionality question is particularly glaring here as the identified trade dress is so blatantly functional on its face.  Indeed, the claimed features simply allow the user to do precisely what a gas can is supposed to do—store, handle, and pour gasoline.  Specifically, No Spill's identified features enable the user to pick up the gas can (Doc. 1 ¶ 42 ("open handle formed into the top of the fuel storage container")), open the gas can without misplacing the gas can's cap (*id.* ¶ 48 ("[t]he cap is tethered to the spout with a flexible plastic strap secured at one end to the underside of the spout near the back of the decorative fin"),[5]

---

[5] The unexplained and conclusory use of the word "decorative" does not render the fin non-functional.  No Spill has failed to allege facts showing *how* the fin is "decorative" or non-functional, and indeed the fin appears on its face to serve the function of preventing the nozzle from being inserted too far into whatever receptacle is receiving gasoline from the can.  *See Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *4 (C.D. Cal. May 8, 2015) (holding "Plaintiff's conclusory statement of non-functionality fails to sufficiently allege the element, particularly because some features of the claimed trade dress do perform a utilitarian function in certain contexts (*i.e.*, buttons or adjustable overlapping flaps)").

pour gas from the can (*id.* ¶¶ 43-44 ("a nozzle assembly installed on the top of the gas can adjacent [to] the open handle" with "a tapered spout projecting horizontally")), close the gas can (*id.* ¶ 48 ("cap for covering the end of the spout")), and eventually easily refill the gas can (*id.* ¶ 45 ("a rotatable collar having spaced, elongated grips")).[6]  Even the red color of the can itself is functional, as gas cans are often legally required to be red to alert consumers to its dangerous and flammable contents.  *See, e.g.,* 29 C.F.R. § 1910.144 ("Red shall be the basic color for the identification of . . . [s]afety cans or other portable containers of flammable liquids"); Iowa Code Ann. § 214A.15 ("A person shall not place gasoline . . . into any can, cask, barrel or other similar receptacle having a capacity in excess of one pint unless the same is painted bright red . . . ").

Granting No Spill exclusive rights over such functional features individually or together would severely harm competition and be a misuse of trade dress law.  *TrafFix*, 532 U.S. at 29 (noting that "copying" of "functional features" is not "discouraged or disfavored by the law" because it "preserve[s] our competitive economy" and has "salutary effects" for consumers).  No Spill's complete failure to address the issue of functionality is telling.  It cannot remain silent on this critical issue and expect to overcome the presumption against it.  Because the "only details" in No Spill's complaint "describe elements that are undoubtedly functional," its claims must fail. *See Dinkum Sys.,* 2014 WL 4437310, at *3 (dismissing claim).

### 3.      No Spill fails to adequately plead that its gas can design has acquired distinctiveness.

No Spill's trade dress claims should also be dismissed on the additional basis that the Complaint fails to plead facts that plausibly show that No Spill's gas can design has acquired

---

[6] No Spill alleges, without any supporting facts, that the elongated grips "create[] a favorable ornamental impression."  Doc. 1 ¶ 46.  In reality, the grips on the collar enable the user to *grip* the collar and turn it more easily to open or close the gas can for refilling—and are, thus, textbook examples of functional features.

distinctiveness (*i.e.*, secondary meaning in the minds of consumers).

The Supreme Court has established that "a product's design is distinctive, and therefore protectible [*sic*], only upon a showing of secondary meaning."  *Wal-Mart Stores v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000); *Hammerton, Inc. v. Heisterman*, No. 2:06-CV-00806 TS, 2008 WL 2004327, at *6 (D. Utah May 9, 2008) (noting that "courts have exercised particular 'caution' when extending protection to product designs.").  To establish secondary meaning, a plaintiff must show that "in the minds of the public, the primary significance of the [trade dress] is to identify the source of the product rather than the product itself."  *Forney Indus.*, 835 F.3d at 1245.  "Put differently, secondary meaning exists when 'in the consumer's mind the [trade dress] denotes a single thing coming from a single source.'"  *Savant Homes*, 809 F.3d at 1148 (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002)).

To that end, "[s]econdary meaning may be shown by direct evidence, such as consumer surveys or testimony from consumers," as well as through circumstantial evidence, such as:

> (1) the length and manner of the trade dress's use; (2) the nature and extent of advertising and promotion of the trade dress; (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the trade dress and a particular product or venture; (4) actual consumer confusion; (5) proof of intentional copying; or (6) evidence of sales volume.

*Savant Homes*, 809 F.3d at 1148; *Domo*, 2018 WL 2172937, at *3 ("the plaintiff should know and allege some essential facts [regarding secondary meaning] even without the benefit of discovery" to survive dismissal).

No Spill fails to allege any of the facts necessary to plausibly plead secondary meaning—*i.e.*, it does not plead any *facts* that support the conclusion that its gas can design is a source identifier in the minds of consumers.  Rather, No Spill simply labels certain features of its gas can as "distinctive" when identifying its alleged trade dress.  *See, e.g.*, Doc. 1 ¶ 36 ("a *distinctive* plastic

nozzle assembly having a tapered spout" (emphasis added)).  Such conclusory pleading is plainly insufficient, as courts uniformly recognize.  *See, e.g.*, *Domo*, 2018 WL 2172937, at *3 ("But Domo's conclusory use of the word 'distinctive,' absent any factual allegations, is insufficient to adequately allege inherent distinctiveness."); *Inspired By Design, LLC v. Sammy's Sew Shop, LLC*, No. 16-CV-2290, 2016 WL 6093778, at *5 (D. Kan. Oct. 19, 2016) ("[P]laintiff just offers the conclusory assertion that its trade dress is distinctive . . . .  But the Tenth Circuit has rejected this approach, holding that 'merely reciting . . . the elements [of an alleged trade dress] does not [establish] inherent distinctiveness.'") (quoting *Savant Homes*, 809 F.3d 1149 (alterations in original)).

Nor is it enough for No Spill to simply allege that it has "continuously and substantially advertised, marketed and sold [its] gas cans . . . [s]ince at least as early as [] 1989."  Doc. 1 ¶¶ 36, 39, 134.  Every business advertises and sells products, but that does not mean that every product advertised and sold qualifies for trade dress protection.  *See Domo*, 2018 WL 2172937, at *4 (dismissing plaintiff's claims because, while "continuous marketing is a prudent business practice, [] it hardly warrants an inference that a business achieved such recognition that in the consumer's mind its trade dress means a single thing coming from a single source.").  Indeed, No Spill does not even attempt to show how these activities have created a "conscious connection, in the public's mind, between the trade dress" features and itself.  *Savant Homes*, 809 F.3d at 1148.  That is because they have not.  *See Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1470 (D. Kan. 1996) ("[t]he critical question in considering the evidence is not the extent of the promotional efforts but their effectiveness in creating an association between the trade dress and plaintiff." (internal quotations omitted)); *see also Forney Indus.*, 835 F.3d at 1254 ("[A]dvertising alone is typically unhelpful to prove secondary meaning when it is not directed at highlighting the

trade dress."); *Savant Homes*, 809 F.3d at 1149 ("Standing alone, sales volume may not be indicative of secondary meaning because it could be related to factors other than source identification."); *Inspired By Design*, 2016 WL 6093778, at *6 (finding particular sales volume evidence "insufficient" where "plaintiff provide[d] no evidence tying its sales to its alleged trade dress").

Finally, No Spill's assertion of trade dress rights over the color red highlights its "misuse [and] overextension of trade dress" law to stifle competition and (consequently) harm consumers. *TrafFix Devices*, 532 U.S. at 29; *see* Doc. 1 ¶ 49 ("the gas can is made from red plastic"). There is no plausible way that red could ever "identify the source of the product" (*i.e.*, No Spill) because such coloring is often legally required to be used on all gas cans and therefore cannot distinguish one manufacturer from another. *See Forney Indus.*, 835 F.3d at 1245; *e.g.*, 29 C.F.R. § 1910.144 ("Red shall be the basic color for the identification of . . . [s]afety cans or other portable containers of flammable liquids"); Iowa Code Ann. § 214A.15 ("A person shall not place gasoline . . . into any can, cask, barrel or other similar receptacle having a capacity in excess of one pint unless the same is painted bright red . . . ."). Granting No Spill the exclusive right to produce a red gas can would not only run counter to numerous state laws, but it would harm competition and potentially expose consumers to unnecessary dangers.

As No Spill cannot claim its product's trade dress is inherently distinctive and it alleges insufficient facts to support a plausible inference that its trade dress has acquired distinctiveness, its conclusory allegations of distinctiveness must be rejected and its claims should be dismissed.

**E.    The Entire Case Should Be Dismissed, or Alternatively, Transferred to the District of Delaware Where Venue Is Proper.**

This entire case should be dismissed for lack of personal jurisdiction and failure to state a claim. However, in the event the Court allows No Spill to maintain patent claims by transfer to

the District of Delaware (where jurisdiction and venue are proper against Scepter Manufacturing), this entire case should be transferred. This includes the contract and trade dress claims to the extent they survive dismissal since these claims involve related subject matter—namely, plastic gasoline containers manufactured by Scepter Manufacturing.

This Court may transfer these ancillary contract and trade dress claims under 28 U.S.C. § 1404(a): "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In the Tenth Circuit, the Court weighs the following discretionary factors in deciding transfer:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Sprint*, 896 F. Supp. 2d at 1064 (quoting *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010)).

Here, the substantial inefficiency of requiring Scepter Manufacturing to litigate against the same plaintiff on claims having related subject matter in two district courts (District of Delaware for the patent claims and District of Kansas for contract and trade dress claims) militates heavily in favor of transfer.

### 1.    Plaintiff's choice of forum is entitled to little weight.

While normally the plaintiff's choice of forum is given weight, that is not the case here. First, as discussed above, No Spill knew Scepter Manufacturing is the correct defendant in this case, but filed this case in an improper forum anyway. As such, No Spill's assertion of nominal

contract and trade dress claims in Kansas to maintain venue in this District should be given little, if any, weight. Second, the trade dress claims have no material connection to this District. "[C]ourts have given little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Callahan v. Bledsoe*, No. 16-CV-2310-JAR-GLR, 2017 WL 1303269, at *2 (D. Kan. Apr. 6, 2017). With respect to the trade dress claims, "the infringements alleged in the Complaint have taken place in [Kansas] because Defendant's products are sold here, [but] they have also taken place in every other district where Defendant's products are sold." *Bovino v. Incase Designs Corp.*, No. 13-cv-2106-WJM-MJW, 2014 WL 1796914, at * 2 (D. Colo. May 6, 2014). As such, this factor is neutral at best.

## 2. Convenience of witnesses strongly favors transfer.

The "convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan N.A.*, No. 10-1346-SAC, 2011 WL 915392, at *3 (D. Kan. Mar. 15, 2011). Here, forcing witnesses to travel to two forums more than 1,000 miles apart places a significant burden on all witnesses. The patent, contract, and trade dress claims include overlapping subject matter, and thus, the claims also implicate overlapping witnesses. For example, in pleading each, No Spill alleges harm through the marketing and sale of gas cans by Scepter Manufacturing. *See* Doc. 1 ¶¶ 59, 95, 134. Accordingly, Daniel Marshall, Vice President of Marketing and Business Development at Scepter Manufacturing, is expected to testify in relation to all claims. Mr. Marshall resides in Hudson, Ohio. Marshall Decl. ¶ 1. To the extent that the contract and trade dress claims are not litigated with the patent claims, Mr. Marshall would be forced to travel over 700 miles to attend trial in Kansas and 400 miles to attend trial in Delaware. Nguyen Decl., Ex. C. There is no legitimate

dispute that a single, one-and-a-half hour flight to attend trial in Delaware would be substantially more convenient. This factor weighs strongly in favor of transfer.

### 3.     Judicial economy strongly favors transfer.

"[T]he Court's interest in avoiding duplicative and piecemeal litigation strongly favors transfer . . ." *Sprint*, 896 F. Supp. 2d at 1068. As discussed above, the patent, contract, and trade dress claims include overlapping issues. This would result in duplicative and piecemeal litigation that could potentially result in inconsistent determinations. For example, discovery will almost certainly overlap. To the extent the parties dispute an overlapping discovery issue such as privilege, two different courts could provide two different conclusions. This result must be avoided. Accordingly, this factor weighs strongly in favor of transfer.

### 4.     Neither court has an appreciably more congested docket.

Statistics from the Federal Judicial Center indicate that Delaware does not have an appreciably more congested docket than Kansas. Although the average time to trial for civil cases in Delaware is 28.7 months, the average time from filing to disposition is 5.5 months. Nguyen Decl., Ex. D. Similarly, the average time to trial for civil cases in Kansas is 24.5 months and the average time from filing to disposition is 7.5 months. *Id.; see also Nat'l Inst. for Strategic Tech.*, 2011 WL 915392, at *7 ("Trial itself is statistically unlikely, however. The Court finds the more relevant statistic to be the median time from filing to disposition of all cases."). This factor is neutral.

### 5.     The remaining factors cannot overcome the significant efficiency gained by transfer.

The efficiency in litigating in a single forum overwhelming support transfer; the remaining convenience factors do not establish otherwise. Although the advantage of having a local court determine questions of local law weighs against transfer, the District of Delaware has repeatedly

applied Kansas law in other cases. *See, e.g., Cryovac, Inc. v. Pechiney Plastics Packaging, Inc.,* No. Civ. A. 04-1278-KAJ, 2006 WL 1493840 (D. Del. May 25, 2006) (applying Kansas state law to a tortious interference claim); *Millett v. Truelink, Inc.*, No. Civ. 05-599-SLR, 2006 WL 2583100 (D. Del. Sept. 7, 2006) (applying Kansas law to a consumer fraud claim).   The other factors—accessibility of sources of proof, availability of compulsory process to insure attendance of witnesses, the cost of making the necessary proof, questions as to the enforceability of a judgment if one is obtained, relative advantages and obstacles to a fair trial, and the possibility of the existence of questions arising in the area of conflict of laws—are neutral.   Accordingly, the balance of factors weighs in favor of transferring the entire case to the District of Delaware.

## V.      CONCLUSION

For the reasons above, Defendants respectfully requests the Court dismiss the patent claims (Count I and II) for lack of personal jurisdiction, and the contract and trade dress claims (Counts III to VI) for failure to state of claim.   Alternatively, Defendants respectfully request the Court transfer this entire case to the District of Delaware.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By:  *s/ Holly A. Dyer*

Jay F. Fowler, KS #10727
jfowler@foulston.com
T: 316.291.9541
Holly A. Dyer, KS #16644
hdyer@foulston.com
T: 316.291.9773
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
F: 316.267.6345

LATHAM & WATKINS LLP
Robert Steinberg (*pro hac vice* forthcoming)
bob.steinberg@lw.com
T: 424.653.5500
10250 Constellation Blvd.
Suite 1100
Los Angeles, CA 90067

Lisa K. Nguyen (*pro hac vice* forthcoming)
lisa.nguyen@lw.com
T: 650.328.4600
140 Scott Drive
Menlo Park, CA 94025

*Attorneys for Defendants Scepter Corporation and Scepter Manufacturing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2019, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to counsel of record.

*s/ Holly A. Dyer*
Holly A. Dyer, KS #16644