## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NO SPILL INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 18-cv-2681 JAR/KGG |
| | ) |
| SCEPTER CANADA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| SCEPTER MANUFACTURING LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS SCEPTER CANADA, INC.'S AND SCEPTER MANUFACTURING LLC'S MOTION TO COMPEL

Pursuant to this Court's August 31, 2020 Order (Doc. 124), this Court's April 28, 2020 Scheduling Order (Doc. 98), District of Kansas Rules 7.1, 7.6, and 37.1, and D. Kan. Pat. Rule 3.1, Defendants Scepter Canada, Inc. and Scepter Manufacturing LLC (collectively, Defendants) move for an order compelling Plaintiff No Spill, Inc. ("No Spill") to provide infringement contentions that satisfy their obligation to identify specifically where each limitation of each asserted patent claim is found in the accused products to adequately place Defendants on notice of the alleged infringement and any factual support, evidence and explanations, including any pre- and post-suit testing of the accused products.  To ameliorate the prejudice from not being on notice of No Spill's infringement contentions, Defendants further request leave of court to supplement their invalidity contentions within 21 days after No Spill satisfactorily supplements its infringement contentions pursuant to D. Kan. Pat. Rule 3.5(b).

## I.       PRELIMINARY STATEMENT

Plaintiff No Spill's infringement contentions are vague and conclusory and, for many claim limitations, merely restate the patent claim language without any factual support, evidence or explanation of infringement. Exs. 4-7.  For months Defendants have asked No Spill to supplement its infringement contentions, but No Spill refused to do so.  No Spill steadfastly maintained that its contentions were sufficient.  Exs. 10, 12-17.  No Spill further argues that it could not provide the requisite information because it was not sure whether all the Scepter accused fuel cans had the same flame mitigation device.

But that argument holds no weight because it is No Spill's burden to demonstrate infringement of at least one accused product.  The accused products are all publicly available fuel cans that can be purchased at a number of major retailers for around $20.  No Spill provided multiple photographs of the Scepter accused products and separately the accused flame mitigation device included in these products in its original complaint. Doc. 1 ¶¶ 26 (fuel can), 29 (flame mitigation device); *see also* SAC Doc. 41 ¶¶ 137-142.  Clearly, No Spill had access to the Scepter accused products and tested them. It strains credulity that No Spill cannot provide factual support and explanations in its infringement contentions since No Spill now admits in a privilege log that it actually performed tests on Defendants' products almost two years ago and that it is withholding videos taken of the testing and other factual information on the basis of attorney-client privilege and work product.  Ex. 8 (No Spill's privilege log).

Defendants do not seek any attorney-client communications, mental impressions or attorney advice.   Instead, Defendants seek what they are entitled to and what No Spill is required to provide under D. Kan. Pat. Rule 3.1(c) --- the factual basis for initiating and maintaining this lawsuit in the face of deficient infringement contentions.  No Spill's continued withholding of explanations and facts in its infringement contentions and the withholding of

videos, pictures, and/or documentation of the testing of the Scepter products prejudices

Defendants' ability to understand No Spill's claims of infringement and develop their defenses

through their invalidity contentions, through fact discovery, and through claim construction.  For

these reasons, and because the prejudice to Defendants has already occurred and continues to

increase, Defendants request an order compelling No Spill to immediately supplement its

infringement contentions and produce supporting facts and evidence of the alleged infringement.

Defendants further request leave of Court to supplement their invalidity contentions within 21

days of service of No Spill's supplemental infringement contentions.

## II.     STATEMENT OF FACTS

No Spill initiated this lawsuit almost two years ago on December 11, 2018 (Doc. 1)

alleging infringement of U.S. Patent Nos. 9,174,075 (the "'075 patent) and 10,029,132 (the "'132

patent") (collectively, the "Asserted Patents"), among other claims.  The original complaint[1]

accused Defendant Scepter Canada of infringing the Asserted Patents due to the sale of certain

fuel containers.  The original complaint showed images of Scepter fuel cans indicating that No

Spill was in possession of the accused fuel cans as well as the individual flame mitigation

devices inside the fuel cans since before filing the complaint.  *See, e.g.*, Doc. 1 ¶¶ 26 (fuel can),

29 (flame mitigation device).

**Pictures of Scepter fuel cans and flame mitigation devices**
**No Spill included in the original complaint:**

---

[1] There was a subsequent first amended complaint and second amended complaint.  Doc. 21 and
Doc. 41.

 

 

Doc. 1 ¶¶ 26, 29.

The Scheduling Order (Doc. 98) required No Spill to serve its infringement contentions on May 19, 2020 and stated that this case "is governed by the Local Rules of Practice for Patent Cases before the United States District Court for the District of Kansas." D. Kan. Pat. Rule 3.1 governs the infringement contentions. It states that the infringement contentions "***must contain***" a "chart identifying ***specifically*** where each limitation of each asserted claim is found within the Accused Instrumentality."[2] *Id.*

On May 19, 2020, No Spill served its infringement contentions with charts A1, A2, B1, and B2. (Exs. 4-7.) But those infringement contentions failed to identify specifically where each

_____

[2] All emphasis in this Memorandum is added unless otherwise specified.

limitation of each asserted claim is found as required by D. Kan. Pat. Rule 3.1.  As one example, claim 1 of the '075 patent has claim limitations directed to a "***retained quantity of liquid fuel***" that is "***sufficient to provide a fuel-air mixture proximate to the main container opening that is too rich to support combustion***."  (Ex. 4 at 6.)  Instead of explaining why the accused fuel cans meet this limitation with factual support, No Spill's contentions merely repeat the patent claim language, stating the "***quantity of the liquid fuel retained by the fuel retention structure***" in the accused product "***provides a fuel-air mixture that is too rich to support combustion***."  (Ex. 4 at 6.)  No Spill provided no explanation or factual support for how the Scepter fuel cans have a quantity of liquid fuel retained that provide for a fuel-air mixture that is too rich to support combustion.  No Spill's contentions on this claim limitation include another purely conclusory statement that "[t]his is the very purpose of the fuel retention structure" in the accused products. *Id.*  No support or explanation is provided.

Nine days later on May 28, 2020, Defendants sent their first letter to No Spill about the deficiencies in No Spill's infringement contentions and requested that No Spill supplement them by June 8. (Ex. 10.)  Defendants explicitly identified thirteen different claim limitations for which "[t]here is not a single citation, let alone test results, calculations, or any other basis supporting No Spill's assertion that the Accused Products practice these limitations."  (Ex. 10 at 3.)  Defendants further explained that "No Spill's failure to provide any evidentiary or factual basis for these limitations indicates that it has failed to perform a proper Fed. R. Civ. P. 11 investigation to allege infringement of the Asserted Patents."  (Ex. 10 at 1.)

On June 11, 2020, No Spill responded to Defendants' letter and defended its infringement contentions as sufficient, stating that "No Spill's infringement contentions provide substantial detail and identify the structures" in the accused products "that correspond to the elements of the

asserted claims[.]"  (Ex. 11 at 1.)  No Spill also attempted to transfer the burden of providing a basis for infringement to Defendants[3] by arguing that "***Scepter*** does not deny that its structure retains fuel when its containers are filled or when fuel is dispensed from them, and [***that Scepter***] has produced no supporting testing of its own for that purported distinction."  (Ex. 11 at 1-2.) Yet No Spill  has the burden of proving infringement, not Defendants, and No Spill admitted that it had performed an "***analysis of [Scepter] products that were available for purchase at third-party retailers***," and still refused to provide that supposed analysis.  (Ex. 11 at 2.)

From May to mid-August, Defendants sent five more detailed letters or emails seeking supplementation of its infringement contentions with facts, evidence, and explanations.  (Exs. 10, 12-17.)  To date No Spill has not done so.

On July 28, 2020, each Defendant served its invalidity contentions.  (Doc. 112.) However, they were forced to do so without the ability to fully tailor their responses and invalidity positions to the infringement contentions as these have yet to be propounded with sufficient specificity.

The parties met and conferred on August 13, 2020.  No Spill continued to assert that its infringement contentions were sufficient but agreed to supplement them at some point after Defendants produced "exemplar" flame mitigation devices. No Spill's requirement was disingenuous because:

- Defendant Scepter Manufacturing had previously produced twelve fuel cans to No Spill on July 1 and July 13, 2020 that contained flame mitigation devices.  Exs. 18 and 19.

---

[3] *See, e.g.*, *Agawam Co. v. Jordan*, 74 U.S. 583 (1869).

- No Spill already had Scepter fuel cans in its possession as demonstrated by images and measurements in the complaints.   Doc. 1 ¶¶ 26 (Scepter fuel can in original complaint), 29 (flame mitigation device in original complaint).

- No Spill admitted it purchased and tested Scepter fuel cans prior to instituting this lawsuit.  *See* Ex. 8 (privilege log); *see also* Ex. 11 at 2 (No Spill stating it had performed an "analysis of [Scepter] products that were available for purchase at third-party retailers").

- No Spill could also purchase Scepter fuel cans that contain flame mitigation devices from major retailers like Home Depot for approximately $20.

Despite the redundancy of the request, though, Defendants mailed six "exemplary" flame mitigation devices to No Spill on August 24, 2020.  Ex. 20.

The parties continued to disagree as to the sufficiency of No Spill's infringement contentions, the production and identification of the supporting evidence, and the timeline for when No Spill would serve supplemental infringement contentions.  Defendants requested a conference with the Court according to the procedure outlined in the Scheduling Order.  That conference was held on August 21, 2020, resulting in this Court's August 31, 2020 Order (Doc. 124) granting leave for Defendants to file a motion to compel.

On September 3, 2020, one day before this Motion, No Spill produced a privilege log listing several documents or videos documenting testing of the Scepter fuel cans from 2018. (Ex. 8.).[4]

---

[4] Defendants are not seeking production of any attorney communications, advice, or mental impressions.  Defendants only seek whatever factual evidence and testing No Spill has regarding Scepter fuel cans that would support No Spill's allegations of infringement.

### III.   QUESTIONS PRESENTED

Defendants respectfully request that this Court rule on the questions of:

**A.**   Whether No Spill's infringement contentions are deficient and whether it should be compelled to satisfactorily supplement them, including with any factual testing or measurements performed on Defendants' products pre- and post- initiating this lawsuit;

**B.**   Whether No Spill must produce factual evidence supporting its contentions, including any videos or other factual, documentary evidence purportedly showing testing or measurements of the Scepter products pre- and post- initiating this lawsuit (with any attorney-client communications or mental impressions redacted); and

**C.**   Whether Defendants may have leave of the Court to serve supplemental invalidity contentions within 21 days of receipt of No Spill's supplemental infringement contentions to ameliorate the prejudice Defendants have already suffered from having no notice of No Spill's infringement contentions.

## IV.   ARGUMENT

### A.   No Spill's Infringement Contentions Do Not Comply with Patent Local Rules

No Spill's infringement contentions fail to comply with the Kansas Patent Local Rules. The Scheduling Order (Doc. 98) required No Spill to serve its infringement contentions on May 19, 2020 and stated that this case "is governed by the Local Rules of Practice for Patent Cases before the United States District Court for the District of Kansas." Patent Local Rule 3.1 governs the infringement contentions. It states that the infringement contentions "must contain" a "chart identifying specifically where each limitation of each asserted claim is found within the Accused Instrumentality." D. Kan. Pat. Rule 3.1. Patent Local Rule 3.5 does not allow for

supplemental infringement contentions except for a few limited exceptions.  The first exception is one that gives the patent owner the ability to supplement following this Court's claim construction order only if the plaintiff "believes in good faith that amendment is required by the court's claim construction order."  D. Kan. Pat. Rule 3.5.  The second exception is via an order of the Court "upon a timely showing of good cause."  *Id.*  No other exceptions exist.

Requiring specificity in infringement contentions is standard in many jurisdictions' patent rules like the District of Kansas.  The District of Kansas Patent Local Rule 3.1, for example, is virtually identical to both the Northern District of California's Patent Rule 3-1 and the Eastern District of Texas Patent Rule 3.1.  *Compare* Ex. 1 (Rule 3-1) *with* Ex. 2 (Rule 3-1) *with* D. Kan. Pat. Rule 3.1.  The purpose of the infringement contentions is to place defendants on notice of the allegations against them. *Tech. Prop. Ltd LLC v. Samsung Elec Co.*, Ltd., 114 F. Supp. 3d 842, 844 (N.D. Cal. 2015) ("A plaintiff violates [Rule 3-1] where it fails to 'provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.''").  Compliance with this standard "demands [infringement contentions] that set forth 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent [claims] themselves.'"  *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005); *see also Bender v. Maxim Integrated Prods., Inc.*, Case No. 09-cv-01152-SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) ("[P]laintiff bears the burden of providing infringement contentions that specify the location of every claim element within the accused products, so that the Court can make a principled decision on whether discovery will proceed.").

Infringement contentions are a "'streamlined' mechanism to replace the 'series of interrogatories that defendants would likely have propounded'" in the absence of such

contentions. *Townshend Intellectual Prop., LLC v. Broadcom Corp.*, No. C06-05118 JFRS, 2007 WL 1994158, at *2 (N.D. Cal. July 5, 2007) (granting motion to compel supplemental infringement contentions where plaintiff had not "literally complied with the requirement of 'identifying specifically where each element of each asserted claim is found.'").  As such, infringement contentions provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution process.

Despite these obligations, No Spill's infringement contentions fail to specifically explain how numerous claim limitations are allegedly infringed.  For many claim limitations, No Spill merely recites the claim language or offers conclusory statements that are akin to stating "you infringe because we say you infringe."  This deficiency is illustrated by the following excerpt from No Spill's infringement contentions where the patent claim language is shown on the left and No Spill's contentions as to how Scepter Canada allegedly infringes on the right:

| Element of claim 1: | No Spill's Infringement Contention for this element of claim 1: |
|---|---|
| wherein the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture proximate to the main container opening that is too rich to support combustion | The quantity of the liquid fuel retained by the fuel retention structure in the SmartControl Fuel Containers provides a fuel-air mixture that is too rich to support combustion.  This is the very purpose of the fuel retention structure in the SmartControl Fuel Containers. |

Ex. 4 at 6.

As shown above, claim 1 of the '075 patent has claim limitations directed to a "***retained quantity of liquid fuel***" that is "***sufficient to provide a fuel-air mixture***" that is "***too rich to support combustion***" (Ex. 4 at 6 (left column)). No Spill's contentions merely repeat that claim language, stating there is infringement because a "quantity of the liquid fuel retained by the fuel retention structure" in the accused Scepter product "***provides a fuel-air mixture that is too rich***

*to support combustion*."  (Ex. 4 at 6 (right column).)  The next sentence is another purely

conclusory statement that "[t]his is the very purpose of the fuel retention structure" in the

accused Scepter products.  *Id.*  No support or explanation is provided to justify these

contentions—no factual information, no evidence, no measurements, no testing information, and

no narrative explanations for why and how the Scepter accused products infringe this claim

limitation.  No Spill's conclusory and meaningless assertions cannot satisfy No Spill's

infringement contention obligations.  "[P]roviding vague, conclusory language or simply

mimicking the language of the claims when identifying infringement fail to comply with Patent

Rule 3-1."  *See Connectel*, 391 F. Supp. 2d at 528.

No Spill's failure to provide specific infringement contentions for these claim terms is

particularly problematic because No Spill specifically added those claim terms to overcome a

rejection of its patent application by an Examiner at the U.S. Patent & Trademark Office

("USPTO").  For the application that led to the '075 patent, the application was originally filed

with claims that did not contain the "retains" and "too rich" limitations, as shown below:

> 1.      A portable fuel container comprising:
> a hollow tank body defining a fuel-receiving chamber and a main container opening for permitting flow of a liquid fuel into and out of the fuel-receiving chamber;
> a fuel dispensing assembly coupled to the tank body proximate the main container opening and configured to dispense the liquid fuel from the container; and
> a fuel retention structure located proximate the main container opening and extending generally downwardly into the fuel-receiving chamber,
> wherein the fuel retention structure comprises a plurality of perforations through which the liquid fuel must flow in order to dispense the liquid fuel from the container.

Ex. 9 at Page 0023 (claims in original patent application).

The Examiner rejected these claims as invalid over prior art:

> 6.    Claims 1-21 and 25 are rejected under 35 U.S.C. 102(b) as anticipated by or, in
> the alternative, under 35 U.S.C. 103 as obvious over Rasmussen (2,275.318).

Ex. 9 at Page 0065.

In an attempt to distinguish its claims from the prior art products the Examiner was relying on to reject the patent application, No Spill modified the claims to add limitations for retaining fuel that is "sufficient to provide a fuel air mixture" that is "too rich to support combustion."  The Examiner continued to reject the application, explaining in an interview with No Spill that the claims remained anticipated by or obvious over prior art fuel containers.

> Substance of Interview
> (For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)
>
> *A discussion about proposed amendments for claim 1 and 14 was made. Examiner did not agree that the claims were amended with "the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture within the container that is too rich to support combustion within the container" would overcome the prior art of record, because a fuel container with a fuel retention structure comprising limitations as claimed  and with function of a flash suppressor is well known in the art, which is capable of meeting the functions of "sufficient to provide a fuel air mixture" and "to rich to support combustion".*

Ex. 9 at 0082.

No Spill revised the proposed claim with the underlined language shown below regarding "retained quantity of liquid fuel" and "too rich to support combustion":

**Listing of the Claims:**

1.      (Currently Amended) A ~~portable~~ fuel container comprising:

a hollow tank body defining a fuel-receiving chamber and a main container opening for permitting flow of a liquid fuel into and out of the fuel-receiving chamber;

a fuel dispensing assembly coupled to the tank body proximate the main container opening and configured to dispense the liquid fuel from the container; and

a fuel retention structure located proximate the main container opening and extending generally downwardly into the fuel-receiving chamber,

wherein the fuel retention structure comprises a plurality of perforations through which the liquid fuel must flow in order to dispense the liquid fuel from the container,

wherein the fuel retention structure is configured to retain a quantity of the liquid fuel in the chamber when the container is tipped or inverted to dispense the liquid fuel therefrom,

wherein the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture proximate to the main container opening that is too rich to support combustion.

Ex. 9 at Page 0091 (amended proposed claims).

No Spill further submitted a declaration from the inventor where he described testing he performed on various products to support the amended proposed claims. No Spill argued that those test results proved that the prior art did not practice the "retained quantity of liquid fuel" and "too rich to support combustion" limitations:

the No-Spill suppressor. (See Declaration, Id.). Thus, the testing confirmed that the No-Spill suppressor made according to the fuel retention structure of the claimed invention of the present application is capable of retaining a sufficient amount of fuel to create a fuel-air mixture too rich to support combustion, while the wire mesh flame arrestors of Justrite, Eagle, and Rasmussen retain an insufficient amount of fuel to create a fuel-air mixture too rich to support combustion.

In summary, Applicant submits that the prior art of record, and particularly Rasmussen, fails to disclose the feature of a fuel retention structure capable of retaining a sufficient amount of fuel to create a fuel-air mixture too rich to support combustion. Furthermore, as provided

Ex. 9 at Page 0101 (Applicant No Spill's remarks to the Examiner).

Based solely on those remarks and representations of certain tests being performed, the Examiner allowed the amended claims to issue as a patent. Ex. 9 at Page 0122. Given the

13

importance of testing during prosecution of the patent applications, No Spill should be especially attuned to the need for providing, at a minimum, testing information to Defendants and to this Court in its infringement contentions and providing the supporting evidence for example in the form of a video providing the factual basis for their infringement contentions.

It is important to note that it took No Spill *fewer than three months* from the date of its interview with the Examiner on April 7, 2015, where the Examiner maintained his objections to the claimed invention as obvious over prior art products, to the date No Spill submitted remarks regarding tests performed on various products and a declaration of the inventor to the USPTO on June 19, 2015.  Yet, despite the speed with which it addressed the Examiner's objection, No Spill has withheld any testing information of the Scepter accused products since initiating this lawsuit *almost two years ago*.

The deficiencies just described are not the sole deficiencies in No Spill's infringement contentions.  No Spill's infringement contentions are also devoid of any explanation, evidence, or factual support for alleging infringement for any of the following claim limitations as demonstrated in Exhibits 4 and 5 for the '075 patent and Exhibits 6 and 7 for the '132 patent:

- "the fuel retention structure is configured to retain a quantity of the liquid fuel in the chamber when the container is tipped or inverted to dispense the liquid fuel therefrom" (claim 1 of the '075 Patent)

- "the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture proximate to the main container opening that is too rich to support combustion" (claim 1 of the '075 Patent)

- "the perforations are configured in a manner such that after the liquid fuel has been dispensed from the container and the fuel retention structure is no longer

submerged in the liquid fuel, a quantity of the liquid fuel is retained in the perforations" (claim 12 of the '075 Patent)

- "the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture within the fuel retention structure that is too rich to support combustion" (claim 12 of the '075 Patent)

- "the retained quantity of the liquid fuel is held in the perforations by intermolecular forces, wherein the intermolecular forces are sufficient to retain the quantity of liquid fuel in the perforations regardless of the orientation of the portable fuel container" (claim 12 of the '075 Patent)

- "flash suppressor is at least 10 percent open" (claim 1 of the '132 Patent)

- "flash suppressor . . . wherein the average open area of the perforations is at least 0.001 and not more than 0.05 square inches" (claim 1 of the '132 Patent)

- "flash suppressor is not more than 80 percent open" (claim 1 of the '132 Patent)

- "flash suppressor . . . wherein the total number of perforations is at least 100 and not more than 10,000" (claim 1 of the '132 Patent

- "flash suppressor . . . wherein the average length of the perforations is at least 0.02 inches" (claim 1 of the '132 Patent)

- "the perforations are configured in manner such that after the liquid fuel has been dispensed from the container and the flash suppressor is no longer submerged in the liquid fuel, a quantity of the liquid fuel is retained in the perforations" (claim 16 of the '132 Patent)

- "the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture proximate to the main container opening that is too rich to support combustion within the container" (claim 17 of the '132 Patent)

- "the retained quantity of the liquid fuel is held in the perforations by intermolecular forces between the flash suppressor and the liquid fuel" (claim 18 of the '132 Patent)

Exs. 4-7.

There is not a single citation, let alone any test result, calculation, or any other factual basis, supporting No Spill's assertion that the accused products practice these limitations.

As another example, No Spill's infringement contentions fail to satisfy Patent Local Rule 3.2, which identifies several categories of documents No Spill was required to produce with its infringement contentions and states that "[t]he producing party must separately identify by production number the documents that correspond to each category." D. Kan. Pat. Rule 3.2. No Spill provided no identification of documents corresponding to any of the categories identified in Rule 3.2.  *See* Ex. 3.  No Spill has not identified by production number any documents "sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies on" for Rule 3.1(g) or any of the other categories.

No Spill has no legitimate excuse for failing to fulfill its duty to provide specificity with its infringement contentions or fulfill the basic requirements outlined in Patent Local Rule 3.2. As described in the Statement of Facts (Section II *supra*), No Spill has had access to the accused products for years.  No Spill also admits that it has performed testing on the accused products in 2018 that it is withholding on the basis of attorney-client privilege and work product.  (Ex. 11 at

2; Ex. 8 (privilege log).)  There are no excuses for No Spill not providing satisfactory

infringement contentions and the supporting evidence.

    **B.**    **No Spill Should Provide Factual Information Related To Pre-suit Testing Of The Accused Scepter Products, Which Are Not Protected By Attorney Client Privilege or the Work Product Doctrine**

No Spill continues to withhold the factual evidence it has collected regarding the Scepter

accused products, including videos of testing it performed.  This Court's August 31, 2020 Order

(Doc. 124) allowed for a motion to compel as to the following matter: "whether No Spill must

produce information related to its Rule 11 pre-filing investigation."  Defendants have repeatedly

asked for production of this testing information in letter correspondence (*see*, *e.g.*, Exs. 10, 12-

16, 21) and through requests for production (Ex. 22).[5]  No Spill continues to refuse to produce

this information on the basis of attorney-client privilege and work product protection.  On

Thursday, September 3, 2020 at 7:00 p.m. CT, the day before this Motion, No Spill produced a

privilege log that listed out some documents and things created before this litigation was

instituted which contain videos or other information it collected about the Scepter accused

products.  Ex. 8.

Defendants are not seeking things that would be covered by the attorney-client or work

product privilege like attorney mental impressions, attorney work product, or confidential

attorney-client communications.  Rather, Defendants are seeking the alleged factual evidence of

infringement that are not covered by these privileges.  *See*, *e.g.*, *Greenfield v. Newman*

*University, Inc.*, Case No. 18-cv-2655-DDC-TJJ, 2019 WL 6877727, at *1 (D. Kan. Dec. 17,

2019) ("[Attorney-client] privilege does not protect disclosure of the underlying facts by those

---

[5] Ex. 22 (Excerpts of Scepter Canada's Request for Production Nos. 7, 13, 60, 63, 68-71 and Scepter Manufacturing's Request for Production Nos. 4, 45, 48, 54-57).

who communicated with the attorney"); *see also Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744487, at *4 (D. Kan. June 24, 2015) (citing *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)) (holding that facts contained in an otherwise privileged document are not protected from disclosure). This factual evidence would include pictures, videos, or data calculations and measurements about tests on the Scepter products, not attorney communications concerning those items or mental impressions about those items. *See Greenfield*, 2019 WL 6877727, at *1 (finding that Document No. 56 was "not protected as attorney-client or work product" because it "merely conveys underlying facts").

The obligation to provide specific infringement contentions goes hand-in-hand with a patent owner's responsibility to conduct due diligence on infringement before filing suit. Courts have emphasized that the high standard for infringement contentions "demonstrate[s] high expectations as to plaintiffs' preparedness ***before*** bringing suit" and "requires the plaintiff to state 'specific theories of infringement' in their PICs [Preliminary Infringement Contentions]." *See Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). "Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Id.* at 528. Courts have granted motions to strike infringement contentions where plaintiffs "did not reverse engineer any of defendants' products before filing suit." *Network Caching Tech. LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

Several entries in No Spill's privilege log appear to contain non-privileged, factual evidence; to the extent they exist, attorney communications, mental impressions, or work product could be easily redacted. Entries 12-15 in the privilege log are all .MOV files indicating they are videos showing a "spark test" on No Spill or Scepter products:

| 12 | 11/5/2018 | IMG_5138.MOV | Attorney-Client; Work Product | video created by T. Cray for and at the direction of counsel R. Evans and D. Dalgleish to facilitate provision of legal advice regarding patent litigation and in anticipation of litigation regarding patent litigation containing spark test of No Spill product |
| 13 | 11/5/2018 | IMG_5139.MOV | Attorney-Client; Work Product | video created by T. Cray for and at the direction of counsel to facilitate provision of legal advice regarding patent litigation and in anticipation of patent litigation containing spark test of Scepter product |
| 14 | 11/8/2018 | IMG_5149.MOV | Attorney-Client; Work Product | video created by T. Cray for and at the direction of counsel R. Evans and D. Dalgleish to facilitate provision of legal advice regarding patent litigation and in anticipation of patent litigation containing spark test of Scepter product |
| 15 | 11/8/2018 | IMG_5151.MOV | Attorney-Client; Work Product | video created by T. Cray for and at the direction of counsel R. Evans and D. Dalgleish to facilitate provision of legal advice regarding patent litigation and in anticipation of patent litigation containing spark test of No Spill product |

Ex. 8 at 2.

These videos do not appear to be covered by attorney-client or work product privileges because they are factual information.  These videos were created by inventor Tom Cray, and no attorneys are listed as being present during the video-recorded tests.  In addition, entry 13 does not even purport to identify a particular attorney from whom the video was purportedly requested.

For these reasons, Defendants request *in camera* review of the documents listed in the privilege log, including any attachments to the emails listed (*e.g.*, video .mov files or images). *Greenfield*, 2019 WL 6877727, at *1 (finding that Document No. 56 was "not protected as attorney-client or work product" because it "merely conveys underlying facts"). "The decision whether to review [documents] in camera is within the sound discretion of the trial court." *Mounger v. Goodyear Tire & Rubber Co.*, No. 99–2230–JWL, 2000 WL 33712198, at *1 (D. Kan. Sept. 22, 2000) (quoting *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1493 (10th Cir. 1990)).  To the extent the listed documents, videos, or things contain non-privileged, factual

information such as testing information or measurements, No Spill should be ordered to produce them.

### C.  No Spill's Inadequate Infringement Contentions And Testing Production Prejudice Defendants' Ability To Prepare Their Defenses

No Spill's failure to place Defendants on notice of the infringement allegations has prejudiced Defendants' ability to understand No Spill's allegations of infringement and develop its defenses, has caused Defendants to incur unnecessary costs, and has prevented the parties from coming close to any meaningful settlement options.  Other courts have emphasized the importance of fulsome infringement contentions, noting that "when parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path[.]"  *Connectel*, 391 F. Supp. 2d at 527.  No Spill's contentions have prejudiced Defendants because they do not provide a clear path for Defendants to develop their non-infringement and invalidity defenses and to be in a position to put forward claim constructions and propound fact discovery to support their defenses.  *See id.*

Regarding non-infringement, Defendants are left to guess how No Spill may assert infringement against their products.  No Spill has indicated during the meet and confer leading to this Motion that it intends to prove infringement through testing, yet the infringement contentions provide no information about what particular testing protocol and parameters No Spill contends are material or the results of such testing.  Without a firm understanding of No Spill's infringement contentions and related evidence, Defendants cannot properly prepare a defense.  Defendants cannot, for example, propound particular fact discovery requests aimed at information about testing or other evidence or theories No Spill may seek to rely on to prove its infringement case.

Defendants are further prejudiced heading into claim construction as they do not have a current understanding of how No Spill intends to interpret the claims while No Spill already knows that from its pre-suit testing of Defendants' products. This asymmetric knowledge for claim construction is prejudicial.

Regarding invalidity, Defendants were prejudiced in compiling their invalidity contentions (served on July 28, 2020) due to their inability to ascertain No Spill's infringement positions, particularly with respect to Defendants' defenses under 35 U.S.C. § 112 and its identification of prior art because these defenses are informed by how the plaintiff is attempting to prove infringement. That is why every jurisdiction that has local patent rules requires the plaintiff to serve infringement contentions first and the defendant to serve the invalidity contentions later. *See, e.g.*, D. Kan. Pat. Rule 3.3 ("Not later than 70 days after service upon it of the 'Disclosure of Asserted Claims and Infringement Contentions,' each party opposing a claim of patent infringement, must serve on all parties its 'Invalidity Contentions'[.]"); Ex. 1 (N.D. Cal. Local Patent Rules) at Rule 3-3 ("Not later than 45 days after service upon it of the 'Disclosure of Asserted Claims and Infringement Contentions' each party opposing a claim of patent infringement, shall serve on all parties its 'Invalidity Contentions'[.]"). To maintain the sequence contemplated by the Kansas Patent Local Rules, and ameliorate some of the prejudice Defendants have suffered, Defendants respectfully request leave to serve supplemental invalidity contentions within 21 days of service of No Spill's supplemental infringement contentions their burden.

D. **Good Cause Exists For Defendants To Supplement Their Invalidity Contentions After Receipt Of No Spill's Supplemental Infringement Contentions**

As explained above in Section IV.C, Defendants have been prejudiced by No Spill's failure to timely provide sufficient infringement contentions to place Defendants on notice of the

infringement contentions.  No Spill's infringement contentions affect Defendants' preparation of invalidity contentions because they reveal how No Spill is interpreting the claims, giving insight into the scope of the claims, and revealing both strengths and weaknesses of the claims against Defendants.  That information affects Defendants' identification of prior art and combinations and its development of defenses under 35 U.S.C. § 112.  There is therefore good cause under D. Kan. Pat. Rule 3.5(b) to allow Defendants to supplement their invalidity contentions within 21 days of No Spill's service of supplemental infringement contentions.

## V.      CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court order No Spill to supplement its infringement contentions with factual information and explanations of the alleged infringement, including producing factual evidence of its pre-suit and post-suit testing on Scepter products. The Court should also conduct an *in camera* inspection of the items set forth on the privilege log, and, if they contain non-privileged, factual information, order their production forthwith. To ameliorate the prejudice Defendants have already suffered, Defendants further request leave of Court to supplement their invalidity contentions within 21 days of service of No Spill's supplemental infringement contentions.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By:  ___*s/ Holly A. Dyer*_____
Holly A. Dyer, KS #16644
hdyer@foulston.com
T: 316.291.9773
Jay F. Fowler, KS #10727
jfowler@foulston.com
T: 316.291.9541
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
F: 316.267.6345

LATHAM & WATKINS LLP
Robert Steinberg (*pro hac vice*)
bob.steinberg@lw.com
T: 424.653.5500
10250 Constellation Blvd.
Suite 1100
Los Angeles, CA 90067

Lisa K. Nguyen (*pro hac vice*)
lisa.nguyen@lw.com
T: 650.328.4600
140 Scott Drive
Menlo Park, CA 94025

Lesley M. Hamming (*pro hac vice*)
lesley.hamming@lw.com
T. 312.876.7700
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611

*Attorneys for Defendants Scepter Canada, Inc. and Scepter Manufacturing LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to counsel of record.

*s/ Holly A. Dyer*
Holly A. Dyer, KS #16644