**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NO SPILL INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-2681 JAR/KGG |
| | ) |
| SCEPTER CANADA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| SCEPTER MANUFACTURING LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S AMENDED INFRINGEMENT CONTENTIONS AND RELATED DISCLOSURES FOR FAILING TO COMPLY WITH D. KAN. PAT. R. 3.5(b), AND DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO FED. R. CIV. P. 37**

## I.    INTRODUCTION

Defendants move to strike No Spill's amended infringement contentions, which contain new infringement theories that do not accord with No Spill's infringement contentions from May 2020 and which were improperly served without following the procedures and requirements set forth in D. Kan. Pat. R. 3.5 for amending infringement contentions.  These include filing a timely motion showing good cause and obtaining a court order granting leave to amend.  Defendants also move to strike all interrogatory responses that rely on these contentions and new infringement theories.

Finally, Defendants seek recuperation of their attorneys' fees pursuant to Fed. R. Civ. P. 37(a)(5)(A) for the efforts they were forced to expend in pursuing a motion to compel, this motion to strike, and the considerable efforts related to repeatedly requesting proper infringement

contentions from No Spill when No Spill should have provided its infringement contentions in May 2020 as required by the Scheduling Order and D. Kan. Pat. R. 3.1.

## II.     CONCISE STATEMENT OF FACTS

Defendants were forced to file a motion to compel details regarding No Spill's testing, and were finalizing their reply brief in support of that motion the evening before the deadline, when, without prior notice, No Spill served eleventh-hour contentions with new infringement theories. Specifically, at 8:36 p.m. Central, on the eve of Defendants' reply brief deadline, No Spill served purported "Supplemental Infringement Contentions." Ex. 11.  Rather than address the deficiencies identified in Defendants' motion to compel, these infringement contentions instead introduced new infringement theories.  In No Spill's original infringement contentions (the "No Spill May 19 Infringement Contentions"), No Spill failed to provide any support for infringement, leaving Defendants to guess No Spill's positions when developing their invalidity, non-infringement, and claim construction positions.

Accordingly, after multiple requests for additional information, Defendants moved to compel the results and details of the pre- and post-lawsuit testing performed on Defendants' products. According to No Spill, this testing included only the testing described in a declaration submitted by inventor Thomas M. Cray during the prosecution of the '075 patent ("Cray Declaration Test"), which formed the basis for No Spill's infringement theories. *See, e.g.*, No Spill's Response to Scepter Canada Interrogatory No. 15 ("a spark test, as detailed in the affidavit submitted by inventor Tom Cray during prosecution of the application that issued as the '075 patent and in which the flash suppressor of the Accused Instrumentalities was submerged in liquid gasoline and then subjected to a spark (*e.g.* ignition source), was conducted").

No Spill confirmed that the Cray Declaration Test was the ***only*** test performed on Defendants' products during the parties' August 13, 2020 meet and confer.  And yet, in No Spill's

eleventh-hour amended infringement contentions ("No Spill October 1 Infringement Contentions), No Spill provided citations to an entirely different set of tests with a new set up and materially different procedures ("CSE Tests").  These CSE Tests also differ from the tests performed by No Spill's expert on No Spill FMDs to support its claim construction theories ("No Spill Product Tests").  The CSE Tests therefore present new infringement theories that cannot be introduced at this stage in the litigation and should be stricken from the record.  As Defendants suspected, No Spill withheld information about its initial testing, awaited for new, presumably more favorable testing results, and retroactively changed its infringement positions to match the CSE Tests.

No Spill also served its October 1 Infringement Contentions with complete disregard for the D. Kan. Pat. Rules and Scheduling Order, which require No Spill to obtain a court order upon a timely showing of good cause.  D. Kan. Pat. R. 3.5(b).  No Spill failed to meet and confer, failed to attempt to show good cause, and failed to seek, much less obtain, a court order for leave to amend.  No Spill has refused to withdraw its improperly amended October 1 Infringement Contentions and seek leave to amend in accordance with the Patent Rules.  Ex. 12.  This is an independent reason to strike the No Spill October 1 Infringement Contentions.

No Spill's reason for flouting this Court's rule is easily discerned:  No Spill cannot make a timely showing of good cause for asserting new infringement theories at this stage in the litigation, six months after its original infringement contentions were required by the Scheduling Order.  No Spill's attempt to amend its contention this way frustrates the purpose of requiring infringement contentions early in the litigation: providing Defendants with notice of plaintiff's infringement theories.  Absent such notice, Defendants have been prejudiced in their ability to develop defenses and claim construction arguments.

3

Defendants additionally request that the Court award reasonable expenses, including fees, for the Motion to Compel, this Motion to Strike, and Defendants related efforts for both. Fed. R. Civ. P. 37 provides that if a motion to compel is granted "or if the disclosure or requested discovery *is provided after the motion is filed* – the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added). Here, No Spill served its improperly amended October 1 Infringement Contentions almost a month after Defendants filed their motion to compel, the evening before Defendants' reply brief was due, after Defendants had already expended considerable effort drafting it, and four months after Defendants identified the original contentions as deficient for failing to provide, for example, factual information, evidence, measurements, testing information, or narrative explanations for why and how Defendants' products allegedly infringe the claim limitations – details that No Spill still has not provided. Ex. 13. No Spill cannot demonstrate that the delay was in good faith or substantially justified.

### III. QUESTIONS PRESENTED

   **1.** Should the Court strike No Spill's October 1 Infringement Contentions because they present new infringement theories after the deadline for infringement contentions set forth in the Scheduling Order?

   **2.** Should the Court strike No Spill's October 1 Infringement Contentions for the independent reason that No Spill failed to satisfy the requirements of this Court's Local Patent Rules?

   **3.** Are Defendants entitled to attorneys' fees for the motion to compel, Defendants related efforts, and this motion to strike pursuant to Fed. R. Civ. P. 37?

### IV. ARGUMENT

   **A.** No Spill's October 1 Infringement Contentions Provide New Infringement Theories and Should Be Stricken

4

No Spill's October 1 Infringement Contentions belatedly and improperly introduce new infringement theories. In particular, No Spill's October 1 Infringement Contentions introduce CSE Tests that materially differ from the Cray Declaration Tests from the prosecution history of the '075 patent that No Spill purportedly relied on for bringing suit and the No Spill Product Tests performed to support No Spill's claim construction theories. The court should strike new infringement theories introduced at this stage in the litigation.

There are at least six differences between the CSE Tests and the Cray Declaration and No Spill Product Tests, each of which affect whether a product will combust and thereby infringe the asserted claims. These CSE Tests therefore impermissibly assert new infringement theories.

First, the Cray Declaration Test uses a different spark source from the CSE Tests and No Spill Product Tests. The Cray Declaration Test specifies a "spark generator" whereas the CSE Tests use a "standard automotive spark plug." Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25; Ex. 8 at 6, 21. A recent email by No Spill's counsel specifies that "the spark generator used in the Cray Affidavit testing was a Camco 57561 Olympian GM 12X Multi Sparker – a standard gas appliance ignitor." Ex. 1 at ¶¶ 21, 45; Ex. 10. These variations in ignition sources can affect whether or not a tested device combusts. Ex. 1 at ¶¶ 21, 45. For example, spark plugs do not disturb the air around them as much as other kinds of spark generators and some spark generators create a convective draft due to the heated gas at the location of the spark. Ex. 1 at ¶ 45; Ex. 7 at ¶ 25. Because the CSE Tests use a different sparker, the infringement theory is new: the type of spark affects whether a device will combust, and thus whether the device meets the "too rich to support combustion" claim limitation. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25.

Second, the Cray Declaration orients the device vertically, with the can opening facing downward. Ex. 1 at ¶¶ 21, 45. In contrast, the CSE Tests and No Spill Product Tests place the

device horizontally, with the opening to the side. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25. By orienting the device horizontally, the tester reduces the rate of evaporation of fuel and increases the amount of fuel in the interior of the FMD during testing, artificially creating an environment that is "too rich to combust." Ex. q at ¶ 21; Ex. 7 at ¶ 25. The CSE Tests also place the FMD on a mesh screen, which will obstruct some of the evaporation of fuel, maintaining a high concentration of fuel vapors in the vicinity of the FMD, which would also affect the test outcome. Ex. 1 at ¶ 45; Ex. 7 at ¶ 25. The change in orientation introduces a new infringement theory because the orientation affects the fuel vapor-air mixture in the vicinity of the device, and therefore whether the device creates an environment "too rich to support combustion."

Third, the CSE Tests include a fuel container that is left open below the FMD when the spark plug is activated. Ex. 1 at ¶¶ 21, 45. Neither the Cray Declaration Test nor the No Spill Product Tests includes any open container in the vicinity of the FMD. Ex. 1 at ¶¶ 21, 45. The open fuel container likely contains fresh gasoline, which will provide additional fuel vapors, creating an environment above the upper flammability limit. Ex. 1 at ¶ 21. This would contribute to the lack of combustion in the video. Ex. 1 at ¶ 21. If the gas within the open container was not fresh gas, for example, if the fuel was weathered or of a composition that was in the flammability zone at room temperature, then leaving the fuel container while activating an ignition source was incredibly reckless. Ex. 1 at ¶¶ 21, 45. Fuels that are susceptible to combustion at room temperature could lead to an explosion and immediate danger to the person running the test. Ex. 1 at ¶¶ 21, 45. As a result, the gasoline used in the CSE Tests was likely fresh gasoline. An open container of fresh gasoline in the vicinity of the device would artificially create an environment that is "too rich to support combustion," which would dramatically change the results of even an otherwise identical test. Ex. 1 at ¶¶ 21, 45.

Fourth, the CSE Tests and No Spill Product Tests incorporate a shaking or knocking component intended to remove fuel from the device. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25. Such shaking or knocking is analogous to fuel evaporating over time from an FMD that has been removed from a fuel container. Ex. 1 at ¶ 45; Ex. 7 at ¶ 25. No such test is described in the Cray Declaration. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25. And yet, No Spill now asserts that the results of the CSE Tests incorporating the shaking or knocking step "confirm[] that the Scepter FMD retains sufficient liquid fuel to create an environment too rich for combustion." Doc. 152 at 6. No Spill thus utilizes this shaking and knocking test for its infringement theories now, but there is no mention of this test or anything like in in No Spill's May 19 Infringement Contentions. This is therefore an entirely new infringement position that No Spill relies on to purportedly "confirm[]" infringement.

The CSE Tests, Cray Declaration Test, and No Spill Product Tests also fail to specify key parameters that affect whether or not a tested device will combust. As a result, each of these tests presents a range of possibilities.

The Cray Declaration Test does not specify the type, age, blend, or composition of the gasoline used, and the CSE Tests and No Spill Product Tests only indicate that the gasoline was obtained from a local commercial gasoline station, which encompasses a wide range of gasoline varieties. Ex. 1 at ¶ 21; Ex. 7 at ¶ 25. No Spill does not explain whether either test uses a summer or winter blend, or any other information about the fuel's chemical composition, such as octane level or additives. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25. These variations would have a significant impact on the combustibility of the FMD, which would affect the test results. Ex. 1 at ¶¶ 21, 45; Ex. 7 at ¶ 25. The high degree of variability in the gasoline used increases the likelihood that each of the tests will achieve different results.

The Cray Declaration Test also does not specify the timing of the FMD's exposure to the spark source and the CSE Tests indicate that the spark plug is activated for 18 seconds before the video cuts out. Ex. 1 at ¶¶ 21, 45. The timing would likely have a significant impact on the combustibility of the FMDs since more fuel will evaporate in a longer time period. Ex. 1 at ¶¶ 21, 45. The unknown differences in timing will affect the test outcomes and increases the likelihood that each of the tests will achieve different results. Ex. 1 at ¶¶ 21, 45.

No Spill cannot introduce new infringement theories months after it is required under the Patent Rules and Scheduling Order. "Once served, the infringement contentions constitute the universe of infringement theories." *Looksmart Grp., Inc. v. Microsoft Corp.*, Case No. 17-cv-04709, 2019 WL 7753444 (N.D. Cal. Oct. 17, 2019) (granting a motion to strike an expert report that contained new infringement theories). Late-amended infringement contentions with new theories should be stricken. *BookIT Oy v. Bank of Am. Corp.*, 817 Fed. App'x 990, 995 (Fed. Cir. 2020) (upholding a district court decision denying leave to amend infringement contentions because the plaintiff's "failure to present its new infringement theory earlier was inexcusable"); *Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (upholding district court's decision to refuse to consider infringement arguments made "after the relevant cut-off dates under the Northern District's Patent Local Rules and the trial court's scheduling order"). Additionally, new infringement theories disclosed outside of proper infringement contentions should be stricken. This includes infringement theories presented in improperly amended infringement contentions as well as in interrogatories, briefing, and expert reports. *See Neonatal Prod. Grp., Inc. v. Shields*, 276 F. Supp. 3d 1120 (D. Kan. 2017) (granting a motion to strike infringement theories presented in an opposition brief because they were not "asserted in their infringement contentions, as the Scheduling Order required them to do."); *Looksmart Grp., Inc.*, 2019 WL 7753444; *Finjan, Inc.*

*v. Blue Coat Sys., LLC*, Case No. 15-cv-03295-BLF, 2017 U.S. Dist. LEXIS 220192, at *24 (N.D. Cal. July 28, 2017) (granting a motion to strike portions of an expert report that presented new infringement theories).

The CSE Tests provide such impermissible new infringement theories. They are not simply recent performances of the Cray Declaration Test No Spill has been relying on thus far. *See, e.g.*, No Spill's Response to Scepter Canada's Interrogatory No. 15 (describing a "spark test, as detailed in the affidavit submitted by inventor Tom Cray during prosecution of the application that issued as the '075 patent," which was purportedly performed on Defendants' products). Nor are they equivalent to the No Spill Product Tests No Spill presented in support of its preliminary claim constructions. Rather, even the limited information that No Spill has provided about the set-up, parameters, and details of these CSE Tests demonstrate that the CSE Tests differ from the Cray Declaration Test and No Spill Product Tests in substantive ways that affect the meaning of key patent claim terms such as "retained quantity" and "too rich to support combustion." In fact, a product could infringe and a reference could anticipate or render obvious the asserted patents under one test, but not another.[1] This is because, despite No Spill labeling the tests as "spark test[s]" – a term evidently coined by No Spill – these tests are drastically different. *See, e.g.*, Doc. 152 at 5.

No Spill cannot introduce new testing and shift its infringement theories four months after the Scheduling Order required service of infringement contentions and a week after the parties began claim construction exchanges and served expert reports. Accordingly, these new infringement theories should be excluded by striking No Spill's October 1 Infringement

---

[1] These inconsistent outcomes also demonstrate the indefinite nature of these claim terms. *See, e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) (finding a proposed construction indefinite because "an artisan would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy"); Ex. 1 at ¶ 45.

Contentions, and similarly striking No Spill's reliance on these new theories in its interrogatory responses.

   **B.**  No Spill's October 1 Infringement Contentions Are Procedurally Deficient and an Additional Reason They Should be Stricken

In addition to improperly introducing new infringement theories, and to avoid having to show good cause for its amendments, No Spill failed to comply with the requirements of this Court's Patent Rules when serving the No Spill October 1 Infringement Contentions. This warrants striking the No Spill October 1 Infringement Contentions on procedural grounds.

This Court's Patent Rules – recognizing the foundational nature of infringement contentions in a patent case – provides requirements for amending infringement contentions. Amendments to infringement contentions can occur "***only*** by order of the court upon a timely showing of good cause." D. Kan. Pat. R. 3.5(b) (emphasis added). The only exception allows for amendment in light of the court's claim construction order, which does not apply here. D. Kan. Pat. R. 3.5(a)(1). Notably, "[t]he duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions."[2] *Id.* In advance of seeking leave from the court, the moving party must "in good faith confer[] or [make] reasonable efforts to confer (consistent with D. Kan. Rule 37.2) by telephone or in person with opposing counsel" and, "[i]f the parties resolve the issue, the moving party must file an unopposed motion for leave to amend," or if "the proposed amendment remains unresolved … counsel for the moving party must contact the magistrate judge and arrange a telephone conference." D. Kan. Pat. R. 3.5(c).

---

[2] No Spill's insistence on labeling its revised infringement contentions "supplemental" as opposed to "amended" is therefore not only meaningless, but also irrelevant. Regardless of whether the revised infringement contentions are called supplemental or amended, No Spill failed to comply with this Court's Patent Rules and Scheduling Order.

No Spill did not satisfy *any* of these requirements prior to serving its October 1 Infringement Contentions. In fact, No Spill still refused to satisfy these requirements after Defendants notified No Spill of its obligations under the Patent Rules. On October 6, 2020, Defendants requested that "No Spill withdraw its amended infringement contentions and follow the procedure in D. Kan. Pat. R. 3.5 which requires good faith, reasonable efforts by the amending party to confer with opposing counsel followed by, if necessary after the meet and confer, filing a motion seeking leave from the court based on a timely showing of good cause." Ex. 14 at 2. No Spill responded the following day and "decline[d] [Defendants'] invitation to withdraw its Supplemental Infringement Contentions." Ex. 14 at 4.

No Spill's primary justification for its refusal to adhere to the Patent Rules was that Defendants requested "that No Spill provide Scepter with Supplemental Initial Infringement Contentions"[3] because they were deficient. *Id.* Defendants requested, among other things, details of the Cray Declaration Test – including videos, pictures, and documentation of the pre- and post-suit testing performed on Defendants' products that No Spill never provided. Defendants then moved to compel this information. However, this does not exempt No Spill from the requirements of the Patent Rules, much less entitle No Spill to introduce new infringement theories. The Rules are clear: "amendment of the Infringement Contentions or the Invalidity Contentions may be made *only* by order of the court upon a timely showing of good cause." D. Kan. Pat. R. 3.5(b). This is true regardless of whether the accused infringer moved to compel or otherwise sought amended contentions. Of course, if the accused infringer requests additional information, this could support good cause for amendment to provide that information. However, it would not justify an

---

[3] This Court's Patent Rules do not provide for "initial" infringement contentions. There are only one set of infringement contentions, which, as described herein, can only be amended by leave of the court or in light of the Court's claim construction order.

11

amendment to introduce new infringement theories, as No Spill has done here. Defendants detailed the requirements of the Patent Rules in yet another email. Ex. 10 at 1. To date, No Spill has neither responded to that email nor withdrawn its October 1 Infringement Contentions.

These procedural deficiencies provide an independent basis to strike the No Spill October 1 Infringement Contentions. *See Health Grades, Inc. v. MDX Med, Inc.*, Civ. No. 11-cv-00520-PAB-BNB, 2012 U.S. Dist. LEXIS 136108, at *3 (D. Colo. Sept. 24, 2012) (striking supplemental infringement contentions for failure to amend the contentions with leave of the court as required by the local rules); *see also Monolithic Power Sys. v. Silergy Corp.*, 3:14-cv-01745-VC, Doc. 173 at 1 (N.D. Cal. Aug. 26, 2015) ("Thereafter, Plaintiff amended its infringement contentions, but did not seek leave of court in violation of Patent Local Rule 3-6. As a result, the amended infringement contentions must be stricken"). In *Health Grades*, the plaintiff, like No Spill, "attempted to amend its infringement contentions by serving, without leave of the Court, supplemental infringement contentions upon Defendant." *Health Grades*, 2012 U.S. Dist. LEXIS 136108 at *2. The plaintiff, like No Spill, served its amended contentions months after its infringement contentions were due pursuant to the Scheduling Order.[4] *Id.* And that case, like this one, was governed by local patent rules requiring that "[a]mendment of the [i]nfringement [c]ontentions may be made only by order of the Court upon a timely showing of good cause." *Id.* at *3. The court found that the amended infringement contentions "violated the Scheduling Order and the rules applicable to this case" and struck the amended infringement contentions. No Spill

---

[4] In fact, No Spill amended its infringement contentions even later in time, serving the No Spill October 1 Infringement Contentions nearly five months after the court's deadline. The plaintiff in *Health Grades* amended its infringement contentions about three months after the deadline. *Health Grades*, 2012 U.S. Dist. LEXIS 136108 at *2.

also failed to comply with this Court's Patent Rules, and this Court should strike the No Spill October 1 Infringement Contentions on procedural grounds.

        **C.**        **Defendants Should Be Awarded Fees for Their Efforts Related to Having to File a Motion to Compel and Now This Motion to Strike**

Fed. R. Civ. P. 37(a)(5)(A) provides that if a motion to compel is granted "or if the disclosure or requested discovery *is provided after the motion is filed* – the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." (Emphasis added). Defendants moved to compel No Spill to supplement its infringement contentions on September 4, 2020. Doc. 131. Nearly a month later, on October 1, 2020, No Spill served the new, October 1 Infringement Contentions – providing, not the Cray Declaration Test details sought by Defendants, but instead, CSE Tests and new infringement theories. Ex. 11; Ex. 14 at 2 ("As for the substance of the proposed amended contentions, Scepter has not had a chance to review them and the materials along with them. They do not address the deficiencies Scepter previously noted, and rely on different test procedures than the ones No Spill said it relied on in its opposition to the Scepter motion to compel, to bring this suit, and for its original contentions."). Accordingly, Defendants request attorneys' fees for the motion to compel, related efforts, and this motion.

Defendants have undertaken considerable efforts to obtain the details of No Spill's testing without involving the Court. Defendants' months of repeated letter writing and meet and confers are outlined in detail in Defendants' Motion to Compel. Doc. 131 at 4-7; *see also* Exs. 15-22.

Defendants also expended significant time and resources attending meet and confers and hearings to address No Spill's deficient infringement contentions and failure to produce testing details. In particular, during an August 13, 2020 meet and confer, Defendants asked for

13

confirmation that there was only one type of test performed on Defendants' products. In response, No Spill's counsel confirmed that there was only one test – the Cray Declaration Test. Unable to reach a resolution during that meet and confer, the parties scheduled a telephone conference with Judge Gale on August 21, 2020. In that hearing, Defendants foreshadowed No Spill's improper strategy: to rely on testing performed "after the infringement contentions have been due for many months [] to try to now prove them up with an expert so they can get ready for trial." Aug. 21, 2020 Hearing Transcript at 13:15-19; *see also id.* at 10:17-18 ("if they're going to rely on ***new testing***, that's going to delay this whole process anyway"); *id.* at 23:18-21 ("And what they're telling you is now they know they're going to do the testing? Oh, wait a minute, what did they do before when they brought the claim?"). Ultimately, Defendants filed a motion to compel factual information, evidence, measurements, testing information, or narrative explanations for why and how Defendants' products allegedly infringe the claim limitations – details that No Spill still has not provided. Doc. 131.

In the face of the motion to compel, No Spill sought to undermine the agreement of the parties, generating further expenses. Doc. 148 at 11-13. On September 21, 2020, Defendants were forced to request a meet and confer to address No Spill's opposition to Defendants' motion to compel, which improperly raised responses to interrogatories and requests for production. Doc. 124, Doc. 136. Then, on October 1, 2020, the night before Defendants' reply brief in support of its motion to compel was due, No Spill improperly served its amended infringement contentions, resulting in additional correspondence, meet and confers, and this motion to strike. Defendants' request attorneys' fees for the all of the foregoing and other expenditures related to No Spill's deficient infringement contentions, improper amended contentions, and supporting testing documents.

14

There are only three exceptions to the otherwise mandated award of fees: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). None of these exceptions apply. Defendants made good faith efforts to resolve the issue without court action. The parties discussed No Spill's amended infringement contentions in a meet and confer on October 16, 2020 and Defendants explained, in writing, why No Spill's amended infringement contentions were substantively deficient on October 20, 2020. Ex. 10 at 3. No Spill declined an additional meet and confer on the subject. Ex. 10 at 2 ("we do not see a need for a further meet-and-confer on this subject."). No Spill has not provided a substantial justification for the previous nondisclosure nor can No Spill demonstrate that an award of fees would be unjust. Rather, No Spill withheld information about its initial testing, awaited for new, presumably more favorable testing results, and retroactively changed its infringement positions to match the CSE Tests.

Defendants thereby respectfully request an award of reasonable expenses, including fees for the motion to compel, related research and correspondence, and this motion to strike.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike Plaintiff No Spill Inc.'s amended infringement contentions without leave to amend. Defendants also request that the Court strike No Spill's interrogatory responses, claim construction arguments, and expert reports that rely on these contentions and new infringement theories contained therein.

Defendants further respectfully request that the Court grant Defendants reasonable expenses incurred, including attorney's fees related to Defendants' Motion to Compel, this Motion to Strike, and related efforts pursuant to Fed. R. of Civ. P. 37. Once the Court determines that

15

Defendants are entitled to an award under Fed. R. Civ. P. 37, Defendants will provide an accounting of their fees.

        Respectfully submitted,

        FOULSTON SIEFKIN LLP

        By: *s/ Holly A. Dyer*
            Holly A. Dyer, KS #16644
            hdyer@foulston.com
            T: 316.291.9773
            Jay F. Fowler, KS #10727
            jfowler@foulston.com
            T: 316.291.9541
            1551 N. Waterfront Parkway, Suite 100
            Wichita, KS 67206-4466
            F: 316.267.6345

            LATHAM & WATKINS LLP
            Robert Steinberg (*pro hac vice*)
            bob.steinberg@lw.com
            T: 424.653.5500
            10250 Constellation Blvd.
            Suite 1100
            Los Angeles, CA 90067

            Lisa K. Nguyen (*pro hac vice*)
            lisa.nguyen@lw.com
            T: 650.328.4600
            140 Scott Drive
            Menlo Park, CA 94025

            Lesley M. Hamming (*pro hac vice*)
            lesley.hamming@lw.com
            T. 312.876.7700
            330 North Wabash Avenue, Suite 2800
            Chicago, IL 60611

        *Attorneys for Defendants Scepter Canada, Inc. and Scepter Manufacturing LLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 27th day of October 2020, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system that will send notice of electronic filing to counsel of record.

                 *s/Holly A. Dyer*
                 Holly A. Dyer, KS #16644