IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NO SPILL, LLC, | ) |
| | ) |
| TC CONSULTING, INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 18-2681-HLT-KGG |
| | ) |
| SCEPTER CANADA, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON MOTION FOR LEAVE TO FILE AMENDED ANSWER TO ASSERT
COUNTERCLAIMS AND JOIN COUNTERCLAIM DEFENDANTS**

Defendants, Scepter Manufacturing, LLC and Scepter Canada, Inc., file the present "Motion for Leave to File Amended Answer to Assert Counterclaims and Join Counterclaim Defendants." (Doc. 258). Having reviewed the submissions of the parties, the Court **GRANTS** Defendants' motion as set forth below.

**I.   Background**

The Plaintiffs, TC Consulting, Inc.[1] and No Spill, LLC (herein "No Spill" or "Plaintiffs" or "Counterclaim Defendants"), are a Kansas corporation that holds two patents relating to preventing the explosion of portable fuel containers ('075 and '132 patents). (Doc. 41). No Spill makes six claims against Scepter Manufacturing, LLC and Scepter Canada, Inc. (collectively herein "Scepter" or "Defendants" or

---

[1]TC Consulting, Inc. is a Kansas corporation that received all the capital stock of No Spill, Inc., which gave it a stake in the litigation at hand and was subsequently added to the suit. (Doc. 254).

1

"Counterclaim Plaintiffs") alleging: (1) infringement of the '075 patent; (2) infringement of the '132 patent; (3) breach of contract and the covenant of fair dealing for failure to meet quality control standards for the supply of gasoline cans; (4) breach of contract relating to the sale of a mold machine; (5) unfair competition under the Lanham Act; and (6) unfair competition under the common law of Kansas. (Doc. 41). The Defendants allege five causes of action in its proposed counterclaim: (1) Conspiracy under Sherman Act § 1; (2) Monopolization under Sherman Act § 2; (3) Attempted Monopolization under Sherman Act § 2; (4) Conspiracy to Monopolize under Sherman Act § 2; and (5) and Transactions that Substantially Lessen Competition under Clayton Act § 7.

No Spill underwent restructuring and was acquired by GenNx/MWC Acquisition, Inc. (herein "GenNx/MWC") which substantially led to Scepter's motion to join counterclaim defendants. Scepter requested discovery regarding the details of the transaction and the licensing agreements with Midwest Can Company, LLC[2] (herein "Midwest Can"). (Doc. 264, at 6). Midwest Can had a licensing agreement with a No Spill-related entity—NSIP Holdings, LLC[3] (herein "NSIP"). (Doc. 264, at 3). Scepter, in its proposed counterclaim, allege that the licensing

---

[2]Midwest Can is a competitor of Scepter in the portable fuel container market.

[3]NSIP was an entity that held the patents at issue in this case. The patents were transferred to No Spill and NSIP was dissolved shortly thereafter. (Doc. 264-2, at 52).

agreements between Midwest Can and No Spill set an artificially high and unreasonable royalty rate for No Spill's patents which resulted in antitrust violations. (Doc. 264, at 3). Specifically, the counterclaim would allege violations of the Sherman Act (15 U.S.C. §§ 1, 2) and the Clayton Act (15 U.S.C. § 18). Moreover, Defendants wish to add Midwest Can, GenNx360 Capital Partners (herein "GenNx 360"), GenNx/MWC, and Argand Partners, LP (herein "Argand") as counterclaim defendants.[4]

The case was first filed on December 10, 2018 and the complaint was amended on July 11, 2019. Scepter filed an answer to the amended complaint on January 21, 2020. Approximately one year later, No Spill, underwent restructuring and was acquired by GenNx/MWC which substantially led to the motion currently before the Court.

## II.  Standard

### a. Amending the Answer

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule further provides that the court should freely give live when justice so requires. *Id.* Indeed, the grant of leave to amend the pleadings is within the

---

[4]Through Scepter's investigation, it believes that GenNx 360 was the previous owner of Midwest Can. And Midwest can was subsequently sold to GenNx/MWC, who is owned by Argand. (Doc. 264, at 4).

3

discretion of the trial court and should be liberally construed. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Typically, leave to amend a pleading should be freely given unless there is undue delay, bad faith motive, or undue prejudice. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### b. Adding Counterclaims and Counterclaim Defendants

Under the Federal Rules of Civil Procedure, Rule 13(h) provides that Rules 19 and 20 govern the addition of a person as a party to a counterclaim. Fed. R. Civ. P. 13(h). Rule 20 deals with permissive joinder and provides that a person may be joined as a defendant if (1) any relief asserted against them jointly or severally, or in the alternative with respect to or arising out of the same transaction or occurrence, and (2) any question of law or fact common to the defendants. *Id.* 20(a)(2). The decision to allow the addition of a party under Rule 20(a) is within the court's discretion. *Fergus v. Faith Home Healthcare, Inc.*, No. 2:18-cv-02330-JWL-TJJ, 2018 WL 6727063, at *4 (D. Kan. Dec. 21, 2018).

If the counterclaim meets the standard of Rule 20, the motion to add the counterclaim can nonetheless be rejected if the counterclaim is futile. *See Bank Midwest v. R.F. Fisher Elec. Co., LLC*, No. 19-2560, 2021 WL 38008, at *6 (D. Kan. Jan. 5, 2021). A proposed amendment is futile if the counterclaim would be subject to dismissal. *Id.* The party opposing an amendment bears the burden of establishing futility. *Id.* The standard the proposed pleading is analyzed under is the

4

same as a motion to dismiss under Rule 12(b)(6). *Id.* (citing Fed. R. Civ. P. 12(b)(6)). For a claim to survive a motion to dismiss, the pleading must "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim need not be probable, but the claim must "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III. Analysis

#### a. The Appropriateness of Amending the Answer

No Spill contends: amending the answer will result in undue delay, Scepter harbors a bad faith motive, and it will result in undue prejudice. The Court will consider these arguments in turn.

##### i. Undue Delay

It is within the court's discretion to deny leave to amend for undue delay, even without a showing of undue prejudice. *Steinert v. The Winn Group, Inc.*, 190 F.R.D. 680, 683 (D. Kan. 2000). Courts often look to the reasons for the delay and the presence of excusable neglect when denying leave on this basis. *Id.*

Although this motion is not timely under the Revised Scheduling Order (Doc. 162), Defendants argue that good cause exists in that the information necessary to assert this claim was not available to them until No Spill produced relevant documents during discovery (Doc. 278, at 12). Plaintiffs argue it produced the licensing agreement that Scepter relies upon as a basis for its counterclaim more than

5

10 months before it filed its Motion (Doc. 274, at 12). And due to that delay, Scepter should be barred from amending its answer. While Plaintiffs are correct in stating that Defendants knew about some details regarding the Midwest Can licensing agreement, the issue is whether they had sufficient facts to allege inequitable conduct. *See J&M Indus., Inc. v. Raven Indus., Inc.*, No. 16-2723, 2019 WL 2342977, at *4 (D. Kan. June 3, 2019). In other words, did the Defendants have sufficient facts to allege a plausible cause of action. And here, the Defendants are claiming that they did not have sufficient information from discovery to make a viable claim when the licensing agreement was first produced (Doc. 278, at 13). Further, No Spill underwent restructuring that necessitated more discovery. Given, the facts of the current situation, there was no undue delay in bringing this motion to amend.

### ii. Bad Faith

An amendment seeking to add a counterclaim should be denied if it is sought in bad faith. *Koch v. Koch Indus.*, 127 F.R.D. 206, 211 (D. Kan. 1989). Evidence of bad faith must be apparent from the record. *Steinert v. The Winn Group, Inc.*, 190 F.R.D. 680, 685 (D. Kan. 2000). No Spill argues that Scepter is not motivated by the legitimate belief that it has a plausible counterclaim; but rather, it is pretext to delaying litigation. (Doc. 274, at 11). The Court is cognizant of the fact that this particular case has been ongoing for two years and that the patent rulings to date

6

have not been favorable to the Defendants; however, if there are facts that show a legitimate reason for filing an amendment, then that does not constitute bad faith. And here, there appears to be nothing apparent from the record that shows bad faith.

### iii. Undue Prejudice

The burden is on the moving party to show undue prejudice. *Steinert*, 190 F.R.D. at 683. Undue prejudice is the most important factor when determining whether to grant leave to amend. *United States v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008). When analyzing whether undue prejudice is present under Rule 15(a), the court considers the difficulty in prosecuting or defending the lawsuit because of change of tactics or theories on part of the movant. *Id.* In short, courts typically only find undue prejudice when the amendment affects the defendant's ability to prepare their defense. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006).

No Spill, which bears the burden of showing undue prejudice, has not shown how it would be prejudiced. No Spill contends that allowing the amendment would "inject unnecessary delay and tremendous expense" into the dispute which may result in high discovery costs. (Doc. 274). Granted, each new claim will require additional discovery and require the opposing party to expend additional time and resources. However, the proposed counterclaim arises from the same facts as the Plaintiffs' claim and involve common questions of fact and law. Further, the merger

between Midwest Can and No Spill occurred in December of 2020, details of the transaction were not revealed until April 2021, deposition testimony was not conducted until May 2021, and the new Plaintiffs were not substituted until June 2021. Given the change in No Spill's structure and the progression of the case, additional discovery would not be an unnecessary delay and will not affect No Spill's ability to prepare its defense. Accordingly, the Court will analyze whether it is appropriate for leave to be granted to add the counterclaims and counterclaim defendants.

### b. Leave to add counterclaims and counterclaim defendants

Scepter argues that the right to relief sought in the counterclaim arises from antitrust violations pertaining to the licensing agreements NSIP had with Midwest Can, and that it arises out of a series of transactions involving the counterclaim defendants. Further, it contends that all the proposed counterclaim defendants involve common questions of law or fact. No Spill argues that the proposed counterclaims are futile, and therefore, should be rejected.

### i. Federal Rule of Civil Procedure 20

No Spill does not contest that the counterclaim meets the Rule 20 standard. The first part of Rule 20 requires that the counterclaim arise from the same transaction or occurrence as the original claim from the plaintiff. Fed. R. Civ. P. 20(a)(2). Plaintiffs' amended complaint alleges that Scepter infringed on No Spill's

8

patent, breached its contract, and engaged in unfair competition. While the proposed counterclaims allege that No Spill was engaging in anti-competitive practices in violation of the Sherman Act and the common law of Kansas. Specifically, it is alleged that No Spill and the proposed Counterclaim Defendants were involved with a series of licensing agreements that were anti-competitive. The licensing agreements involve the alleged infringed patents. Moreover, the counterclaims relate to the patents in dispute and the business practices of the Plaintiffs during the original cause of action. The question of market share is relevant to both patent damages and the antitrust monopolization claim. Lastly, the Defendants assert a defense of unclean hands, which may involve the same evidence as the proposed antitrust claims.

The second part of Rule 20 is similarly satisfied. The proposed counterclaim alleges that all the defendants engaged in anti-competitive practices in violation of federal law, and therefore, contains a common question of fact and law common to all defendants. All proposed counterclaim defendants are alleged to have engaged in illegal conduct with each other or owned a stake in the entities that did. So, if the proposed counterclaims are not futile, then it is appropriate to join the proposed counterclaim defendants. In any event, the proposed counterclaim meets the Rule 20 standard.

c. **Futility**

Moving to the more contested issue of futility, No Spill, in essence, makes two contentions: (1) Scepter lacks standing and (2) even if the allegations are accepted as true, the acts of No Spill were not violative of any law.

### i. Standing

Article III standing arises from the Constitution's case-or-controversy requirement. *See* U.S. Const. art. III § 2. The three-part test for determining standing requires the plaintiff to prove: (1) an injury in fact (2) that was caused by the defendant and (3) is redressable in court. *N.M. ex rel. State Eng'r v.* Carson, 908 F.3d 659, 665 (10th Cir. 2018). The plaintiff "bears the burden of establishing an actual or imminent injury that is concrete and particularized rather than conjectural or hypothetical." *Catron County Bd. Of Comm'rs v. United States Fish & Wildlife Serv.*, 5 F.3d 1426, 1433 (10th Cir. 1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)). In order to satisfy the actual injury requirement, a plaintiff needs to show only a minimal degree of harm. *Lujan*, 504 U.S. at 566 (explaining that standing is not an "ingenious academic exercise" and just requires facts showing perceptible harm).

In order for a plaintiff to have standing to assert antitrust claims, the plaintiff must have suffered an antitrust injury. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110 (1986). To show an antitrust injury, the injury must be more than causally linked to an illegal presence in the market. *Brunswick Corp. v. Pueblo Bowl-*

*O-Mat, Inc.*, 429 U.S. 477, 489 (1977). The injury must be of the type that antitrust laws were intended to prevent and must be a type of loss that the claimed violations would be likely to cause. *Id.*

In this case, Scepter argues that it would have benefitted from increased competition in the relevant market, and therefore, a lower royalty fee, if it were not for the alleged conduct from No Spill. (Doc. 278, at 21). It further argues that, "[a]s a direct and proximate result of Counterclaim Defendant's activities, the Scepter Entities were deprived of a competitive market for FMD technology" due to the alleged anticompetitive scheme and artificially inflated royalty rates. (Doc. 264, at 50). No Spill contends that Scepter's allegations are conclusory and lack facts to support its allegations. (Doc. 274, at 14). No Spill notes that Scepter has not entered into any licensing agreement, and therefore, has not suffered any injury. (Doc. 274, at 15).

To support No Spill's position, it cites a case from the Western District of Wisconsin which dismissed a case due to Apple's inability to produce evidence showing injury. *See Apple v. Motorola*, 886 F. Supp. 2d 1061 (W.D. Wisc. 2021). However, as to the issue of standing at this stage of litigation, Scepter has demonstrated an antitrust injury. Scepter alleges that due to an anticompetitive agreement, it was forced to "pay at least as much as the artificially inflated royalty price." (Doc. 264-2, at 57). Antitrust laws were meant to protect competition. John

11

J. Miles, *Purpose and definition of the antitrust laws* § 1:2 (Westlaw 2021). And the facts, as plead, state the presence of anticompetitive scheme by which Scepter was financially burdened. Accordingly, Scepter has plead an antitrust injury and has standing to pursue the matter.

### ii. Plausibility of Claims

The Defendants allege that No Spill and its partners violated Section 1 of the Sherman Act (15 U.S.C. § 1). In order to establish a violation, the party must prove an agreement or concerted activity between separate parties to unreasonably restrain trade. *Fisher v. City of Berkeley*, 475 U.S. 260, 266-67 (1986); *McKenzie v. Mercy Hosp. of Independence, Kan.*, 854 F.2d 365, 367-68 (10th Cir. 1988). The two main tests for determining whether a defendant unreasonably restrained trade is (1) the *per se* rule and (2) the rule of reason. *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1203 (10th Cir. 2006). The rule of reason approach is the presumptive approach when analyzing unreasonable trade restraint. *Id.* This approach analyzes whether a defendant's conduct harms competition and then whether that harm is justified by countervailing procompetitive benefits. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 36 F.3d 958, 963 (10th Cir. 1994). The *per se* rule is reserved for "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm

12

they have caused or the business excuse for their use." *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 289 (1985). This approach should only be used when conduct is "manifestly anticompetitive." *Gregory*, 44 F.3d at 1203. Therefore, if *per se* treatment is not warranted, the rule of reason approach should be used. *Nw. Wholesale*, 472 U.S. at 296-97.

The rule of reason calls for a holistic assessment of the parties' evidence and then determine whether the challenged conduct restrains trade unreasonably and should be prohibited under the Sherman Act. *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). When using the holistic approach that the rule of reason requires, the claim must allege enough facts to plausibly conclude the defendant's conduct had an adverse effect on competition. Direct or indirect evidence of actual anticompetitive effects will suffice for establishing the initial burden. *Buccaneer Energy*, 846 F.3d at 1311.

In this case, Scepter argues that No Spill and Midwest Can entered into a series of anticompetitive agreements that restrained trade on the market. (Doc. 264-2, at 71-72). Scepter further pleads that the royalty rate was set in order to raise competitor's costs and foreclose competition by precluding new entrants into the marketplace. (Doc. 264-2, at 72). In response, No Spill contends that its agreement was within its statutory grant of authority thought its patent. (Doc. 274, at 16-17). In essence, No Spill claims that Scepter's claims are meritless because it has a right

13

to set "unreasonable" or "artificially high" royalty rates that may or may not have anticompetitive effects.

Absent any overriding unlawful misconduct, a patent holder can exact royalties as high as obtainable. *In re Independent Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1454, 1459 (D. Kan. 1997) (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 230 (1964)). However, the patent monopoly cannot be used to disregard antitrust laws. *Id.* (citing *United States v. Line Material Co.*, 333 U.S. 287, 308 (1948)). In other words, the possession of a valid patent does not give the patent holder the right to act beyond the limits of the patent. *Id.* But it is a high bar for the actions of a patent holder to rise to an antitrust violation. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 140 (1969) (discussing how a patentee's act may constitute patent misuse without rising to the level of an antitrust violation).

"When a patent owner uses his patent rights not only as a shield to protect his invention, but as a sword to eviscerate competition unfairly, that owner may be found to have abused the grant and may become liable for antitrust violations when sufficient power in the relevant market is present." *Independent Serv.*, 964 F. Supp. at 1460 (citing *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1576 (Fed Cir. 1990)). At the current stage of litigation, a ruling of futility would be inappropriate. It cannot be said that No Spill had a "blank check" to act as it

pleased in the marketplace. Scepter has plead facts that may give rise to a viable Sherman Act claim. Therefore, the Court rules that claims arising under Section 1 of the Sherman Act are not futile and may be added.

Under Section 2 of the Sherman Act, it is illegal for a person or entity to monopolize or attempt to monopolize. 15 U.S.C. § 2. Section 2 embodies a conspiracy claim that requires concerted action by the plurality of actors. *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231 (10th Cir. 2017). The elements of a § 2 Sherman Act monopolization claim are: (1) monopoly power in the market; (2) willful acquisition of this power through exclusionary conduct; and (3) harm to competition. *Id.* While the elements of an attempted monopolization claim are: (1) anticompetitive conduct; (2) specific intent to monopolize; and (3) dangerous probability of achieving monopoly power. *Id.*

A patentee that acquired and maintained its monopoly without excluding competitors by improper means is not guilty of violating Section 2 of the Sherman Act and charge any price he wants. *Independent Serv.*, 964 F. Supp. at 1460 (citing *Blue Cross & Blue Shield United of Wisc. V. Marshfield Clinic*, 65 F.3d 1406, 1413 (7th Cir. 1995)). However, pricing strategies can be subject to antitrust scrutiny. *Id.* For instance, the District of Kansas rejected the argument that a

patentee can charge any price he wants in violation of antitrust laws. *See id.* (sent case to jury).

No Spill takes the position that it has not achieved monopoly power, does not have a dangerous probability of acquiring one, and has not conspired to maintain one. (Doc. 274, at 22). While Scepter asserts that there is direct evidence of monopoly power through No Spill's own admissions and actions in the marketplace. (Doc. 278, at 28). The Court agrees that there are sufficient facts claimed to make a plausible claim of a Section 2 violation. Therefore, the Court rules that claims arising under Section 2 of the Sherman Act are not futile and may be added.

Section 7 of the Clayton Act prohibits the acquisition by one corporation of stock of another when the result would lead to the substantial lessening of competition and tend to create monopoly power. 15 U.S.C. § 18; *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 313 (1962). A horizontal merger is an arrangement between two companies performing similar functions in the production or sale of goods. *Brown Shoe*, 370 U.S. at 334. The effect of competition of horizontal mergers depend upon the degree to which competition has been impacted. *See id.* at 334-336. Factors include the size of the product and geographical markets, and the probable effect of the merger. *See id.* Scepter alleges that No Spill and Midwest Can merged and reduced the number of meaningful

competitors in the relevant market. (Doc. 264-2, at 77-78). Again, at this stage in litigation, the Court finds it appropriate to allow Scepter to add this counterclaim.

## IV.  Conclusion

For the reasons set forth above, Defendants/Counterclaim Plaintiffs' motion for leave to amend their answer to assert counterclaims and join counterclaim defendants, doc. 258, is **GRANTED**.

Defendants are Ordered to file their Answer to the Second Amended Complaint and their Counterclaims (Doc. 259-3) within 5 days and obtain service upon the Third-Party defendants without delay, and in any event, within 14 days. The Court will set a Scheduling Conference when the new parties appear. The Court's ruling on the futility issues are without prejudice to the presentation of these issues to the District Judge pursuant to Rule 12(b)(6).

IT IS SO ORDERED.

Dated at Wichita, Kansas, on this 30th day of August 2021.

/S KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge