IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NO SPILL, LLC and TC CONSULTING, INC. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 18-cv-2681-HLT-KGG |
| ) | |
| SCEPTER CANADA, INC., and SCEPTER ) | |
| MANUFACTURING LLC ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON MOTION AND SUGGESTIONS TO COMPEL USE OF SEARCH TERMS FOR ELECTRONICALLY STORED INFORMATION

Plaintiffs, No Spill, LLC and TC Consulting, Inc., file the present "Motion and Suggestions to Compel Use of Search Terms for Electronically Stored Information." (Doc. 279). Defendants, Scepter Canada, Inc. and Scepter Manufacturing LLC, oppose the motion, and alternatively request that Plaintiffs pay all costs associated with review and production of any documents exceeding 10,000. (Doc. 281). Having reviewed the submissions of the parties, the Court **GRANTS IN PART AND DENIES IN PART** the present motion before the Court.

## I.    Background

The Plaintiffs, TC Consulting, Inc.[1] and No Spill, LLC (herein "No Spill" or "Plaintiffs"), are a Kansas corporation that holds two patents relating to preventing the

---

[1]TC Consulting, Inc. is a Kansas corporation that received all the capital stock of No Spill, Inc., which gave it a stake in the litigation at hand and was subsequently added to the suit. (Doc. 254).

1

explosion of portable fuel containers ('075 and '132 patents). (Doc. 41). No Spill makes six claims against Scepter Manufacturing, LLC and Scepter Canada, Inc. (collectively herein "Scepter" or "Defendants") alleging claims for patent infringement, breach of contract, and engaging in unfair competition. (*Id.*). The district court has already entered a *Markman* Order in this case. (Doc. 257).

The present dispute centers around the use of search terms for electronically stored information ("ESI"). At the beginning of discovery, the parties came to an agreement that they would utilize mutually agreeable search terms pursuant to an ESI Protocol. However, the parties were unable to agree to numerical search term limitations. (Doc. 279, at 5). Scepter wanted a concrete numerical limitation while No Spill wanted to determine the limitation on a case-by-case basis and not agree to a limit on the number of search terms. (*Id.*). Since the parties could not agree, they decided to proceed with discovery while reserving the right to object to any search term they believe was outside the scope of discovery or unduly burdensome. Scepter provided a response where they would produce a maximum ten custodians and five search terms per custodian; however, no agreement to specific search terms was reached. (Doc. 281, at 9–10). Their suggestion, in part, was taken from the Federal Circuit E-Discovery Model Order which provides:

> **Limitations on Email Requests**: Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business. Email production requests shall identify the custodian, search terms, and time frame.

(Doc. 281, at 10). Scepter then proposed 12 custodians and 8 search terms, and a condition where a search term may not result in more than 1000 non-duplicative hits, which was

rejected by No Spill. (*Id.*). In short, an agreement limiting the number of "hits" a term could generate was never reached.

On August 26, 2020, the parties exchanged custodian and search term proposals.[2] (Doc. 279, at 6). Scepter responded to No Spill's proposal on January 25, 2021 and asserted that the proposal was overly burdensome because No Spill's proposed search terms resulted in 928,487 documents de-duplicated by custodian. (*Id.*; Doc. 281, at 11). They instead suggested that the searches be limited to the five big-box retailers[3]. In an effort to resolve the dispute, the parties met and conferred on January 27, 2021 but could not reach a resolution. No Spill contacted Scepter on February 4, 2021 and requested the information sought, or in the alternative, wanted Scepter's availability to schedule a pre-motion

---

[2] No Spill proposed the following 43 search terms: 1. "No Spill" 2. NoSpill 3. NSP 4. NS 5. Cray 6. Christa w/2 Pitcher 7. Lenexa 8. FMD 9. "flame mitigation device" 10. Bekum 11. blow w/3 mold w/2 machine 12. 204705-5-053 13. 2047055053 14. nospill.com 15. breach w/10 (contract OR agreement) 16. "Force Majeure" w/10 reason 17. "Force Majeure" w/10 terminat! 18. "Force Majeure" w/10 end 19. weekend w/5 production 20. run w/5 weekend 21. "failure mode" 22. reject w/5 order 23. accept w/5 order 24. reject w/5 PO 25. accept w/5 PO 26. revise w/5 PO 27. unable w/5 deliver 28. unable w/5 ship 29. purchase w/5 option 30. Hovey 31. (FMD OR flash OR flame OR fuel OR gas) AND (combust! OR explod! OR explos! OR ignit!) 32. (FMD OR flash OR flame OR fuel OR gas) AND (effect! OR Exponent OR Vexa OR (great /5 lakes) OR Brighton OR flow OR CARB OR ASTM) 33. Perforat! w/10 (retain! OR retention OR hold OR saturat! OR fuel OR gas OR mix!) 34. (FMD OR Flash OR Flame OR Fuel OR GAS) AND (retain! OR hold OR saturat!) 35. (FMD OR flash OR flame) AND ((fuel OR gas) /10 air) OR spark) 36. (FMD OR flash OR flame OR fuel OR gas OR 175 OR 032) AND (patent OR application) 37. (Walmart OR (Home /2 Depot) OR Lowe! OR Northern OR Tractor OR BASS or Amazon) 38. ("Easy Can" OR EasyCan) AND (nozzle OR spout OR look OR appear! OR design OR horizontal) 39. ("five gallon" OR "5-gallon) AND (mold OR terminat! OR return OR damage!) 40. FMD AND projection OR forecast OR estimat! OR market 41. (R1 or SmartControl or AmeriCan or EasyFlo) AND (projection OR forecast OR estimate!) 42. ("Easy Can" OR "EasyCan") AND (Walmart OR (Home /2 Depot) OR Lowe OR Nothern OR Tractor OR Bass or Amazon) 43. Scepter AND Canada AND Miami AND manufactur!

[3] The proposed search was "Walmart OR (Home /2 Depot) OR Lowe! OR Northern OR Tractor OR Bass OR Amazon." (Doc. 281, at 11).

conference with the Court. (Doc. 279, at 7). In response, Scepter provided a portion of the information requested on February 18, 2021. (*Id.*). No Spill provided two counter-proposals in an effort to obtain the information it had requested in January of 2021—the first on March 12, 2021, and the second on May 24, 2021. Scepter found the search terms overly burdensome and not proportional because it resulted in hundreds of thousands of hits. (Doc. 281, at 11). No Spill's final proposal was produced on June 22, 2021 in which it requested that Scepter identify the search terms it would agree to run and then resolve the remaining issues before the Court. (Doc. 279, at 7).

Plaintiffs planned to move forward with a motion to compel if the Defendants did not agree to the final set of search terms that would have resulted in 342,375 documents de-duplicated. (Doc. 281, at 12). Scepter wanted Plaintiffs to identify which production requests the search terms were intended to address. (*Id.*). In response, Plaintiffs asserted that they did not believe that a blanket request to tie each term to a specific Request for Production ("RFP") is appropriate and would rather provide that information if Scepter objected to a specific term on the basis of burden and was unable to identify how it relates to a RFP. (*Id.*). Scepter then communicated that they would perform any of the requested searches if Plaintiff would agree to cost shifting over 10,000 documents. (*Id.*). Unable to reach an agreement, Plaintiffs filed the Motion to Compel (Doc. 279) on August 16, 2021 that is presently before the Court.

## II.   Legal Standard

Federal Rule of Civil Procedure 34 permits a party to request documents and ESI in discovery. The document request issued must also be within the general scope of

discovery under Fed. R. Civ. P. 26(b)(1). *Phillips v. Boilermaker-Blacksmith Nat'l Pension Trust*, No. 19-2402-DDC-KGG, 2020 WL 5642341, at *3 (D. Kan. Sept. 22, 2020). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). As such, for the information to be discoverable, the requested information must be nonprivileged, relevant, and proportional to the needs of the case. *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

A party may file a motion to compel when the responding party fails to permit discovery. *Sperry v. Corizon Health*, No. 18-3119-EFM-ADM, 2020 WL 5642343, at *3 (D. Kan. Sept. 22, 2020). The initial burden rests with the party seeking discovery, but the moving party need not address all proportionality considerations. *Id.* Once the initial burden has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Carter v. Union Pac. R.R.*, No. 20-2093-DDC-KGG, 2021 WL 1250958, at *2 (D. Kan. Apr. 5, 2021) (citing *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661, 670–71 (D. Kan. 2004)).

## III.   Analysis

In opposing Plaintiffs' motion to compel, Scepter objects that the duty to meet and confer has not been met, the RFPs are overly burdensome, and the RFPs are not proportional to the needs of the case.

### a. Duty to Meet and Confer

Scepter's first objection to Plaintiffs' motion to compel contends that Plaintiffs have failed to meet and confer in good faith. (Doc. 281, at 14). Indeed, a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The local rules further state that a court "**will not entertain** any motion to resolve a discovery dispute" unless a reasonable effort has been made to confer regarding the motion's underlying issues prior to the filing of the motion. D. Kan. Rule 37.2 (emphasis added). The local rule also requires the certification to describe with particularity the steps taken by all counsel to resolve the issue in dispute. These requirements encourage parties to resolve discovery disputes "without judicial intervention." *Cotracom Commodity Trading Co. v. Seaboard Corporations*, 189 F.R.D. 456, 459 (D. Kan. 1999); *see also VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, No. 98–2138–KHV, 1999 WL 386949, at *1 (D. Kan. June 8, 1999).

Here, Scepter alleges that Plaintiffs "deliberately withheld the identification of RFPs related to their search terms." (Doc. 281, at 14). And by withholding the identification of the RFPs, it effectively stalled good-faith discussions regarding the discovery materials sought. Scepter further takes issue with the fact that Plaintiffs agreed

to not identify the RFPs for the first time in the motion to compel and did so anyway despite their prior representations. (*Id.*). In their Reply, No Spill finds Scepter's characterization of the discussions to be misleading (if not false) and immaterial to the issues before the Court. (Doc. 289, at 6).

The parties appear to be in disagreement about the extent of Scepter's cooperation in identifying RFPs related to their search terms. On June 22, 2021, No Spill reached out to Scepter requesting they identify which terms they object to and then provide a hit report for No Spill to evaluate the objection. (Doc. 279-12, at 5). Just over two weeks later on July 7, Scepter responded: "Just to confirm, Plaintiffs' are not willing to identify which RFPs any of these terms relate to, correct?" (Doc. 279-12, at 3). No Spill then responded that day:

> That is not correct. As I said when we spoke about this on the phone, we do not believe tying each term to a specific RFP should be a prerequisite to Defendants considering the terms and feel that a blanket request to do so for each term is not based on Defendants having actually identified terms they do not believe relate to information requested by one or more RFPs. If there are specific terms you are objecting to on the basis of burden where you are unable to identify any RFP you believe they relate to, we remain willing to provide that information.

(*Id.*). Evaluating the email exchange shows that the dispute pertains to whether the Plaintiffs should have to identify how each search term relates to a specific RFP without the Defendants first identifying terms they don't believe relate to information requested by the RFPs.

As this objection relates to the duty to meet and confer, the Court is satisfied that there is sufficient good faith discussion. The parties have had several meetings

concerning the matter, discussed the situation with the Court, and have communicated for over a year. Having a dispute regarding how the search terms relate to the RFPs does not necessarily rise to bad-faith discussion. And in any event, additional time to confer would likely be futile. *Cf. White v. Graceland College Ctr. for Prof. Dev. & Lifelong Learning, Inc.*, No. 07–2319–CM, 2009 WL 722056, at *2 (D. Kan. Mar. 18, 2009) (holding that a court can consider the underlying issues when "the interests of justice are best served by taking up the motion [to compel] on its merits...."). Accordingly, Scepter's objection that the duty to meet and confer has not been met is **overruled**.

### b. Relevance

When assessing the relevance of the information sought, the Court must determine whether the search terms relate to the language used in the RFP. *See Phillips*, 2020 WL 5642341, at *3. Local Rules require that discovery requests and responses which are the subject of a motion to compel be attached to the motion. D. Kan. Rule 37.1. The Court notes that the Plaintiffs failed to attach the relevant RFPs. In other cases, the Court has found grounds to deny the motion on that basis. *See, e.g.*, *Phillips*, 2020 WL 5642341, at *4. In *Phillips*, the Court denied the motion to compel because the RFPs were not available to assess proportionality or burdensomeness, and even though the parties spent a good deal of time and expense concerning the issue, the Court could not rule on the merits. This case is dangerously close to the same result. However, in *Phillips*, the Plaintiffs made *no attempt* to tie the search terms to the underlying RFPs and no discussion of whether the requests were within the scope of discovery. *Id.* at *3. However, in this case, the Plaintiffs attached an exhibit which provided a summary of the

search terms and how they relate to specific RFPs. (Exhibit 13). The Court has attached the Exhibit as an appendix to this Order. The Exhibit provides the specific search terms they are seeking to compel and then provided which RFPs relate to that search term. In addition to that Exhibit, they also provide a discussion of the RFPs in their Motion and why they are relevant to the case. (Doc. 279, at 9–11).

In particular, they describe the RFPs and which search term applies. They breakdown the RFPs into four categories: (1) operation of the product; (2) Scepter's knowledge of No Spill's products; (3) Scepter's financial information; and (4) Scepter's fulfillment of No Spill's orders. They allege that terms 1, 4, 5, 11, 12, 14, 15, 16, 18, 22, 25, 28 apply to category 1. Terms 9, 17, 18, 19, 20, 25, 26 apply to category 2. Terms 2, 3, 6, 7, 8, 10 apply to category 3. And terms 13, 17, 21, 23, 24, 26, 27, 29-31 apply to category 4. The Court also notes that the number of RFPs in this case is particularly voluminous (several hundred). Moreover, Defendants do not oppose the motion on these grounds. Defendants' primary opposition lies in the burdensomeness and the proportionality of the discovery sought. Given that there is an attempt to attach specific search terms to the RFPs *and* the Plaintiff has sufficiently categorized and described the RFPs, the Court finds that there is sufficient information to assess the relevance, proportionality, and burdensomeness of the present motion to compel. The information provided, in this case, can be used in place of the actual RFPs to satisfy Local Rule 37.1.

However, Plaintiffs' counsel in this case would be well advised to pay closer attention to the local rules in the future.[4]

The first category of RFPs is the operation of the infringing products, which is relevant to the issue of patent infringement. The corresponding search terms sought are:

| Search Terms | Examples of Corresponding Requests to Scepter Manufacturing | Examples of Corresponding Requests to Scepter Canada |
|---|---|---|
| 1. (FMD OR flash OR arrest*) AND (fuel OR gas) AND (combust* OR explod* OR explos* OR ignit*) | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 4. (FMD OR flash OR flame OR fuel OR gas) AND (("Air Resources") OR (CARB w/10 (regulat* OR report OR statute OR Board OR submission))) | RFP No. 200, 201, 202, 203, 204 | RFP No. 178, 179, 180 |
| 5. (FMD OR Flash OR ARREST*) AND (retain* OR hold OR saturat*) AND (gas OR gasoline OR vapor OR liquid) | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 11. FMD OR flash OR flame OR fuel OR gas) AND Vexa | RFP No. 255, 256, 257, 258, 259, 260, 261, 262 Vexa is a third party that conducted testing for the Scepter entities. | RFP No. 184, 185, 186, 187, 188, 190, 191 Vexa is a third party that conducted testing for the Scepter entities. |

[4]To be clear, the Exhibit provided is a helpful summary to the Court; however, Local Rules do require the RFPs in dispute be attached to the Motion.

| | | |
|---|---|---|
| 12. (FMD OR flash OR flame OR fuel OR gas) AND (great w/5 lakes) | RFP No. 133<br><br>Great Lakes is a third party that worked on projects for the Scepter entities involving the Infringing Products. | RFP No. 119<br><br>Great Lakes is a third party that worked on projects for the Scepter entities involving the Infringing Products. |
| 14. "flame mitigation device" | RFP No. 64, 67, 70 | RFP No. 71, 74 |
| 15. (FMD OR flash OR flame OR fuel OR gas) AND Brighton | RFP No. 46, 47, 48 | RFP No. 52, 53, 54 |
| 16. (FMD OR flash OR flame OR fuel OR gas) AND Exponent | RFP No. 51, 71, 72, 200, 201, 202, 204 | RFP No. 47, 57, 75, 76, 115, 141 |
| 18. ((FMD OR flash OR flame OR fuel OR gas OR 175 OR 032) AND (patent OR application)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 47, 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 22. (Perforat* w/10 (retain* OR retention OR hold OR saturat* OR fuel OR gas OR mix*)) | RFP No. 14, 17, 29 | RFP No. 3, 16, 17 |
| 25. ((FMD OR flash OR flame) AND (((fuel OR gas) w/5 air) OR spark)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |

| 28. "204705-5-053" | RFP No. 111<br><br>This is the serial number to the Bekum blow mold machine referenced in the Supply Agreement. | This is the serial number to the Bekum blow mold machine referenced in the Supply Agreement. |
|---|---|---|

All of the proposed searches are seeking information related to flame mitigation devices which is one of the alleged infringed products in this case. Along with searches for flame mitigation devices, the searches are combining words such as "flame," "gas," "fuel," and "flash." All of these words could reveal discovery pertinent to the issues in the case. Some of the search terms are seeking very specific information such as information related to Great Lakes, a third party working with Scepter, and the fuel mitigation device. This also relates to the issues in this case. So, the search terms related to category one of the RFPs are relevant.

The second category of RFPs relate to Scepter's knowledge and discussion of the No Spill product, trade dress, and patent in dispute. (Doc. 279, at 10). Among the claims that No Spill is alleging is willful infringement of the patent. So, knowledge and intent are at issue in the case. As such, information relating to Scepter's knowledge and discussion of the product are relevant. The second category of search terms are:

| Search Terms | Examples of Corresponding Requests to Scepter Manufacturing | Examples of Corresponding Requests to Scepter Canada |
|---|---|---|
| 9. (FMD OR flash OR arrest*) AND (fuel OR gas) AND "No Spill" | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 17. NoSpill | RFP. No. 25 | RFP No. 30 |
| 18. ((FMD OR flash OR flame OR fuel OR gas OR 175 OR 032) AND (patent OR application)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 47, 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 19. Hovey AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD OR patent OR "trade dress") | RFP. No. 25 | RFP No. 24, 30 |
| 20. "failure mode" AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD OR "flame mitigation") | RFP. No. 25 | RFP No. 24, 30 |
| 25. ((FMD OR flash OR flame) AND (((fuel OR gas) w/5 air) OR spark)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |

| 26. nospill.com | RFP No. 67 | RFP No. 60 |
| --- | --- | --- |

The search terms sought are words such as "No Spill," "FMD," "flame," "fuel," etc. Many of the search term requests are used in combination with one another in order to obtain ESI that relates to both No Spill and the product in dispute. So, the search terms are relevant to the RFPs and may produce relevant discovery.

The third category of RFPs pertain to Scepter's financial situation including profits, projections, and transactions. Damages in patent cases rely on the manufacturing and marketing capability of the alleged infringing party as well as profits the patent owner could have made. Therefore, information that goes to Scepter's profits and financial dealings may be relevant to the question of damages. As such, search terms that go this question may produce relevant information. The category 3 search terms are:

| Search Terms | Examples of Corresponding Requests to Scepter Manufacturing | Examples of Corresponding Requests to Scepter Canada |
| --- | --- | --- |
| 2. (Walmart OR (Home w/2 Depot) OR Lowe* OR Northern OR Tractor OR BASS OR Amazon) AND ((suppl* or vend* or buy*) w/5 agree*) | RFP No. 62, 63, 64, 65, 66, 67, 68, 69, 70 | RFP No. 69, 70, 71, 72, 73, 74, 140 |
| 3. (FMD OR "Flame mitigation device") AND (project* OR forecast) AND (sale or sell or profit or unit or market) | RFP No. 8, 9, 13, 30, 76, | RFP No. 4, 5, 8, 9, 19, 40 |

| | | |
|---|---|---|
| 6. "(R1 or SmartControl) AND ((projection OR forecast OR estimate*) w/25 (sales OR profit OR margin)) | RFP No. 176, 179, 182, 185, 188, 191, 194, 197, 200, 203 | RFP No. 154, 160, 163, 166, 169, 172, 175, 178, 181 |
| 7. (AmeriCan OR EasyFlo) AND ((projection OR forecast OR estimate*)) w/25 (sales OR profit OR margin)) (date range of 1/1/2016 forward)" | RFP No. 177, 178, 180, 181, 183, 184, 187, 189, 190, 192, 193, 195, 196, 198, 199, 201, 202, 204, 205<br><br>AmeriCan and EasyFlo are the Infringing Products. | RFP No. 154, 156, 159, 160, 162, 163, 164, 165, 166, 168, 169, 172, 174, 175, 177, 178, 180, 181, 183<br><br>AmeriCan and Easyflo are the Infringing Products. |
| 8. (Walmart OR (Home w/2 Depot) OR Lowe* OR Northern OR Tractor OR BASS OR Amazon) AND ("FMD" OR ("flame mitigation device") OR ("No Spill") OR "NoSpill" OR "NSP") (Limit filetype to Email) | RFP No. 62, 63, 64, 65, 66, 67, 68, 69, 70 | RFP No. 69, 70, 71, 72, 73, 74, 140 |
| 10. Canada AND Miami AND manufactur* AND (level OR capacity OR forecast OR sale OR projection) (date of 1/1/2016 forward) | RFP No. 179 | RFP No. 25 |

Here, the search terms are targeting major retailers, sales, profit, and projections/forecasts. The search terms are aimed to discover the details of Scepter's involvement with various businesses as well as their financial status. The proposed search terms relate to the RFP and may produce discovery that is relevant to the case.

The fourth category of RFPs relate to Scepter's fulfillment of No Spill's orders and the machine Scepter used to manufacture the orders. One of No Spill's claims is

breach of contract against Scepter for failing to fulfill orders. So, requests for production

that seek information relating to the fulfillment of orders and the provisions of the

contract are relevant to the claim. Category 4 search terms are:

| Search Terms | Examples of Corresponding Requests to Scepter Manufacturing | Examples of Corresponding Requests to Scepter Canada |
|---|---|---|
| 13. Bekum AND family_of((((sent::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR received::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datestarted::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]) AND docclass::Message) OR (((lastmodifiedtime::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datemodified::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]) OR (((NOT lastmodifiedtime::<exists>) AND (NOT datemodified::<exists>)) AND (createdtime::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datecreated::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]))) AND docclass::EDoc) OR (((NOT sent::<exists>) AND (NOT received::<exists>) AND | RFP No. 170, 171, 172 are all directed toward the blow molding machine(s). | -- |

| | | |
|---|---|---|
| (NOT datestarted::<exists>) AND (NOT msgclass::contact) AND (NOT msgclass::distlist) AND (NOT msgclass::journal) AND (NOT msgclass::note) AND (NOT msgclass::todo)) AND docclass::Message))) | | |
| 17. NoSpill | RFP. No. 25 | RFP No. 30 |
| 21. (weekend w/5 production) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 42, 227 | RFP No. 24, 30 |
| 23. (breach w/10 (contract OR agreement)) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31, 39 | RFP No. 24, 30 |
| 24. (revise w/5 PO) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 206, 297 | RFP No. 24, 30 |
| 26. nospill.com | RFP No. 67 | RFP No. 60 |
| 27. (Christa w/2 Pitcher) | RFP No. 25 (Christa Pitcher is a No Spill employee who interfaced regularly with Scepter) | RFP No. 24, 30 |

| | | |
|---|---|---|
| 29. (accept w/5 PO) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |
| 30. (unable w/5 deliver) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |
| 31. (reject w/5 order) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |

All of the proposed search terms relate to the contract No Spill had with Scepter. Terms such as "No Spill," "breach," and "contract" are used to obtain information pertaining to the contract and its subsequent alleged breach. So, the search terms relate to the RFPs and may lead to information responsive to them. The Court has determined that all the search terms are relevant and seek discoverable information sought in the RFPs.

### c. Burdensome

Scepter objects that the Plaintiffs' requests are overly burdensome. (Doc. 281, at 15). Whereas No Spill contends the objections are without merit. (Doc. 279, at 11). In particular, what Scepter claims is overly burdensome is that 31 search terms resulted in over 1000 documents, and in the aggregate, would produce over 330,000 documents. As such, Scepter does not want to run any terms resulting in more than 1000 documents and 10,000 documents in total. No Spill views this as arbitrary.

The objecting party has the burden to show that there are facts justifying their objection by demonstrating that the time or expense in responding to the discovery

18

requests is unduly burdensome. *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002). The party objecting to the discovery request must "provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure." *Id.* "A party asserting undue burden may not rest on its assertion but must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Skepnek v. Roper & Twardowsky, LLC*, No. 11-4102-KHV, 2013 WL 5499801, at *4 (D. Kan. Oct. 3, 2013).

Here, Scepter fails to provide evidence of its burdensome objection. In support of their argument, the cite *Lawson v. Spirit AeroSystems.* In that case, the Court granted the motion to shift costs because, in part, the estimated costs and time to review would result in undue burden and expense. *Lawson v. Spirit AeroSystems*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *19–21 (D. Kan. June 18, 2020). However, in coming to that determination, the court repeatedly relied on several affidavits and declarations in the record. *Id.* at 19. Typically, providing only conclusory allegations without detailed explanations, affidavits, or other evidence demonstrating undue burden is insufficient to sustain an objection on overly burdensome grounds. *Skepnek*, 2013 WL 5499801, at *4. However, Scepter in their sur-reply suggest that the number of documents in question supports the inference that sifting through hundreds of thousands of documents will be expensive. (Doc. 297, at 2). Scepter then attached an exhibit in support. While not proper, the Court will consider the exhibit. The exhibit is an estimate of how much it will costs to review the documents. (Doc. 297-3, at 2). The review estimated that it will cost $416,635.50 to review the 342,375 documents. (*Id.*). Scepter then notes that it is

exclusive of attorneys fees and suggests it may be $200,000. The Court will not consider this number as it is conjecture and too speculative.

In this case, the potential damages award exceed $70 million. No Spill has engaged in negotiations in an attempt to reduce the burden of reviewing the documents by refining their search terms. Further, Scepter filed counterclaims in this case which may necessitate further discovery and further increase costs. The estimated costs associated with reviewing the documents is not such an undue burden when taken in context with the case as a whole. Accordingly, Scepter's objection that the search terms are overly burdensome is **overruled.**

### d. Proportionality

Scepter also objects that the compelling the use of the search terms is not proportional to the needs of the case. (Doc. 281, at 16). In support of their objection, they contend that they have already produced a significant number of documents; the amount in controversy is not enough to justify the search; and the volume of documents requested is disproportionate. In cases that involve a significant amount of ESI, proportionality considerations are especially important. *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1440923, at *1 (D. Kan. Mar. 15, 2018) (citing *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, Principle 2, 51 (2018)).

Scepter first contends that the amount of production requested is not proportional because they have already given a significant amount of discovery. (Doc. 281, at 16). In

support, they cite the Federal Circuit which limits electronic discovery to five search terms per custodian and prohibits broad terms alone such as the company's name or product name. In its reply, No Spill responds that the orders in place in other jurisdictions are for cases that are entirely patent related. (Doc. 289, at 6). They argue that the facts in the case are more than just patent infringement, but also include allegations of inducing infringement of the patent, trade dress infringement, and breach of contract. (Doc. 289, at 9).

First, inducing infringement of a patent under 35 U.S.C. § 271(b) or indirect infringement does not fundamentally change the character of the patent case. Those claims would still likely be under the scope of the Federal Circuit order. However, claims of trade dress infringement and breach of contract are not necessarily patent related. But those claims alone would not by itself substantially change the nature of the case. The Court would also note that the Federal Circuit order does not place a hard limit on five search terms per custodian, but the Court does have the power to consider up to five additional custodians for good cause. While not binding on this Court, there is some persuasion from the Federal Circuit order, so the Court will give some consideration when addressing proportionality. Scepter also notes that No Spill may have obtained discovery from other sources such as Scepter's development and testing partners and its tax accounting firm. However, the objection that the requests include, in part, documents the Plaintiffs have already received from another party is not valid. *See, e.g.*, *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 6061669, at

*2 (D. Kan. Nov. 19, 2018). So, the extent to which No Spill has received documents from other sources is not considered in the proportionality analysis.

Scepter further argues that the search is disproportionate to the amount in controversy. (Doc. 281, at 15). It characterizes the case as straightforward and not complex. They further point to a Western District of Texas practice which generally does not require general search and production of ESI absent good cause. The Court does not find the Western District of Texas practice particularly persuasive. In addition to it not being binding in this jurisdiction, the practice does not place blanket restrictions on general search and production of ESI, but rather requires good cause for a party to make such a request. Moreover, the Court is not persuaded that the search terms are simply general search terms with no target, but the proposed are terms are many times combined with other terms along with additional parameters. *See infra*, *Appendix.*

As to Scepter's contention that the claims are straightforward and lack complexity, the Court does not agree. While some of the Plaintiffs' claims may be less complex than others, as Plaintiffs point out in their briefs, the case as a whole makes several claims including patent infringement, trade dress infringement, and breach of contract. There are several elements the Plaintiffs  must prove to make their case which may necessitate extensive discovery. Moreover, Scepter has injected a multitude of other claims into the case including antitrust claims in violation of the Sherman Act and the Clayton Act. (*See* Doc. 317). So, the Court is not convinced that the case is as straightforward as Scepter claims.

Additionally, the amount in dispute is well over 70 million dollars. (*See* Doc. 281, at 18). The alleged cost of producing the documents would be $416,635.50, which is around 0.5% of the amount in dispute. However, Scepter also highlights that No Spill has produced only 12,240 documents, which they claim is disproportionate to what is being asked from them. No Spill responds that proportionality is not measured by what the other party is producing, but whether the information sought is proportional to the needs of the case. The Court agrees. The fact that No Spill has produced around 12,000 documents has no bearing on the question of proportionality. *See* Fed. R. Civ. P. 26(b)(1).

Taking into account all the considerations, the Court finds that the search terms sought are largely proportional. However, the Court does not find so-called "general search terms" proportional. To that end, the Court does not find "flame mitigation device," "No Spill," or "nospill.com" to be proportionate. Those are overbroad terms that are likely to result in many documents that are not necessary to the issues in the case. To be clear, the terms "No Spill," "flame mitigation device," and "nospill.com" can be used as proposed in the other search terms. However, those terms may not be used as standalone terms. In other words, search terms 14, 17, and 26 in the Appendix are not proportional. The other 28 search terms provided in the appendix however are more targeted towards specific requests. Accordingly, the Court finds that those 28 search terms are proportional.

Scepter has alternatively argued that No Spill should bear the cost of discovery after 10,000 documents. Typically, a party must pay its own costs to respond to discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). Granted, Rule

26(c)(1)(B) was amended to allow for the allocation of expenses in a protective order. Indeed, Scepter provided a copy of an ESI agreement from another case which involved a cost-sharing arrangement. (*See* Doc. 279-14 at 5). Of course, that is an agreement between other parties and is in no way binding to the parties in this case. Further, the Advisory Committee Notes recognize that cost shifting should not be a common practice and the responding party should continue to bear the costs of responding. Fed. R. Civ. P. 26(c)(1)(B) advisory committee notes to 2015 amendment. An often-cited case for cost-shifting is *Zubulake v. UBS Warburg LLC.* In *Zubulake*, the court used an eight-factor test when assessing whether cost-shifting is appropriate:

> (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefits to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party.

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). However, it held that cost-shifting is only appropriate if the ESI is relatively inaccessible. *Id.* at 324.

In this case, the Court does not find it appropriate to apply any cost-shifting analysis. The Court is only compelling the use of search terms that are proportional and not overly burdensome. The advisory committee notes indicates that it should not be common or the norm. And most importantly, there is no agreement in place between the parties that addresses cost-shifting. As such, the Court is not ordering any cost-shifting. However, in the event No Spill wishes to use the search terms the Court has determined

to be disproportionate, then they will be responsible for the costs. This is also consistent with the model order regarding e-discovery in patent cases.

## IV.   Conclusion

The Court finds that the 28 search terms proposed are relevant and relate to the RFPs. Scepter's objections concerning the duty to meet and confer and undue burdensomeness are **overruled.** Scepter's objection concerning proportionality is **sustained in part.** Scepter is ordered to comply with the 28 search term requests proposed in this Order. Scepter's request to allow for cost-sharing is denied to the extent the Plaintiffs use only those 28 search terms.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to compel, (Doc. 279), is **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED.**

Dated October 19, 2021, at Wichita, Kansas

/s Kenneth G. Gale
Kenneth G. Gale
U.S. Magistrate Judge

## V.    Appendix

| Search Terms | Examples of Corresponding Requests to Scepter Manufacturing | Examples of Corresponding Requests to Scepter Canada |
|---|---|---|
| 1. (FMD OR flash OR arrest*) AND (fuel OR gas) AND (combust* OR explod* OR explos* OR ignit*) | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 2. (Walmart OR (Home w/2 Depot) OR Lowe* OR Northern OR Tractor OR BASS OR Amazon) AND ((suppl* or vend* or buy*) w/5 agree*) | RFP No. 62, 63, 64, 65, 66, 67, 68, 69, 70 | RFP No. 69, 70, 71, 72, 73, 74, 140 |
| 3. (FMD OR "Flame mitigation device") AND (project* OR forecast) AND (sale or sell or profit or unit or market) | RFP No. 8, 9, 13, 30, 76, | RFP No. 4, 5, 8, 9, 19, 40 |
| 4. (FMD OR flash OR flame OR fuel OR gas) AND (("Air Resources") OR (CARB w/10 (regulat* OR report OR statute OR Board OR submission))) | RFP No. 200, 201, 202, 203, 204 | RFP No. 178, 179, 180 |
| 5. (FMD OR Flash OR ARREST*) AND (retain* OR hold OR saturat*) AND (gas OR gasoline OR vapor OR liquid) | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |

| | | |
|---|---|---|
| 6. "(R1 or SmartControl) AND ((projection OR forecast OR estimate*) w/25 (sales OR profit OR margin)) | RFP No. 176, 179, 182, 185, 188, 191, 194, 197, 200, 203<br>R1 and Smartcontrol are the Infringing Products. | RFP No. 154, 160, 163, 166, 169, 172, 175, 178, 181<br>R1 and Smartcontrol are the Infringing Products. |
| 7. (AmeriCan OR EasyFlo) AND ((projection OR forecast OR estimate*)) w/25 (sales OR profit OR margin)) (date range of 1/1/2016 forward)" | RFP No. 177, 178, 180, 181, 183, 184, 187, 189, 190, 192, 193, 195, 196, 198, 199, 201, 202, 204, 205<br><br>AmeriCan and EasyFlo are the Infringing Products. | RFP No. 154, 156, 159, 160, 162, 163, 164, 165, 166, 168, 169, 172, 174, 175, 177, 178, 180, 181, 183<br><br>AmeriCan and Easyflo are the Infringing Products. |
| 8. (Walmart OR (Home w/2 Depot) OR Lowe* OR Northern OR Tractor OR BASS OR Amazon) AND ("FMD" OR ("flame mitigation device") OR ("No Spill") OR "NoSpill" OR "NSP") (Limit filetype to Email) | RFP No. 62, 63, 64, 65, 66, 67, 68, 69, 70 | RFP No. 69, 70, 71, 72, 73, 74, 140 |
| 9. (FMD OR flash OR arrest*) AND (fuel OR gas) AND "No Spill" | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 10. Canada AND Miami AND manufactur* AND (level OR capacity OR forecast OR sale OR projection) (date of 1/1/2016 forward) | RFP No. 179 | RFP No. 25 |

| | | |
|---|---|---|
| 11. FMD OR flash OR flame OR fuel OR gas) AND Vexa | RFP No. 255, 256, 257, 258, 259, 260, 261, 262<br><br>Vexa is a third party that conducted testing for the Scepter entities. | RFP No. 184, 185, 186, 187, 188, 190, 191<br><br>Vexa is a third party that conducted testing for the Scepter entities. |
| 12. (FMD OR flash OR flame OR fuel OR gas) AND (great w/5 lakes) | RFP No. 133<br><br>Great Lakes is a third party that worked on projects for the Scepter entities involving the Infringing Products. | RFP No. 119<br><br>Great Lakes is a third party that worked on projects for the Scepter entities involving the Infringing Products. |
| 13. Bekum AND family_of((((sent::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR received::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datestarted::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]) AND docclass::Message) OR (((lastmodifiedtime::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datemodified::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]) OR (((NOT lastmodifiedtime::<exists>) AND (NOT datemodified::<exists>)) AND (createdtime::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59] OR datecreated::[2017-04-01-00-00-00 ~~ 9999-12-31-23-59-59]))) AND docclass::EDoc) OR (((NOT sent::<exists>) AND (NOT received::<exists>) AND | RFP No. 170, 171, 172 are all directed toward the blow molding machine(s). | -- |

| | | |
|---|---|---|
| (NOT datestarted::<exists>) AND (NOT msgclass::contact) AND (NOT msgclass::distlist) AND (NOT msgclass::journal) AND (NOT msgclass::note) AND (NOT msgclass::todo)) AND docclass::Message))) | | |
| 14. "flame mitigation device" | RFP No. 64, 67, 70 | RFP No. 71, 74 |
| 15. (FMD OR flash OR flame OR fuel OR gas) AND Brighton | RFP No. 46, 47, 48 | RFP No. 52, 53, 54 |
| 16. (FMD OR flash OR flame OR fuel OR gas) AND Exponent | RFP No. 51, 71, 72, 200, 201, 202, 204 | RFP No. 47, 57, 75, 76, 115, 141 |
| 17. NoSpill | RFP. No. 25 | RFP No. 30 |
| 18. ((FMD OR flash OR flame OR fuel OR gas OR 175 OR 032) AND (patent OR application)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 47, 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 19. Hovey AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD OR patent OR "trade dress") | RFP. No. 25 | RFP No. 24, 30 |

| | | |
|---|---|---|
| 20. "failure mode" AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD OR "flame mitigation") | RFP. No. 25 | RFP No. 24, 30 |
| 21. (weekend w/5 production) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 42, 227 | RFP No. 24, 30 |
| 22. (Perforat* w/10 (retain* OR retention OR hold OR saturat* OR fuel OR gas OR mix*)) | RFP No. 14, 17, 29 | RFP No. 3, 16, 17 |
| 23. (breach w/10 (contract OR agreement)) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31, 39 | RFP No. 24, 30 |
| 24. (revise w/5 PO) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 206, 297 | RFP No. 24, 30 |
| 25. ((FMD OR flash OR flame) AND (((fuel OR gas) w/5 air) OR spark)) AND ("flame mitigation" OR "Cray" OR "Brighton" OR "Johnston" OR "NoSpill" OR "No-Spill" OR "No Spill") | RFP No. 64, 67, 70, 71, 72, 145 147, 152, 256, 257, 258 | RFP No. 31, 71, 74, 75, 76, 131, 133 |
| 26. nospill.com | RFP No. 67 | RFP No. 60 |
| 27. (Christa w/2 Pitcher) | RFP No. 25<br><br>(Christa Pitcher is a No Spill employee who interfaced regularly with Scepter) | RFP No. 24, 30 |

| | | |
|---|---|---|
| 28. "204705-5-053" | RFP No. 111<br><br>This is the serial number to the Bekum blow mold machine referenced in the Supply Agreement.<br>RFP No. 170, 171, 172 are all directed toward the blow molding machine(s). | This is the serial number to the Bekum blow mold machine referenced in the Supply Agreement. |
| 29. (accept w/5 PO) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |
| 30. (unable w/5 deliver) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |
| 31. (reject w/5 order) AND ("No Spill" OR NoSpill OR "No-Spill" OR Cray OR FMD) | RFP No. 25, 31 | RFP No. 24, 30 |