IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NO SPILL, LLC and TC CONSULTING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>SCEPTER CANDADA, INC., and SCEPTER MANUFACTURING LLC,<br><br>Defendants. | Case No. 2:18-cv-2681-HLT-KGG |
| SCEPTER CANADA, INC. and SCEPTER MANUFACUTRING, LLC,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>NO SPILL, LLC, TC CONSULTING INC., MIDWEST CAN COMPANY, LLC, GENNX360 CAPITAL PARTNERS, GENNX/MWC ACQUISITION, INC., and ARGAND PARTNERS, LP<br><br>Counterclaim-Defendants. | |

**MEMORANDUM AND ORDER ON MOTION TO MAINTAIN COUNTERCLAIM PLEADING UNDER SEAL**

Now before the Court is Counterclaim Defendants' Motion to Maintain Counterclaim Pleading under Seal (Doc. 331). Counterclaim Plaintiffs filed a response brief indicating they take no position on the present motion. (Doc. 341). Having reviewed the unopposed

1

submission, Counterclaim Defendants' motion is **GRANTED IN PART and DENIED IN PART.**

## I. Background

Defendants previously moved pursuant to D. Kan. Rule 5.4.6 for an Order allowing them to file under seal their amended answer to the second amended complaint and counterclaims ("answer"). (Doc. 287). The counterclaims include violations of the Sherman Act (§§ 1, 2) and the Clayton Act (§ 7). The Court denied the request for leave to file under seal without prejudice. (Doc. 287). During a subsequent status conference, the Court granted temporary leave for the Defendants to file their answer and counterclaims under seal and allowed the filing of a redacted version for public access. (Doc. 313). The Court further instructed the parties to submit briefs on whether the counterclaim pleading should be kept under seal. Additionally, the Court allowed the Counterclaim Defendants to file their memorandum in support of the present motion under seal pending the Court's final determination of the matter. (Doc. 337).

## II. Analysis

"Courts have a long recognized common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). The right to access judicial records is an important aspect of preserving the integrity of the judicial process. *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). The court has discretion when determining whether to seal judicial records. *Id.* There is a strong presumption that judicial records

will not be sealed. *Mann*, 477 F.3d at 1149. However, the right is not absolute, it can be rebutted when other interests outweigh the public's interest in accessing the records. *Id*.

The first consideration taken into account is the public interest in the documents. *Riker v. Fed. Bureau of Prisons*, 315 F. App'x 752, 755 (10th Cir. 2009). Courts begin at the premise that the public interest is "presumptively paramount against those advanced by the parties." *In re Syngenta AG MIR 162 Corn Litig.*, Nos. MDL 2591, 14-md-2591-JWL, 2015 WL 3440476, at *1 (D. Kan. May 28, 2015). However, the weight of presumption is low when the documents "play a negligible role in the performance of Article III duties." *Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 1847033, at *4 (D. Kan. Apr. 18, 2018) (Gale, J., the undersigned) (citing *Riker*, 315 F. App'x at 755).

The documents at issue are the type that are generally made available for public access. Allowing a party to file a pleading under seal is generally disfavored. *See Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 137828, at *1 (D. Kan. Mar. 22, 1996); *see also Hill v. Mitchell*, No. 1:98-cv-452, 2012 WL 4087060, at *1 (S.D. Ohio Sept. 17, 2012) (citing *Proctor & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996)) ("[P]lacing court pleadings under seal is generally disfavored, in view of the long tradition of valuing public access to court proceedings."). Reviewing and analyzing the pleadings are critical to the role of a judge when exercising his or her Article III duties. As such, the public interest in the documents is high and the Defendants must overcome a strong presumption against leave to file under seal.

The next factor considered are the parties' competing interest. *See Riker*, 315 F. App'x at 755. The District of Kansas has recognized confidential pricing information,

3

confidential personnel and business information, and sensitive financial details as legitimate countervailing interests. *See, e.g.*, *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 101858, at *4–5 (D. Kan. Jan. 10, 2007) (confidential pricing information); *Univ. of Kan. Ctr. For Rsch., Inc. v. United States by Dep't of Health & Hum. Servs.*, No. 08-2565-JAR-DJW, 2009 WL 10689840, at *2 (D. Kan. Nov. 17, 2009) (confidential personnel and business information); *Reser's Fine Foods, Inc. v. H.C. Schmieding Produce Co., LLC*, No. 16-4160-SAC, 2017 WL 784755, at *2 (D. Kan. Mar. 1, 2017) (sensitive financial details). These countervailing interests are more likely to rebut the initial presumption when the confidential information is not at issue in the immediate proceedings. *See Reser's*, 2017 WL 784755 at *2 (noting the relevancy of the information sought to be sealed is influential).

### a. Royalty Rates and Cost of Goods Sold

Counterclaim Defendants seek to redact several portions of the answer and counterclaim from public view. The Court will outline which redactions pertain to royalty rates and the cost of goods sold:

> Paragraph 44 of the answer details internal negotiations regarding proposed royalty rates. (Doc. 316, at 60). The exact royalty rate percentage proposed was redacted by the counterclaim defendants. (*Id.*).
>
> Paragraph 47 of the answer alleges conversations that took place when the MWC licensing agreement was being structured. (Doc. 316, at 61). The exact royalty percentage, and the purported exact dollar increase in portable fuel containers from Fuel Mitigations Devices ("FMD") were redacted. (*Id.* at 61–62).
>
> Paragraphs 50 and 51 allege the royalty fee Midwest Can agreed to pay No Spill as well as the royalty fee that was contemplated in the MWC licensing agreement.

4

(Doc. 62, at 62). Counterclaim defendants redacted the percentages contained in the allegations. (*Id.*).

Paragraph 54 alleges that the MWC licensing agreement contained an artificially inflated royalty rate and suggests that Midwest Can acknowledged the actual value of the FMD intellectual property. (Doc. 316, at 63). The alleged artificially inflated royalty rate was redacted as well as the amount the royalty would drop if the patents were invalidated. (*Id.*).

Paragraph 56 alleges what No Spill uses as its royalty rate for licensing its FMD intellectual property. (Doc. 316, at 63). The exact rate has been redacted by counterclaim defendants. (*Id.*).

Courts in the District of Kansas have held that monetary amounts paid for licensing can outweigh the public's right to access judicial records. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 17-md-2785-DDC-TJJ, 2021 WL 308552, at *2 (D. Kan. Jan. 29, 2021). This is particularly true when the redaction doesn't affect the public's ability to understand the facts underlying the claim. *Id.* Moreover, redacting details of a document may be appropriate when the information may hurt the litigant's competitive standing in the marketplace. *Nixon*, 435 U.S. at 598.

Counterclaim Defendants contend that allowing the royalty percentages to remain under seal would have a negative effect on No Spill's and Midwest Can's competitive standing. (Doc. 333-1, at 9). They argue that disclosure of that information would enable third parties to gain unfair leverage over them in potential future licensing negotiations. (*Id.*). They further claim that the revelation of this information may also provide insight on their pricing and business strategies. (*Id.*).

The Court finds Counterclaim Defendants' arguments persuasive. There is significant precedent for redacting royalty pricing arrangements. Moreover, the exact

5

dollar amount or exact percentage is not crucial to understanding the claims in the case. *See In re EpiPen*, 2021 WL 308552, at *2. The public will be able to understand the pertinent facts and the basis of those claims, especially when considered in the context of the entire answer. *See id.* Accordingly, the redactions as proposed in paragraphs 44, 47, 50, 51, 54, and 56 will be allowed to remain.

### b. Details of Litigation Management Agreement

As mentioned earlier, information may remain under seal when public disclosure of the information may harm the litigant's competitive standing. *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013). Paragraph 63 alleges details of a litigation management agreement entered into by No Spill (Doc. 316, at 66). The proposed redactions shield most of the allegation from public view. Paragraph 67 alleges the corporate structure of No Spill, Midwest Can, Argand Partners, among others. (Doc. 316, at 67). Counterclaim Defendants seek to redact the extent of various companies' involvement in the litigation management agreement. (*Id.*). Paragraph 67 also contains a graphic which purports to represent the involvement of individuals with various companies. Counterclaim defendants further seek to redact text contained under the graphic. (*Id.*). Counterclaim Defendants claim that the litigation management agreement contains sensitive information regarding forward-looking business strategies, litigation tactics, and legal responsibilities arising out of this case. (Doc. 333-1, at 11–12).

Counterclaim Defendants cite several cases to support maintaining the allegation under seal. (Doc. 333-1, at 11). In *Proctor & Gamble Co. v. Ranir, LLC*, the court agreed

to redactions because the documents included, *inter alia*, market share data, sales trends, and confidential agreements. No. 1:17-cv-185, 2017 WL 3537195, at *3 (S.D. Ohio Aug. 17, 2017). Further, in *Barkley v. Pizza Hut of Am., Inc.*, the court redacted documents that contained proprietary or confidential information that could allow competitors to undercut the labor market. 6:14-cv-376-Orl-37DAB, 2015 WL 5915817, at *3–4 (M.D. Fla. Oct. 8, 2015). And then in *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, the court allowed redactions that contained confidential business information which implicated privacy interests that had no public ramifications. 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015). However, the court refused to allow redactions that were not deemed confidential. *Id.*

Counterclaim Defendants argue that the Litigation Management Agreement is treated with "the highest levels of confidentiality." (Doc. 333-1, at 12). While this may be true, the issue is not whether the Litigation Management Agreement broadly should be kept under seal; rather, the issue is whether the allegations sought to be redacted should be kept under seal. And Counterclaim Defendants claim that the allegations could empower third parties to leverage this knowledge to their strategic advantage in any future litigations. (Doc. 333-1, at 12).

Taking into consideration the case law Counterclaim Defendants cite, as well as the arguments contained in their memorandum, the Court finds some redaction of paragraph 63 to be appropriate. Specifics of the agreement are not appropriate for public disclosure and the Counterclaim Defendants' privacy interests outweigh the public interest. However, the entity in charge of managing the litigation does not to be kept

under seal, particularly when the entity is a co-defendant in this case. To that end, the Court will keep under seal the last sentence in paragraph 63. However, the proposed redactions in paragraph 67 may not remain under seal because it does not relate to the operation of the Litigation Management Agreement.

III. **Conclusion**

For all the reasons articulated in this Order, the Court **GRANTS IN PART and DENIES IN PART** the Counterclaim Defendants' request to redact limited portions of the answer and counterclaims. The Counterclaim Defendants are ordered to file a redacted version of the answer and counterclaims in accordance with this order within five (5) days.

**IT IS THEREFORE ORDERED THAT** paragraphs 44, 47, 50, 51, 54, and 56 may remain redacted as proposed by Counterclaim Defendants.

**IT IS FURTHER ORDERED THAT** paragraphs 63 be redacted as proposed in this order.

**IT IS FURTHER ORDERED THAT** Counterclaim Defendants' Unredacted Memorandum in Support of Motion to Seal Counterclaims (Doc. 333) may remain under seal as previously ordered. (Doc. 337).

**IT IS SO ORDERED.**

Dated November 8, 2021

/S Kenneth G. Gale
Kenneth G. Gale
U.S. Magistrate Judge