**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| NO SPILL, LLC and TC CONSULTING, INC., | |
| Plaintiffs, | |
| v. | |
| SCEPTER CANDADA, INC., and SCEPTER MANUFACTURING LLC, | Case No. 2:18-cv-2681-HLT-KGG |
| Defendants. | |

| | |
|---|---|
| SCEPTER CANADA, INC. and SCEPTER MANUFACUTRING, LLC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| NO SPILL, LLC, TC CONSULTING INC., MIDWEST CAN COMPANY, LLC, GENNX360 CAPITAL PARTNERS, GENNX/MWC ACQUISITION, INC., and ARGAND PARTNERS, LP | |
| Counterclaim-Defendants. | |

## MEMORANDUM AND ORDER ON MOTION TO STRIKE DEFENDANTS' AMENDED INVALIDITY CONTENTIONS

Now before the Court is Plaintiffs', No Spill, LLC and TC Consulting, Inc.

(collectively herein "No Spill"), motion to strike Defendants' amended invalidity

contentions. (Doc. 293). Defendants, Scepter Canada, Inc. and Scepter Manufacturing,

LLC (collectively herein "Scepter"), filed a responsive brief (Doc. 318) in opposition to

the present motion. Having reviewed the submission of the parties, the Court **GRANTS** the motion before the Court.

## I.   Background

No Spill holds two patents that relate to preventing the explosion of portable fuel containers ('075 and '132 patents). (Doc. 41). No Spill served its Preliminary Infringement Contentions on May 19, 2020. (Doc. 318, at 2). Each patent used the term "too rich to support combustion" when describing the efficacy of preventing explosions in portable fuel containers. (*Id.*). No Spill relied on the "spark test" (also known as the "Cray Test") in support of the "too rich to support combustion" term. (*Id.*, at 2–3).

Scepter served Invalidity Contentions ("ICs") on July 28, 2020, seeking to invalidate the '075 and '132 patents. (Doc. 294, at 3). They served 30 claim charts which set forth their theories on why No Spill's patents should be invalidated. (*Id.*). In addition to the 30 original claim charts, Scepter served other references and materials. (*Id.*, at 5). Scepter filed their *Inter Partes* Review Petition on December 28, 2019 which challenged the validity of No Spill's patents. (Doc. 294, at 5). The Patent Trial and Appeal Board subsequently denied Scepter's petition to invalidate No Spill's patents.

The parties completed their claim construction briefing on September 22, 2020. (Doc. 318, at 3). During the claim construction briefing, the "too rich to support combustion" term was litigated. The District Judge issued the *Markman* Order in this case on June 23, 2021. (Doc. 257). The *Markman* Order largely adopted No Spill's

proposed construction of the claims. (*Id.*). It also found that the "too rich to combust" claim was not indefinite. (*Id.*).

After the *Markman* ruling, Scepter worked to identify prior art that could also satisfy the "too rich to support combustion" term under the Court's claim construction. (Doc. 318, at 5). Scepter served their Amended Invalidity Contentions ("AICs") on August 18, 2021—56 days after the *Markman* Order, which removed prior art they no longer intended to rely upon and added new prior art it believed could also satisfy the "too rich to support combustion" term. (*Id.*). While no changes were made to the 30 original claim charts, 32 new claim charts were added. (Doc. 294, at 9). After the AICs were served, No Spill moved to strike those contentions on September 17, 2021. (Doc. 293).

## II.    Legal Standard

Generally, the purpose of Local Patent Rules is to place parties on an orderly pretrial track and to minimize disruption to the case schedule. *See O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, n.8 (Fed. Cir. 2006) (citing the Northern District of California). District of Kansas Local Patent Rule 3.5 provides that:

**3.5 Amendment to Contentions**

(a) Amendment of the Infringement Contentions or the Invalidity Contentions may be made once as a matter of right, as follows:

. . .

(2) A party opposing a claim of patent infringement may serve Amended Invalidity Contentions (limited to the information required by D. Kan. Pat. Rule 3.3) not later than 56 days after filing by the court of its claim construction order if: (A) a party claiming patent infringement has served

Amended Infringement Contentions pursuant to D. Kan. Pat. Rule 3.5(a)(1), or (B) *the party opposing a claim of patent infringement believes in good faith that amendment is required by the court's claim construction order*.

D. Kan. Pat. Rule 3.5 (emphasis added). The District of Kansas has not squarely weighed in on what determines "good faith" within the meaning of Local Patent Rules.

The Federal Circuit has found that "good faith" was not present when the court's claim construction order did not differ in a material way from the claims proposed by the other party. *BookIT Oy v. Bank of Am. Corp.*, 817 F. App'x 990, 994–95 (Fed. Cir. 2020). Other districts have held that a proposed amendment to an invalidity contention is made in good faith only if the claim construction adopted by the court was "unexpected or unforeseeable." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007); *CommScope Techs. LLC v. Dali Wireless, Inc.*, No. 3:16-cv-0477-M, 2018 WL 4566130, at *3 (N.D. Tex. Sept. 21, 2018). The Court agrees with other districts that good faith requires that the claim construction adopted by the court be "unexpected" or "unforeseeable." *See Nike*, 479 F. Supp. 2d at 667–68 ("A party cannot argue that because its precise proposal for a construction of a claim term is not adopted by the court, it is surprised and must prepare new infringement contentions."). The parties' proposed claims must also be materially different from the court's construction order. *See Patent Harbor, LLC v. Audiovox Corp.*, No. 6:10-CV-361, 2012 WL 12840341, *2 (E.D. Tex. Mar. 30, 2012) ("Defendants must show that the Court's Construction was so different from the parties' proposed constructions that amending their [invalidity contentions] is necessary.")

### III.   Analysis

No Spill argues that Scepter should not be allowed to amend their invalidity contentions because (1) the AICs were not "required by the court's claim construction order" and (2) they were based on information that it either knew or should have known about when the original invalidity contentions were served. (Doc. 294). Scepter argues that Local Patent Rules allow their amendment and Plaintiffs would not be prejudiced by the amendment. (Doc. 318).

No Spill takes the position that the AICs fail to meet the good-faith requirement because the *Markman* Order adopted its proffered claim construction, and there is no material difference from the Court's *Markman* Order. (Doc. 294, at 17). However, Scepter claims that the *Markman* Order's construction of the "too rich to support combustion" language is broader than what was proposed by No Spill. (Doc. 318, at 6). They argue that since the Court's construction of the term is broader than what was proposed, there may be more possibilities of prior art, and thus, require good-faith amendments to the invalidity contentions. (*Id.*).

The Court disagrees with Scepter's claim that No Spill sought to limit the "too rich to support combustion" language to the three-step Cray test. In the *Markman* Order, the Court noted that Defendants advanced the notion that the "too rich to support combustion" terms were indefinite because the Cray test was insufficient, as the "sole test," to establish the validity of the claim. (Doc. 257, at 8). The Court addressed this argument:

The first aspect of Defendants' argument is akin to (although distinct from) prosecution disclaimer because they essentially argue that the applicant disclaimed any other test for satisfying this claim term. The Court disagrees. *The applicant's response and reliance on the Cray Declaration did not clearly and unmistakably surrender claim scope or limit the claims to the three-step test.*

(*Id.*, at 9) (internal citations omitted) (emphasis added). The Court went on in further detail:

It is true that the three-step test is one test that could be performed to determine whether a structure is a device that retains enough liquid fuel to provide a fuel-air mixture that is above the UFL. But this test is a demonstration that was offered to distinguish the prior art devices because they did not achieve a fuel-air mixture that was too rich to combust. *It did not limit the claims to this test, render this test the only test for determining infringement, or disclaim other tests*. Defendants' argument to the contrary makes too much of the response and these materials.

(*Id.*, at 9) (emphasis added). The *Markman* Order has already addressed Defendants' argument that the "too rich to support combustion" language was limited to the Cray Test. The Court clearly found that No Spill's reliance on the Cray Declaration did not limit the claims to the three-step Cray Test. Therefore, the Court did not broaden No Spill's construction; rather, the Court interpreted the claim language differently than what Scepter argued.

Indeed, many of Scepter's arguments were already advanced during the *Markman* briefing and already handled by the District Judge. The District Judge's prior decisions have been clear. No Spill's claim construction briefing did not limit its claim to the three-step Cray test. Accordingly, Scepter's reliance on this argument is unpersuasive.

The Court is not convinced that Scepter reasonably relied on the belief that the Cray Test was the sole test to establish prior art. Scepter claims that they relied on the

Cray Test when initially crafting their original claim charts. (Doc. 318, at 6–7). Scepter further argues that if they weren't under the misimpression that the Cray Test was only test, then they would have put forth additional invalidity contentions. No Spill responds that the Scepter's original claim charts make no mention of how the references pass the Cray Test. They further argue that quite the opposite is true because several references in their claims chart were unable to pass the test. (Doc. 330, at 9).

The Court is not persuaded that Scepter's original invalidity contentions were based on the understanding that the Cray Test was the sole test. In their original contentions, they state that "[b]ecause Defendant's investigation, prior art search, and analysis are still ongoing, Defendant may identify additional prior art or contentions that will add meaning to already known prior art or contentions, or possibly lead to additions or changes to these contentions." (Doc. 294-1, at 2). This appears to suggest that Scepter was not limiting their contentions to the Cray Test but were conducting a diligent investigation into their contentions. Scepter went on to say that "Defendant may set forth alternative, and even inconsistent, claim construction positions. In particular, certain contentions, including those in the attached charts, may be based on claim constructions that appear to underlie No Spill's infringement contentions." (*Id.*). The Court does not find that Defendants were limiting themselves based on a false impression. Scepter had a fair opportunity to present all their theories when presenting their argument during the construction briefing. The purpose of amending invalidity contentions is not to give a "second bite at the apple." The Court's *Markman* Order did not reach an unexpected or surprising result and is an insufficient basis to justify an amendment to Defendants'

7

invalidity contentions. Defendants do not possess a good faith belief within the meaning of Patent Local Rules.

IV.     **Conclusion**

The Court finds that Defendants have not satisfied Patent Local Rule 3.5(a)(2). Accordingly, Plaintiffs' motion to strike Defendants' amended invalidity contentions (Doc. 293) is **GRANTED.**

    **IT IS SO ORDERED.**

    Dated November 10, 2021

                                        /S KENNETH G. GALE
                                        Kenneth G. Gale
                                        U.S. Magistrate Judge