IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NO SPILL, LLC and TC CONSULTING, INC., <br><br>Plaintiffs,<br><br>v.<br><br>SCEPTER CANADA, INC., and SCEPTER MANUFACTURING LLC,<br><br>Defendants. | Case No. 2:18-cv-2681-HLT-KGG |

### MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH SUBPOENA

Now before the Court is Plaintiffs' "Motion to Quash or for Protective Order regarding Kameron Kelly Deposition" (ECF No. 480) and Non-Party Kameron D. Kelly's "Motion to Quash Deposition Subpoena." (ECF No. 477). No Spill and Mr. Kelly primarily argue that the deposition would invade the attorney-client privilege, pursues a defense not plead, and the discovery can be obtained by other means. No Spill alternatively seeks a protective order from the Court barring certain questioning from the Defendants. Scepter Defendants oppose the motion arguing that the inequitable conduct defense has already been disclosed, the attorney-client privilege has been waived, and Mr. Kelly has relevant, non-privileged information.

The Court finds that Kameron Kelly may be deposed by the Defendants. However, the topic of inequitable conduct may not be addressed during the deposition. The Court further finds a narrow waiver of the attorney-client privilege, but Mr. Kelly may still object to other questions that elicit privileged information. Additionally, the topics of a

1

negotiation agreement with a third party and a conflict waiver between No Spill and Scepter may be addressed during the deposition. Accordingly, the Court **GRANTS in part and DENIES in part** the motion to quash the deposition subpoena.

I. Background

Plaintiffs, TC Consulting, Inc. and No Spill, LLC (collectively herein "No Spill" or "Plaintiffs"), hold two patents relating to preventing the explosion of portable fuel containers ('075 and '132 patents). (*Second Amended Complaint*, ECF No. 41). The '075 patent was issued on November 3, 2022, by the United States Patent and Trademark Office ("USPTO"). *Id.* The '132 patent was issued on July 24, 2018, by the USPTO. Thomas Cray is the inventor of the patents in dispute. No Spill alleges six claims against Scepter Manufacturing, LLC and Scepter Canada, Inc. (collectively herein "Scepter" or "Defendants") for patent infringement, breach of contract, and engaging in unfair competition. *Id.*

Mr. Cray has already been deposed in this case, both individually and as No Spill's corporate representative. (*See* ECF No. 449). The subject-matter of the deposition pertained to prosecution of the asserted patents. Kameron Kelly works for Hovey Williams LLP and had served as No Spill's (and Thomas Cray's) patent counsel for several years. He prosecuted the two patents in dispute—the '075 and '132 patents. Scepter seeks to depose Mr. Kelly on a number of topics including: (1) inequitable conduct; (2) potential waiver of the attorney-client privilege; (3) agreements with a "third party;" and (4) a conflict waiver between Scepter and No Spill.

Pursuant to Fed. R. Civ. P. 45, Scepter issued a notice of intent to issue a third-party subpoena to Kameron Kelly on May 18, 2022. (ECF No. 472). The subpoena was served, and the deposition was scheduled for May 27, 2022—the last day of the discovery period. All parties involved were engaged in discussions regarding the appropriateness of the deposition leading up to the subpoena. Unable to come to an agreement, Non-Party Kameron Kelly filed his motion on May 24, 2022, followed by Plaintiffs on the same day. The Court expedited the briefing in this matter, requiring a response be filed by May 31, 2022, and ordering no reply be filed. Scepter timely filed its response on May 31, 2022, which completed the briefing on this matter. (ECF No. 488).

## II.  Legal Standard

Fed. R. Civ. P. 45 governs subpoenas, with section (d) of that Rule relating to "protecting a person subject to a subpoena" as well as "enforcement." Subsection (d)(1) of the Rule states that:

> [a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena . . . .

Subsection (d)(3)(A) requires the District Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Non-parties are generally given heighten protection from discovery abuses when responding to Rule 45 subpoenas. *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-MC-

3

224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016), *objections overruled,* No. 16-MC-220-JWL, 2017 WL 67878 (D. Kan. Jan. 6, 2017).

"Although Rule 45 does not specifically include relevance or overbreadth as bases to quash a subpoena, 'this court has long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.'" *Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (citing *Martinelli v. Petland, Inc.*, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted)). Likewise, the legal burden regarding objections to a deposition resides with the party seeking to quash the deposition subpoena. *See id.* Further, Fed. R. Civ. P. 26(c) allows a court to enter a protective order regarding a subpoena to protect a party from annoyance, embarrassment or oppression. *Stewart v. Mitchell Transport*, No. 01-2546-JWL, 2002 WL 1558210, at *6 (D. Kan. July 11, 2002). However, courts generally disfavor barring a deposition from taking place. *Pepsi-Cola Bottling Co. of Pittsburgh v. Pepsico, Inc.*, No. CIV.A.01-2009-KHV, 2002 WL 922082, at *1 (D. Kan. May 2, 2002). The Court will analyze Defendants' third-party subpoena within this legal framework.

**III.   Analysis**

Fed. R. Civ. P. 45, which governs motions to quash subpoenas, states that the authority to quash or modify a subpoena is given to "the court where the action is pending." Fed. R. Civ. P. 45(a)(2). *See Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 400904, at *2 (D. Kan. Jan. 28, 2015). Kameron Kelly challenges the

subpoena on grounds that the subject-matter of the deposition is irrelevant and would invade the attorney-client privilege. Plaintiffs No Spill also challenge the motion on similar grounds.[1]

Kameron Kelly and Plaintiffs first contend that the deposition subpoena is improper because the topic of inequitable conduct is irrelevant. Inequitable conduct occurs when the person who prosecuted a patent intentionally deceived the patent examiner by misrepresenting material fact or failing to disclose material fact. *Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed. Cir. 2003). Mr. Kelly and Plaintiffs contend that Defendants did not plead inequitable conduct in their answer, and therefore, are unable to pursue the topic of inequitable conduct during depositions. Defendants disagree and assert that the defense of inequitable conduct was disclosed in interrogatory responses and their July 2020 invalidity contentions.

As an initial matter, the Court notes that the deposition of prior patent prosecution counsel is generally permitted when the testimony would be relevant to an inequitable conduct defense. *See, e.g.*, *Ed Tobergte Assocs. Co. v. Russell Brands, LLC*, 259 F.R.D. 550, 560 (D. Kan. 2009) (allowing the deposition of trial counsel when inequitable

---

[1]Typically, only the party to whom the deposition subpoena is directed to has standing to challenge the subpoena. *See Stroud v. Liberty Mut. Ins. Co.*, No. 15-cv-363-GKF-PJC, 2016 WL 10038543, at *2 (N.D. Okla. Apr. 7, 2016) (citing *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995)). There are exceptions to this general rule such as when the party challenging the subpoena has a personal right or privilege to protect with respect to the subject matter requested in the subpoena. *Tomelleri v. Zazzle, Inc.*, No. 13-cv-02576-EFM-TJJ, 2015 WL 400904, at *3 (D. Kan. Jan. 28, 2015). In this case, the issue of standing was not raised by any litigant. Moreover, both the Plaintiffs and the party to whom the deposition subpoena is directed are challenging the motion. Since the issue was not raised by any party, and the party to whom the subpoena is directed to is challenging the motion, the Court will not directly address the issue.

conduct had been alleged); *Exmark Mfg. Co. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2011 WL 1467435, at *6 (D. Neb. Apr. 18, 2011) (permitting deposition of patent prosecution counsel when knowledge of counsel is relevant to claim of inequitable conduct); *Alcon Lab'ys, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 433–45 (S.D.N.Y. 2002) (denying motion for an order to quash when the testimony was relevant to an inequitable conduct defense).

In this case, no inequitable conduct defense has been plead in Defendants' answer. Although Scepter Defendants were granted leave to file an amended answer and assert counterclaims (ECF No. 280) nearly three years after the complaint was filed, they never plead inequitable conduct as a defense. (ECF Nos. 317, 362) (unredacted/redacted). Scepter asserts that disclosing an inequitable conduct defense in their interrogatory responses and invalidity contentions are sufficient. The relevant section in Scepter's invalidity contentions provide:

> The Asserted Claims of the Asserted Patents are unenforceable for fraud, ***inequitable conduct***, unclean hands, and/or violation of duty of candor. *See Therasense Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). During prosecution, Mr. Cray did not disclose to the Examiner any of the work by ASTM or WPI on its behalf, nor any of the studies circulated among the ASTM F15:10 committee members. Nor did Mr. Cray disclose that the work of Glen Stevick, Brian Elias, and other ASTM members contributed to the conception of the '075 and '132 Patents. This information is highly material to the validity of the Asserted Patents and yet neither Mr. Cray 92 or the patent prosecution counsel disclosed it to the United States Patent and Trademark Office as required under the duty of disclosure pursuant to 37 C.F.R. 1.56.

(ECF No. 294-1, at 91–92) (emphasis added). While the invalidity contentions do mention the defense of inequitable conduct, it is absent from the answer and does not

offer the level of specificity needed to justify deposing prior patent prosecution counsel regarding inequitable conduct.

First, the Court will quash the topic of inequitable conduct because Scepter did not plead it in their answer. Scepter offers no case law to support their position that deposing prior patent prosecution counsel on the topic of inequitable conduct is permitted when the defense is completely absent from the answer. In fact, they seem to place blame on Scepter's prior counsel. (*Response*, ECF No. 488-1, at 12) ("Defendants do not know why prior counsel for Defendants disclosed inequitable conduct in interrogatory responses and invalidity contentions without seeking to amend the pleadings . . . ."). Indeed, courts have held that inequitable conduct needs to have been plead in the answer for the topic to be relevant in the deposition of prior counsel. *See, e.g.*, Helget v. Fitbit, Inc., No. 21-MC-91150-FDS, 2021 WL 1737300, at *2–3 (D. Mass. May 3, 2021) (granting motion to quash because inequitable conduct was not alleged in the answer); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 383, 385–86 (D.D.C. 2011) (granting motion to quash, in part, because defendant had sought leave to amend the pleadings to assert the defense, but had not yet been granted leave to do so); *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-00410-EMC (LB), 2021 WL 4699170, at *2 (N.D. Cal. Oct. 8, 2021) (granting motion to quash when there were no allegations of inequitable conduct); *Resqnet.Com, Inc. v. Lansa, Inc.*, No. 01 CIV.3578(RWS), 2004 WL 1627170, at *4, 6 (S.D.N.Y. July 21, 2004) (granting motion to quash because inequitable conduct had not been plead with particularity).

7

Second, even if the Court were to consider Scepter's invalidity contentions and interrogatories as pleadings alleging inequitable conduct, the allegations would still be insufficient to justify deposing prior patent counsel on the topic of inequitable conduct. The defense of inequitable conduct is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) because it sounds in fraud. *ConAgra Foods Food Ingredients Co. v. Archer-Daniels-Midland Co.*, No. 12-CV-2171-EFM-KGS, 2014 WL 359566, at *2 (D. Kan. Feb. 3, 2014). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Inequitable conduct requires the "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

Here, the allegations contained in Scepter's July 2020 invalidity contentions have not been examined under the heightened pleading standard and the Court has serious doubts as to whether the allegations could survive scrutiny under a motion to dismiss. For example, the one paragraph portion of the invalidity contentions does not identify specific prior art references withheld from the patent examiner. Moreover, none of the allegations were plead in the answer. The specific intent of prior patent counsel to deceive the USPTO is not at issue, and therefore, deposing prior patent counsel regarding inequitable conduct is not appropriate. *See Helget*, 2021 WL 1737300, at *2. Accordingly, this portion of Kameron Kelly/No Spill's motions are **GRANTED.**

No Spill and Kameron Kelly next object to the deposition on the basis that it would requires the disclosure of privileged information. Scepter asserts that the attorney-

8

client privilege has been waived. The essential elements of the attorney-client privilege are: (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except if the protection is waived. *Marten v. Yellow Freight Sys., Inc.*, No. 96–2013–GTV, 1998 WL 13244, *5 (D. Kan. Jan. 6, 1998).

The importance of the attorney-client privilege in American jurisprudence is well-established. *See Cincinnati Ins. Co. v. M.S. ex rel. Serrano*, No. 11–2075–JAR/KGG, 2011 WL 6304086, at *6 (D. Kan. Dec. 16, 2011) (citing *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 130 S. Ct. 1324, at n. 5 (2010) (holding that the attorney-client privilege is an important "means of protecting that relationship and fostering robust discussion" between a party and its counsel)). As such, waivers of the privilege are to be narrowly construed. *Id.* It is well-settled that the privilege is waived if the client discloses the substances of an otherwise privileged communication. *Martley v. City of Basehor*, No. 19-2138-DDC-GEB, 2021 WL 1210013, at *17 (D. Kan. Mar. 31, 2021). Any voluntary disclosure to a third party waives the privilege. *Id.* Since one of the elements of the attorney-client privilege is that the privilege has not been waived, the burden to establish that waiver has not occurred remains with the party asserting the privilege. *Johnson v. Gmeinder*, 191 F.R.D. 638, 642–43 (D. Kan. 2000).

Scepter Defendants allege that Mr. Cray waived the attorney client privilege when he communicated to a third party: "After inspection both I and my patent counsel believe

9

your FMD design infringes our patents in many ways" (*Response*, 488-1, at 13). In particular, they allege that Mr. Cray's statements disclosed the ultimate conclusion of counsel, and therefore, waived the privilege. Non-party Kameron Kelly and Plaintiffs, on the other hand, argue that Defendants' privilege objections are untimely and, in any event, fail to establish the privilege was waived.

The Court does not agree that Defendants have waived their right to challenge the privilege objections. Plaintiffs and Mr. Kelly contend that since Defendants did not object to the privilege log produced on April 8, 2022, they have waived their right to challenge it now. A privilege log functions as an objection to a request for production, interrogatory, request for admission, and related discovery requests. *See Dentsply Sirona Inc. v. Edge Endo, LLC*, No. CV 17-1041 JFB/SCY, 2019 WL 4816213, at *2 (D.N.M. Oct. 1, 2019) (stating that a privilege log applies to requests for production when interpreting its local rules); *see also Sedillo Elec. v. Colorado Cas. Ins. Co.*, No. CV 15-1172 RB/WPL, 2017 WL 3600729, at *7 (D.N.M. Mar. 9, 2017) (ruling that the time to object to a request to produce evidence has passed). Here, the issues relate to a deposition of a non-party. While the parties exchanged privilege logs on April 8, 2022, pursuant to the Court's previous Order (ECF No. 413), the notice of intent to issue a subpoena to Kameron Kelly was filed on May 18, 2022, with the motions to quash the depositions being filed on May 24, 2022. As such, the Court does not find the privilege objections untimely.

Kameron Kelly/No Spill's second argument is that even if the privilege objections are timely, Scepter has failed to establish waiver. They contend that Mr. Cray's

statements do not rise to the level of subject-matter waiver because the substance of privileged communications were not disclosed. In support, they cite *Sprint Communications Co., L.P. v. Comcast Cable Communications, LLC*, No. 11-2684-JWL, 2015 WL 11121850 (D. Kan. June 25, 2015) (*Sprint II*). In *Sprint II*, the court explained that:

> [F]or testimony to constitute a waiver of the attorney-client privilege, a party must disclose the *substance* of privileged communications. "Underlying *facts* are not protected by the privilege." Moreover, revealing the *general topic* of discussion between an attorney and client does not waive the privilege, unless the revelation also reveals the substance of a protected communication. Finally, "the privilege does not protect information concerning the *activities of the attorney*," such that testimony in that respect does not waive the privilege

*Sprint II*, 2015 WL 11121850, at *3 (internal citations omitted). The parties dispute the applicability of *Sprint II* to the issue in dispute. No Spill contends that the substance of attorney-client communications was not disclosed. Scepter claims No Spill misstated the law. Rather, they argue *Sprint* supports their position that the attorney-client privilege had been waived. The Court will examine the communications alleged to have waived the attorney-client privilege by applying the legal standards set out above.

1. My Patent counsel advised me not to let it out of the bag quite yet. I'm going to send you a secrecy agreement . . . This is my concept and I need protection for it.

(ECF No. 484, at 15). This statement by Mr. Cray reveals only the general topic of conversation between the client and the attorney. Mr. Cray did not disclose the content or substance of the privileged communications. Accordingly, the Court finds that this statement did not waive the attorney-client privilege.

11

> 2. After inspection both I and my patent counsel believe your FMD design infringes our patents in many ways

(ECF No. 488-2, at 12). The second statement by Mr. Cray supports waiver of the attorney-client privilege. By revealing that his patent counsel believes the FMD design infringed his patent, he waived the attorney-client privilege. *See, e.g.*, *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2014 WL 3611665 (D. Kan. July 22, 2014) (*Sprint I*) (ruling that the attorney-client privilege was waived when it was disclosed that outside counsel agreed that a patent had been infringed); *see also In re Indep. Serv. Orgs.*, No. CIV. A. MDL-1021, 1999 WL 450906, at *3 (D. Kan. May 24, 1999) (discussing how retainer letters indicating whether a party had breached a contract or committed tortious interference were privileged). The Court finds that protected information was disclosed, and the attorney-client privilege was waived with respect to the subject-matter of that information.

The scope of a waiver of the attorney-client privilege extends to all other communications relating to that subject matter. *Sprint I*, 2014 WL 3611665, at *3 (citing *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005)). However, the waiver does not extend to broader actions to investigate possible infringement. *See id.* at *4. Thus, the Court finds that the attorney-client privilege was waived in respect to the specific subject of the advice concerning whether the FMD design infringed the patents. The waiver does not extend beyond that scope and Mr. Kelly may object to questions which elicit privileged information. *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990).

The third and fourth topics Scepters seeks to address during Mr. Kelly's deposition are: agreements with a "third party"[2] and a conflict waiver between Scepter and No Spill. The Court finds the remaining topics appropriate for the deposition. Kameron Kelly and Plaintiffs argue that information sought should be obtained from "less intrusive sources." Kameron Kelly, in particular, objects on the basis that there is not a legitimate need to depose the opposing party's attorney. However, Mr. Kelly is not the opposing attorney in this case, rather, he is the former patent prosecution counsel for Mr. Cray. Therefore, the *Shelton* criteria cited in support of its Motion has no bearing on the issues. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327–30 (8th Cir. 1986) (discussing the standard for deposing an opposing attorney). Moreover, the Court is not convinced that the deposition would subject Mr. Kelly to an undue burden or exploring these topics would necessarily require the disclosure of privileged communication. Indeed, Mr. Kelly may have information not obtainable through other sources as well as information not subject to privilege. As the Court previously discussed, Mr. Kelly is free to object to any question that elicits privileged information. Accordingly, the Court will not order that the topics of the Midwest Can agreement and conflict waiver be quashed from the deposition topics.

---

[2] The "third party" agreement appears to be the Midwest Can Patent License. (*See* ECF No. 488-1, at 4). Midwest Can was previously a party to the case. Defendants filed counterclaims alleging Midwest Can was engaging in anticompetitive conduct in violation of the Sherman Act and Clayton Act. (ECF No. 317). The District Judge granted a Motion to Dismiss which removed Midwest Can from the case. (ECF No. 435).

## IV.  Conclusion

The Court finds that the deposition of Kameron Kelly may go forward. However, the topic of inequitable conduct *may not* be addressed during the deposition. Also, the Court finds a limited waiver of the attorney-client privilege as more fully set forth herein. Mr. Kelly may object to questions to the extent they elicit privileged information.

**IT IS THEREFORE ORDERED** that non-party Kameron Kelly's "Motion to Quash Deposition Subpoena" (ECF No. 477) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that No Spill's "Motion to Quash or for Protective Order regarding Kameron Kelly Deposition" (ECF No. 480) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that the deposition of Kameron Kelly must occur within thirty (30) days of the date of this Order.

**SO ORDERED**.

Dated June 23, 2022.

/S Kenneth G. Gale
Kenneth G. Gale
U.S. Magistrate Judge