IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NO SPILL, LLC, et al.,

    Plaintiffs,

v.

SCEPTER CANADA, INC., et al.,

    Defendants.

Case No. 2:18-cv-02681-HLT

# MEMORANDUM AND ORDER

This is a patent infringement case about flame mitigation devices ("FMDs") used in portable fuel containers. Plaintiffs assert that Defendants' portable fuel containers literally infringe various claims of their two related United States Patents: 9,174,075 ("the '075 Patent") and 10,029,132 ("the '132 Patent"). Defendants generally contend that the accused products do not infringe the asserted claims and that the asserted claims are invalid.

Each side has designated experts. And each side has lodged a *Daubert* challenge to an opposing expert. Plaintiffs challenge the testing methodologies that underlie Dr. Glen Stevick's opinions concerning invalidity and infringement. Doc. 536. And Defendants challenge the direction-and-control opinion offered by Mark Hoffman, C.P.A. Doc. 557. Because the Court finds that both experts offer opinions that are relevant and reliable, the Court denies the motions.

## I. STANDARD

A district court has a gatekeeping role under Fed. R. Evid. 702 to determine whether expert testimony is admissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). In this role, a district court ensures "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597. Reliability generally assesses whether the reasoning or methodology is scientifically valid and can be applied properly to the facts of the case. *Id.* at 592-

93. And relevance generally assesses whether the testimony will aid the jury in resolving a factual dispute. *Id.* at 591. A district court's overall role is flexible and is tied to the facts of each case. *Id.* at 594.

## II.     DR. GLEN STEVICK

The Court starts with Plaintiffs' motion to exclude certain opinions of Dr. Glen Stevick. Doc. 536. Stevick is Defendants' expert for invalidity and noninfringement. He has a Ph.D. in Mechanical Engineering and over 40 years of experience as an engineer. His expert reports in this case collectively span hundreds of pages. Three of his reports are relevant to this motion: an opening invalidity report (Doc. 554-1), a noninfringement report (Doc. 554-2), and a reply report (Doc. 604-4).

Plaintiffs contend that the test methodologies that underlie Stevick's opinions concerning invalidity and noninfringement are neither reliable nor relevant. Plaintiffs generally contend that there is no nexus between the headspace test and the invalidity and/or noninfringement of the asserted claims because Stevick guaranteed that the headspace was too rich to combust by ensuring that there was at least one half-gallon of gasoline in the fuel container at the time of testing. Plaintiffs also argue that the spark test outlined in his reply report utilized a flawed apparatus and unsupported assumptions that rendered the results unreliable and irrelevant to the issues in this case.

**Headspace Test.** Plaintiffs explain that Stevick conducted the headspace test on fifteen fuel containers. He filled each fuel container with fresh gasoline, poured out some gasoline but left at least one-half gallon of gasoline in the container, and then used a sensor to measure the fuel/air mixture in the headspace of the fuel container. Stevick's testing found that each of the tested fuel

containers had a headspace that was too rich to combust. Stevick thus opines that all tested fuel containers are too rich to combust, which renders the asserted claims either invalid or not infringed.

Plaintiffs argue that the headspace test and corollary opinions lack a nexus to the asserted claims because the test has nothing to do with the presence or absence of the FMD. Plaintiffs explain that it is well known that leaving over one-half gallon of gasoline in the fuel container creates a headspace that is too rich to combust independent of the presence or absence of an FMD. *See, e.g.*, Brian Elias, *Hazard Assessment of Portable Gasoline Container Flammability*, Master Thesis, Worchester Polytechnic Institute, Digital WPI (2011). Thus, Stevick's test results are unsurprising. Plaintiffs also explain that the relevant inquiry is testing the environment in the FMD (as compared to the environment in the fuel container), so the headspace test and its focus on the environment in the container ignores the thrust of the asserted claims and is irrelevant.

But Stevick performed this test based on parameters provided by Plaintiffs in response to Interrogatory No. 26. Stevick's opening invalidity report states that he conducted testing on Plaintiffs' products, the accused products, and prior art products "using the testing parameters supplied by Plaintiffs for how to determine whether an environment is above the upper flammability limit . . . a requirement of each asserted claim as construed by the Court in this case, and where Plaintiffs are silent supplementing with what a person of ordinary skill in the art would understand to be the appropriate testing parameters." Doc. 554-1 at 38-39. He explains that he conducts this testing because a prior art product that infringes an asserted claim also invalidates that claim. *Id.* at 38. Stevick thus explains that he wanted to test the prior art products against Plaintiffs' infringement parameters to evaluate invalidity.

Stevick cites to Plaintiffs' second supplemental response to Interrogatory No. 26 as outlining the pertinent testing parameters. *Id.* at 38. Interrogatory No. 26 states:

3

> Fully describe every test that a [person of ordinary skill in the art (POSITA)] "would have known" to perform "to test a device to determine whether it retained sufficient fuel to provide a fuel-air mixture above the [upper flammability limit (UFL)]" such that the device falls within the scope of the "too rich to combust" terms as construed by the Court in this case. (Doc. # 257, p. 10). This description should include, for each test, all of the relevant variables needed to reliably re-create the test results, and an identification of the documents or other evidence supporting or refuting your response.

Doc. 568-4 at 2. Plaintiffs initially identified three such tests: (1) a spark test, (2) a grab test, and (3) an oxygen sensor-based system test. *Id*. at 3. Plaintiffs further responded in their second supplemental response that:

> Any test performed to determine whether a device retains sufficient fuel to provide a fuel vapor-air mixture that is too rich to support combustion (i.e. above the upper flammability limit) should be conducted under normal, ambient laboratory conditions using fresh gasoline. The test FMD should be completely submerged in the fresh gasoline. The test FMD should then be removed from the fresh gasoline and the tester should then promptly: (1) obtain a representative sample of the vapor space inside the FMD for further chemical analysis; or (2) insert an appropriate spark source into the vapor space inside the FMD and then activate the spark source.

*Id.* at 5. Stevick then outlines the testing methodology that he implemented based on Plaintiffs' stated parameters and details the results of his tests. Doc. 554-1 at 41-43.[1]

Plaintiffs (and their retained expert Dr. Richard Roby) argue that Stevick's testing is <u>not</u> consistent with the responses to Interrogatory No. 26. *See, e.g.*, Doc. 537-8 at 78-80. But Plaintiffs do not detail specific testing parameters that Stevick failed to implement. *See, e.g., id.* (Roby's rebuttal report); Doc. 604-4 at 9-10 (noting in Stevick's reply report that Roby "does not point out how any particular aspect of my testing departed from Plaintiffs' [interrogatory] responses"); Doc.

---

[1] Stevick completed similar testing in his noninfringement report that was also based on Plaintiffs' second supplemental response to Interrogatory No. 26. *See, e.g.*, Doc. 554-2 at 33-37. In these tests, he removed the FMD from Plaintiffs' fuel containers and from the accused products. *Id.* at 34. Because of the overlap in argument by both sides, the Court analyzes these tests together.

4

568 at 11-12. Plaintiffs could have crafted the interrogatory response to require removal of the FMD from the fuel container or to require less than 50 mL of gasoline in the fuel container. But they did not.

Plaintiffs likewise argue that Stevick's test is inconsistent with the claim construction order and claim language. The claim construction order is 18 pages and construes multiple terms. There is significant briefing and context underlying that order. Plaintiffs cite a portion where the Court is rejecting Defendants' claim construction argument that the applicant disclaimed any other test for satisfying the "too-rich-to-combust" term. The order notes that the materials offered during prosecution outline a three-step test that is "one test that could be performed to determine whether a structure is a device that retains enough liquid fuel to provide a fuel-air mixture that is above the UFL." Doc. 257 at 9. But the order expressly recognizes that the three-step test "did not limit the claims to this test, render this test the only test for determining infringement, or disclaim other tests." *Id*. Defendants and Stevick thus correctly contend that the claim construction order did not limit the tests for infringement to only one test or claim-coverage approach. The claim construction order construes the disputed terms and rejects an indefiniteness argument. That is it. Defendants and Stevick also identify other language in the patent and the claims that they contend support Stevick's overall testing (and undermines Roby's). *See, e.g.*, Doc. 568 at 14-15.

Plaintiffs identify several other criticisms about Stevick's headspace test. But Stevick has responded to all the criticisms and has outlined a reliable and relevant explanation for the headspace testing he performed. He concedes the test results were not surprising to him based on Plaintiffs' parameters (Doc. 537-5 at 46), and he has identified support in the patent for this approach. Plaintiffs' criticisms are thus fodder for cross-examination rather than a basis to exclude

Stevick's testing and related opinions. Stevick's headspace test and corollary opinions survive Plaintiffs' *Daubert* challenge.

**Spark Test.** Plaintiffs explain that their retained expert (Roby) tested the accused products to evaluate infringement. Roby completed this evaluation by testing the fuel-retention properties of Defendants' FMD by submerging the FMDs in fresh liquid gasoline, removing them from the liquid gasoline, and then promptly interesting a 10 mJ spark ignitor into the interior of the device to determine whether the FMD provided a fuel vapor-air mixture that was too rich to combust. Doc. 572-3 at 35 (explaining test); Doc. 604-2 at 18, 23 (identifying spark energy as 10 mJ). Roby determined from the test results that the FMD in each accused product satisfies the too-rich-to-combust requirement. Plaintiffs argue that Stevick attempted to rebut these infringement findings by simulating Roby's test. But, instead of replicating Roby's circuit according to Roby's provided specifications, Stevick created "his own odd mixture of components and then employed unsupported and inconsistent assumptions about how he believed those electrical components would function together." Doc. 537-1 at 2. Plaintiffs contend these flaws render Stevick's spark testing *ipse dixit*.

Stevick explains in his reply report that he replicated Roby's infringement testing on prior art products. Doc. 604-4 at 10-11. He concedes that he had to fill in gaps on key variables that were left out of Roby's testing description by utilizing other disclosures and Roby's past testing. *Id.* at 11. Stevick then describes his spark testing setup and results. *Id.* at 10-18.

Plaintiffs initially note that, unlike Roby's apparatus, Stevick's apparatus did not use a conventional spark plug to create the spark energy. Doc. 537-1 at 13-14. But Stevick explained this decision. *See* Doc. 537-5 at 29. Plaintiffs next note that, unlike Roby's apparatus, Stevick's apparatus did not use a conventional ignition circuit with a condenser and power supply that

6

energizes the spark plug and reliably produces a spark with an energy level of 10 mJ. Doc. 537-1 at 14. But Stevick also explained that decision. *See* Doc. 554-2 at 40 (criticizing Roby's test for ignoring spark energy); Doc 604-4 at 11; Doc. 537-5 at 26-30. Plaintiffs lastly note thirteen assumptions or statements that they contend are unsupported and mandate exclusion of Stevick's spark test and related opinions. Doc. 537-1 at 15-19. But, again, Stevick explained those assumptions and decisions. *See, e.g.*, Doc. 537-5 at 30-31; *id.* at 27.

Plaintiffs have identified ample areas for cross examination on Stevick's spark test. But Stevick has explained his test and methodology, and the Court finds that it is reliable and relevant. This battle is for the jury.

### III.   MARK HOFFMAN, C.P.A.

Mark Hoffman, C.P.A. is Plaintiffs' retained expert. He is a certified public accountant with expertise in business enterprises and intellectual property. He has previously served as an expert witness on forensic accounting issues. Plaintiffs retained him to evaluate the corporate relationship between Defendant Scepter Canada and Defendant Scepter Manufacturing and explain that relationship to the jury. Defendants move to exclude Hoffman's testimony because (1) it is based on an incorrect legal standard and (2) it merely summarizes facts that a jury can readily understand. Doc. 531-1 at 1. The Court disagrees on both issues and finds that Hoffman's testimony is legally sound and will assist the jury in understanding the corporate relationships at issue.

Defendants' first argument appears to stem from a misunderstanding of Plaintiffs' infringement theories. Plaintiffs allege that Scepter Canada directly infringes the asserted claims under 35 U.S.C. § 271(a). Plaintiffs do not intend to offer Hoffman's testimony to support this direct infringement claim. But Plaintiffs also allege that Scepter Canada indirectly infringes the

7

asserted claims under § 271(b) by inducing the infringement of Scepter Manufacturing. And Plaintiffs do intend to offer Hoffman's testimony to support an element of this induced infringement claim.

Section 271(b) states that a party who actively induces infringement is liable as an infringer. It is a form of secondary liability and requires the patentee to show "that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (citation and internal quotation marks omitted). Inducement and intent may be shown by circumstantial evidence. *Id.* at 1331; *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003). Expert testimony on one party's control over another may bear on the ultimate question of active inducement of infringement. *Cf. Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668-69 (Fed. Cir. 1988) (affirming finding of inducement based on evidence that party exercised control by helping manufacture, preparing consumer use instructions, licensing, and reserving approval rights); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 249 F. Supp. 2d 434, 458-59 (D.N.J. 2003) (listing ways a former director and officer of company exerted control over the company's actions as evidence he induced infringement);[2] *see also Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x 721, 724 (Fed. Cir. 2004) ("[C]ontrol may indeed serve as a predicate for induced infringement under appropriate circumstances.").

Here, Hoffman's proffered testimony goes to the question of whether Scepter Canada actively induced infringement by directing, controlling, aiding, abetting, and/or encouraging Scepter Manufacturing to directly infringe the asserted claims. He analyzes this issue by examining

---

[2] Defendants argue both cases are irrelevant because neither required expert testimony to present evidence of corporate relationships. But the Court finds them useful in identifying the types of circumstantial evidence that may be used to support a claim of induced infringement.

corporate documents, tax filings, and other information to determine whether Scepter Canada in fact controls the development, design, and manufacturing of Scepter Manufacturing's accused products. Defendants do not identify a flaw with this legal standard and seemingly backed off this argument in the reply once Plaintiffs clarified the asserted infringement theory.[3] The Court thus finds that Hoffman's testimony is based on the correct legal standard for an induced infringement claim.

Defendants' second argument is that Hoffman's testimony merely summarizes facts that a jury can readily understand. Defendants are correct that an expert can't serve as a mere conduit for business records. *See Davis v. Johnson & Johnson*, 2022 WL 2116236, at *3 (D. Kan. 2022) (citation omitted). But Hoffman goes beyond mere summarization. The "Contextual Background" portion of his report discusses and quotes records and depositions. Doc. 565-1 at 7-30. But the "Analysis" portion applies the previously-cited facts to show how the companies are interrelated and Scepter Canada directs and controls the actions of Scepter Manufacturing in various contexts, including the development, marketing, and sale of the accused products. *Id.* at 30-44. The report reflects that Defendants are part of what appears to be a complex global conglomerate with dense and complicated financial records and business arrangements. Hoffman has culled through thousands of corporate records and can use his financial and business experience and knowledge to explain to the jury what they mean in terms of corporate structure, relationships, control, and active involvement. His report is more than a mere summarization of basic records.

---

[3] Defendants morph their argument slightly in their reply brief. In response to Plaintiffs' "clarification," Defendants argue Hoffman's testimony is irrelevant to the issue of inducement because he opines on general direction and control; not direction and control specifically related to the alleged infringing behavior. The Court need not consider this argument because it was raised for the first time in the reply brief. But even if the Court did consider it, the result would not change. Circumstantial evidence of the intent to induce infringement is permitted. This is what Hoffman offers.

9

Hoffman may explain the relationship between the entities and discuss the business records, testimony, and documents that bear on that issue.[4] This case has many complex issues already teed up for jury consideration. It seems particularly helpful in a case with so many moving parts to have an expert who can simplify the information the jury will hear in one segment of the case. The Court finds Hoffman's testimony would be helpful to the jury and denies Defendants' motion to exclude.

THE COURT THEREFORE ORDERS that Plaintiffs' motion to exclude certain opinions of Stevick (Doc. 536) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion to exclude the testimony of Hoffman (Doc. 557) is DENIED.

IT IS SO ORDERED.

Dated: February 2, 2023        /s/ *Holly L. Teeter*
                                                    HOLLY L. TEETER
                                                    UNITED STATES DISTRICT JUDGE

---

[4] The Court understands that Hoffman will not testify specifically and directly that Scepter Canada exerted direction and control over Scepter Manufacturing relating to Defendants' accused products. The Court expects that this matter will be left to the jury. If the parties' understanding is otherwise, they may raise it in a motion in limine.