## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

NO SPILL, LLC, et al.,

    Plaintiffs,

    v.

SCEPTER CANADA, INC., et al.,

    Defendants.

Case No. 2:18-cv-02681-HLT

## MEMORANDUM AND ORDER

This is a patent infringement case about flame mitigation devices ("FMDs") used in portable fuel containers. Plaintiffs assert that Defendants' portable fuel containers infringe various claims of their[1] two related United States Patents: 9,174,075 ("the '075 Patent") and 10,029,132 ("the '132 Patent").[2] Defendants contend that the accused products do not infringe the asserted claims and that the asserted claims are directed to ineligible subject matter and are invalid.

The parties have filed cross-motions for summary judgment. Docs. 533 and 539. The motions generally raise the following issues: patent-eligible subject matter, claim definiteness, claim coverage/noninfringement, predicate invalidity issues, and anticipation/obviousness. The Court determines that the asserted claims are directed to patent-eligible subject matter and satisfy the definiteness requirement. The Court also determines that Defendants failed to timely disclose their 35 U.S.C. § 102(g) defense based on the alleged prior invention by Damon Johnston. The Court grants summary judgment on these issues and denies the rest of the motions.[3]

---

[1]    For ease throughout this opinion, the Court refers to Plaintiffs and Defendants collectively unless the distinction impacts a ruling.

[2]    The '075 Patent is the parent, and the '132 is a continuation.

[3]    Plaintiffs moved for leave to file a surreply after briefing on Defendants' summary judgment motion was complete. Doc. 597. Because the Court denies Defendants' motion, it did not consider the content of Plaintiffs' proposed surreply, which renders Plaintiffs' motion moot. But even if the Court were to consider Plaintiffs'

# I.    BACKGROUND

Plaintiffs are the owner by assignment of the asserted patents. Thomas M. Cray is the sole inventor on both patents, and both patents are titled "Explosion inhibiting portable fuel container and method of inhibiting explosions." The patents are related.

The '075 Patent was filed on September 16, 2014, and it issued on November 3, 2015. It claims priority to two provisional applications: 61/653,240 filed on May 30, 2012 and 61/754,266 filed on January 18, 2013. It has 21 claims. Claims 1 and 12 are independent claims. The '132 Patent is a continuation of the '075 Patent, and it issued on July 14, 2018. It has 18 claims. Claim 1 is the sole independent claim.

Plaintiffs sued Defendants in December 2018 for patent infringement. Plaintiffs generally allege that Defendants' SmartControl, AmeriCan, EasyFlo, and "Military Style" fuel containers literally infringe claims 1, 4, 8, 13, and 17 of the '075 Patent and claims 1, 9, 14, 17, and 18 of the '132 Patent. The Court construed the claims in June 2021. Doc. 257. The Court bifurcated the infringement and invalidity issues from the rest of the case and set those issues for trial in March 2023. Doc. 393. Before the Court are cross-motions for summary judgment on the issues set for trial.

# II.    STANDARDS

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to demonstrate that

---

proposed surreply, it would not impact the outcome of this motion. Similarly, Plaintiffs filed an errata sheet correcting some erroneous citations in Plaintiffs' opening summary judgment brief after Defendants highlighted them. Doc. 584. Defendants move to strike the errata sheet. Doc. 621, amended by Doc. 622. The Court denies Defendants' motions to strike the errata sheet but considers Defendants' proffered response, filed as Doc. 622-1.

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4][5]

## III.    PATENT-ELIGIBLE SUBJECT MATTER

The initial issue before the Court is whether the asserted claims in the '075 Patent are patent eligible under 35 U.S.C. § 101 or are instead drawn to a patent-ineligible law of nature. Section 101 defines the subject matter eligible for patent protection as "any new or useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Id.* These four categories are broad and flexible, but the Supreme Court has recognized three non-textual but implicit exceptions: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Intl.*, 573 U.S. 208, 216 (2014).

The Supreme Court has explained that the concern that drives these exceptions is one of pre-emption because these three categories are the basic tools of scientific and technological work and monopolization of those tools impedes innovation instead of promoting it. *Id.* But this concern must be balanced against the realization that all inventions at some level "embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 217 (internal quotation omitted). The challenge therefore is to "distinguish between patents that claim the

---

[4]    The Court applies the procedural law of the Tenth Circuit and the substantive law of the Federal Circuit for issues unique to patent law. *D Three Enters. v. SunModo Corp.*, 890 F.3d 1042, 1046-47 (Fed. Cir. 2018).

[5]    Because the parties have filed cross-motions for summary judgment, the Court is mindful of the standards that apply and independently considers each motion.

building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Id.* (cleaned up).

The Supreme Court identified a two-step framework to help courts make this distinction. The court must first "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, the court must next "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotation omitted).

The Court starts with step one and concludes that the asserted claims are directed to a patent-eligible concept. The independent claims of the '075 Patent are directed to a fuel container comprising: a hollow tank body, a fuel dispensing assembly, and a fuel retention structure located proximate the main container opening. The fuel retention structure comprises a plurality of perforations through which liquid fuel must flow to dispense the liquid fuel from the container. And the fuel retention structure is configured to retain sufficient liquid fuel to provide a "too rich to combust" fuel vapor-air mixture proximate the container opening (claim 1) or within the fuel retention structure (claim 12).

The face of each independent claim is drawn to a fuel container that includes physical structures with defined parameters that are designed to trap and retain fuel. Although the independent claims utilize a law of nature to prevent explosions, the claims apply that law of nature in a new and useful way. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1361 (Fed. Cir. 2017) (requiring claims be directed to a new and useful technique). And the asserted dependent claims merely build on the independent claims and include progressively more detailed limitations. For example, the fuel retention structure must be "configured to receive a conventional gasoline pump nozzle" (dependent claims 4 and 13); the perforations must be

configured to permit at least 5 gallons per minute of fuel to flow through the fuel retention structure (dependent claims 4 and 13); the fuel retention structure must be made of a synthetic resin material (dependent claim 8); the sidewall and bottom wall of the fuel retention structure must be at least 25% open (dependent claims 6 and 7, from which depends claim 8); and the sidewall must have a height of between 3 and 10 inches (dependent claim 17).

Defendants reject this outcome, but their arguments do not alter this analysis. Defendants initially contend that the asserted claims are directed to unpatentable laws of nature about intermolecular forces and combustion ratios (e.g., "too rich to combust"). They contend that the asserted claims pre-empt technological development and claim the results of these laws of nature without limiting the claims to a particular method of achieving the results. They support these points by explaining that the asserted claims cover "every possible structure in the neck of a gas can that employs the well-known natural law of a 'too-rich-to-combust' environment" and "preempt all methods for causing an internal environment to exceed the [upper flammability limit]." Doc. 534 at 21, 28.

But this argument misstates the focus of the asserted claims and overstates their breadth. Both independent claims admittedly note the concept of combustion ratios and claim 12 uses the phrase intermolecular forces to describe how the fuel is retained in the perforations, but the claims are not directed to these concepts and instead are directed to a patent-eligible application of these concepts to prevent explosions in fuel containers. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (explaining that it is not enough that a law of nature merely be "involved" in the claim). This outcome is reinforced by a review of the written description. The written description (as even Defendants' expert recognizes) discloses two embodiments that utilize the same law of nature but that are not covered by the asserted claims: a dam structure near the

container's neck and an inverted pocket in the neck. *See, e.g.*, '075 Patent at 3:15-50; Doc. 554-1 at 32. These embodiments illustrate that the asserted claims do not pre-empt all future methods of exploiting this law of nature. The written description also discloses an embodiment wherein the fuel retention structure is an absorbent sponge-like material in the container's main body, which is yet another embodiment that does not read on the asserted claims.

Defendants next argue that the asserted dependent claims only add desirable results and routine and generic concepts. They contend the use of perforated structures in gas containers is conventional and point to the traditional metal flame arrester. *See, e.g.*, '075 Patent at 3:15-50; Doc. 554-1 at 32. This argument blurs the line between step one and step two of *Alice* because whether a structure is "well-understood, routine, and conventional" is part of step two and is a fact-specific inquiry. *Alice*, 573 U.S. at 225. Specifically, this language is used in *Alice* to explain that the addition of routine or conventional steps does not transform an otherwise unpatentable method into a patentable one. *Id.* This is different than arguing that the physical components are conventional, which strikes the Court as being an argument more directed to novelty instead of eligibility.

Defendants heavily rely on *American Axle & Manufacturing, Inc. v. Neapco Holdings LLC*, 939 F.3d 1355 (Fed. Cir. 2019). But their reliance is misplaced. *American Axle* held one of the claims at issue was "directed to a natural law because it clearly invokes a natural law, and nothing more, to accomplish a desired result." 967 F.3d at 1297. The claim defined a goal but omitted specific steps or physical structures to achieve it. *Id.* at 1293, 1295. Here, the asserted claims are directed to more than a law of nature; they require discrete physical structures to apply the law of nature to achieve the goal of reducing the risk of gas can explosions. The asserted claims are simply not comparable to the claims in cases where courts have found patent-ineligible concepts. *See, e.g.*,

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012) (claims covering a method of measuring metabolites in blood to determine drug's effectiveness); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374-76 (Fed. Cir. 2016) (claim covering a "method of detecting a coding region of a person's genome"); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1373-74, 76 (Fed. Cir. 2015) (genetic testing method claims). Rather, the Court finds the asserted claims more akin to the patent-eligible apparatus claims in *FYF-JB LLC v. Pet Factory, Inc.*, 410 F. Supp. 3d 912 (N.D. Ill. 2019).

The Court concludes that the asserted claims are patent eligible under 35 U.S.C. § 101. The Court grants summary judgment on this issue to Plaintiffs and denies it to Defendants.[6]

## IV.    CLAIM DEFINITENESS

The next issue is whether the asserted claims satisfy the definiteness requirement in 35 U.S.C. § 112, ¶ 2. This statutory provision requires that a patent claim particularly point out and distinctly claim the subject matter that the applicant regards as his invention. The parties litigated this issue during claim construction, and the Court sided with Plaintiffs for the reasons outlined in the claim construction order. *See* Doc. 257 at 4 ("The Court generally agrees with Plaintiff's alternative construction that a POSITA would have understood with reasonable certainty the scope of the invention and the meaning of the 'too rich to combust' terms.").

---

[6]    Law of nature, abstract idea, and natural phenomena are distinct concepts. But Defendants (and their expert) occasionally muddy the analysis by interchanging these terms. The Court clarified with Defendants at the January 24 hearing that Defendants were challenging eligibility under the law of nature exception. But the result does not change even if their challenge is directed to one of the other exceptions. For example, the asserted claims are unlike other "abstract idea" cases, which typically involve computers, technology, mental processes, or collecting/manipulating data. *See, e.g.*, *In re Killian*, 45 F.4th 1373, 1379 (Fed. Cir. 2022) (mental process); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (data collection/manipulation); *Enfish*, 822 F.3d at 1335-36 (computer, technology). The asserted claims in this case simply don't fit the abstract-concept mold. They are directed to new and useful improvements in fuel containers. And they offer concrete means to achieve this result. The claims include specific, novel structures that retain fuel to create an overly rich fuel-to-air ratio. There is no logical comparison of the structures identified in this case to other cases involving abstract concepts.

Defendants seek to preserve the issue for appeal and merely reaffirm their indefiniteness positions stated during *Markman* briefing. Doc. 566-1 at 55-56. The Court's opinion remains unchanged from that stated in its earlier order. The Court concludes the asserted claims satisfy the definiteness requirement and grants summary judgment to Plaintiffs on this issue.

## V.    CLAIM COVERAGE/NONINFRINGEMENT

Both summary-judgment motions seek some ruling on claim coverage/noninfringement issues. Plaintiffs seek summary judgment on claim coverage and contend all accused products are literally covered by the asserted claims.[7] Defendants contend none of the accused products satisfy the too-rich-to-combust requirement, so summary judgment of no infringement is appropriate.

Summary judgment on this issue requires two steps: (1) each asserted claim must be properly construed to determine its scope and meaning, and (2) the properly construed claim must be compared to the accused device. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). The Court denies summary judgment to Plaintiffs and Defendants because issues of fact exist. The principal issue of fact is whether the accused products meet the "too-rich-to-combust" requirement. Plaintiffs and Defendants offer expert testimony to establish their positions on this claim element.[8] And Plaintiffs and Defendants attack the opposing expert as performing shoddy tests that are untethered to the claim language. Simply put, a jury must decide which expert to believe.

Plaintiffs' expert is Dr. Richard Roby. Roby contends the FMDs in the accused products satisfy the too-rich-to-combust requirement based on his "dipped" and "shake" tests. The procedure for the dipped test entailed dipping the FMDs in a container of liquid gasoline, removing

---

[7]    Plaintiffs limit the request to a ruling on claim coverage because they recognize existing factual disputes about indirect infringement and the source of certain sales. *See* Doc. 549 at 25 n.3.

[8]    Plaintiffs challenged Defendants' expert under *Daubert*, but the Court has denied that motion.

the FMDs from the gasoline, subjecting the interior volume of the FMDs to an automotive spark ignition, and observing whether ignition occurred. The results of his dipped tests showed that the FMDs in the accused products did not ignite. The procedure for the shake test entailed dipping the FMDs in a container of liquid gasoline, removing the FMDs from the gasoline, shaking the retained liquid gasoline out of the FMDs, subjecting the interior volume of the FMDs to an automotive spark ignition, and observing whether ignition occurred. By contrast, the results of his shake tests showed that the FMDs in the accused products did ignite. He opines that the different outcomes show claim coverage because the "testing demonstrated that the fuel retention characteristics of the FMD provide a mixture in the interior of the FMD that was too rich to burn when the fuel was retained in the structure[] but allowed ignition to occur when the fuel was shaken from the FMD." Doc. 572-3 at 35; *see also* Docs. 572-3 at 56; 604-2 at 23.

Defendants' expert is Dr. Glen Stevick. Stevick contends the FMDs in the accused products do not satisfy the too-rich-to-combust requirement because the testing parameters disclosed by Plaintiffs during discovery yield a too-rich-to-combust environment regardless of the presence of the FMD. He explains that he conducted the following test under the testing parameters disclosed by Plaintiffs with the FMDs removed from the accused products: (1) determine the maximum amount of fuel retained in the portable fuel container that would allow the FMD (if installed) to be fully removed from the liquid fuel when the container is pouring, (2) fill the portable fuel container with fresh gasoline to ensure that the FMD (if installed) would be completely submerged in the gasoline, (3) tip the portable fuel container at a 45-degree angle and pour fuel from the container until at least the amount determined in step one remains within the portable fuel container, and (4) use a sensor to collect data readings to determine vapor concentration as near as possible to the opening where the FMD would be installed. Doc. 554-2 at 34-35. He explains that his results show

that the fuel-to-air ratio was well above the UFL despite the absence of the FMD. He thus concludes that the accused products do not satisfy the too-rich-to-combust claim requirement because the accused products "tested with spout on and no FMD under the parameters disclosed by [Plaintiffs] already had fuel-to-air ratios well above the 7.6% UFL near the neck of the can where an FMD would be." *Id.* at 37.

Roby and Stevick take different testing approaches. And each attacks the other expert's tests as flawed and inconsistent with the claim language. *See, e.g.*, Doc. 554-2 at 37-49 (criticizing Roby's testing); Doc. 604-2 at 6-27 (criticizing Stevick's testing). This is the quintessential "battle of the experts." Each supports his own testing and reasoning while simultaneously criticizing the other's. If Stevick is believed, the accused products do not read on the asserted claims. If Roby is believed, they do. There are genuine issues of material fact that preclude summary judgment on claim coverage/noninfringement. The Court denies summary judgment.

## VI.    PREDICATE INVALIDITY ISSUES

The Court now turns four predicate issues underlying the more traditional invalidity arguments. Plaintiffs seek summary judgment on the following issues: (1) Stevick's invalidity report includes a 35 U.S.C. § 102(g)(2) contention about Damon Johnston that Defendants never disclosed, (2) Stevick's invalidity report includes information about the Blitz Flame Arrester (product) that Defendants never disclosed in their invalidity contentions, (3) the Blitz Flame Arrester (product) does not qualify as prior art, and (4) statutory estoppel for the '132 Patent applies to cumulative prior art products. The Court addresses each below.

### A.    35 U.S.C. § 102(g)(2) Disclosure

The first issue is whether Defendants properly disclosed their 35 U.S.C. § 102(g)(2) invalidity contention under this District's Patent Local Rules. One reason the District of Kansas

adopted patent local rules in 2017 was to streamline patent litigation and provide predictability to involved parties. The rules achieve those objectives by requiring parties to provide adequate notice of their positions and to adhere to those positions once disclosed. *See LoganTree LP v. Garmin Int'l, Inc.*, 2021 WL 5998293, at *7 (D. Kan. 2021).

D. Kan. Pat. Rule 3.3(a) requires a party opposing a claim of patent infringement to serve invalidity contentions containing certain information. Rule 3.3(a)(1) states that a party "must identify 35 U.S.C. § 102(g) prior art by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s)." Rule 3.5(b) states that contentions may be amended "only by order of the court upon a timely showing of good cause." It thus seems axiomatic that a party may not use an expert report to introduce a new invalidity theory given the purpose behind the patent local rules and the wording of these specific rules.

Plaintiffs contend that Stevick's expert report includes a 35 U.S.C. § 102(g)(2) defense based on Johnston being a prior inventor even though Defendants did not disclose this contention in their July 2020 invalidity contentions. Plaintiffs seek a summary judgment ruling that this invalidity contention was not properly disclosed and cannot be presented at trial. Defendants contend that they did disclose this contention as an alternative to their 35 U.S.C. § 102(f) contention and, regardless, there is no prejudice because the parties conducted extensive discovery on Johnston.[9] The Court finds that Defendants did not disclose this § 102(g)(2) contention in their July 2020 invalidity contentions, that there is prejudice to allowing its introduction at this stage, and that Plaintiffs are entitled to summary judgment on this issue.

---

[9]   Plaintiffs initially raised this issue in a motion to strike before the magistrate judge, and the parties fully briefed the issue. Docs. 507, 508, 515, and 520. The magistrate judge determined it was an issue for the district court and denied the motion. Docs. 524 and 527. The magistrate judge did not substantively resolve this issue. And both parties agreed at the January 24 hearing that the issue was properly before this Court for resolution.

Defendants served invalidity contentions that span 96 pages excluding claim charts. Page 90 includes the following header: "Derivation under 35 U.S.C. § 102(f) or 102(g) (pre-AIA) (or relevant provisions under the AIA, as appropriate)." Doc. 541-25 at 90 (changing capitalization for readability). This header is then followed by a single paragraph. The single paragraph does not cite to other sections of the invalidity contentions or refer to any claim chart.

The paragraph starts by stating that "[t]he '075 and '132 Patents are invalid under 35 U.S.C. § 102 because Tom Cray derived the subject matter claimed in the Asserted Patents from the American Society for Testing and Materials ('ASTM')." Doc. 541-25 at 90. The paragraph then discloses that Dr. Lori Hasselbring was an ASTM member who performed a study and concluded that a flame arrester in the opening of a gas container would have likely prevented an explosion that injured a young boy. She presented her findings in November 2006 to the FMD Task Group F15:10 of ASTM ("ASTM F15:10"). The ASTM F15:10 group then engaged Worcester Polytechnic Institute ("WPI") to perform a study "on flame arresters provided by different manufacturers in order to identify the optimal designs for flame arresters to prevent flame propagation in the pour spout." *Id.* The study also noted "that tests would be conducted at a range of pour spout angles, given that the UFL . . . is sensitive to pour angle." *Id.* The paragraph then notes that the ASTM F15:10 group included "manufacturers such as Midwest Can, Blitz, Scepter, and No Spill, and industry researchers like [Stevick]" and that "members regularly circulated information such as analyses and studies of flame arresters and their designs." *Id.* at 90-91. The paragraph concludes by noting that Cray became a voting committee member of ASTM F15:10 in June 2010 (almost two years before the effective priority date) and that Cray "did not close to the Examiner any of the work by ASTM or WPI on its behalf, nor any of the studies circulated among the ASTM F15:10 committee members" nor "did [Cray] disclose that the work of [Stevick], Brian

Elias, and other ASTM members contributed to the conception of the '075 and '132 Patents." *Id.* at 91.

The header mentions both § 102(f) and § 102(g). The Court is mindful of the differences between these two invalidity theories. Section 102(f) was eliminated by the AIA but previously stated that a person could not get a patent if "he did not himself invent the subject matter sought to be patented." This statute allowed someone to challenge the validity of a patent if the patent named as an inventor a person who did not actually invent the claimed subject matter but <u>derived</u> the invention from someone else. Section 102(g)(2) also was eliminated by the AIA but the pre-AIA version still applies in certain circumstances. It states that a person cannot get a patent if "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2) (2002). This statute allows someone to challenge the validity of a patent when the "invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1021, 1035 (Fed. Cir. 2011) (citation omitted).

The header cites both § 102(f) and § 102(g). But the Court finds the body of the paragraph does not disclose a § 102(g)(2) contention about Johnston. Johnston is not identified as required by Rule 3.3(a). *See also Verinata Health Inc. v. Sequenom, Inc.*, 2014 WL 4100638, at *3-4 (N.D. Cal. 2014) (striking 102(g) theory from expert report under similar patent rules because "Sequenom was at the very least required to identify Dr. Gao by name in its invalidity contentions, but failed to do so"). The paragraph also never identifies a particular prior art device or prototype as "the invention." *See* D. Kan. Pat. Rule 3.3(a) (stating that the disclosure must state "the circumstances surrounding the making of <u>the invention</u> before the patent applicant(s)" (emphasis added)). It discloses that the ASTM F15:10 group was working with and testing several different

devices but never identifies "the invention." And Defendants never moved to amend this contention to identify Johnston or the invention. These shortcomings are unsurprising because the thrust of this contention is a § 102(f) derivation theory about the ASTM F15:10 committee and not a § 102(g) prior invention theory about Johnston. D. Kan. Pat. Rule 3.3(a)(1) ("The party must identify 35 U.S.C. § 102(f) prior art by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was <u>derived</u>." (emphasis added)). The paragraph starts by stating that Cray did not "derive" the subject matter. It then goes on to disclose in general terms the study proposal and the communications between ASTM F15:10 members. And it concludes with a statement that others "contributed to the conception." These statements are directed to the ASTM F15:10 members and § 102(f).

Defendants seek to avoid this outcome. Defendants initially contend that their invalidity contention identifies § 102(g) as an alternative theory to their § 102(f) theory. The invalidity contention does not expressly state that § 102(g) is an alternative theory. It does not state when the § 102(g) theory would go from being an alternative theory to the principal theory. And it simply does not disclose a § 102(g) theory about Johnston or his invention for the reasons discussed above. Defendants next contend that this contention should be read in conjunction with other portions of their invalidity contentions that identify Blitz and the Daniels provisional patent application because Johnston is named as an inventor on that provisional. Johnston's name <u>does not appear</u> in the 96-page disclosure.[10] And the single-paragraph contention that is at issue does not expressly cite to any other portion of the invalidity contentions. So this argument simply shifts responsibilities under the patent local rules. It is Defendants' responsibility to identify their invalidity positions, which for § 102(g) includes identifying a name and the invention. It is not

---

[10] It also does not appear on the cover of the Daniels provisional patent application submitted to chambers.

Plaintiffs' responsibility (nor the Court's) to cobble together potential or alternative theories about a person (whose name never appears) and an unidentified invention from stray references scattered throughout a 96-page disclosure. Defendants next argue that their interrogatory responses informed Plaintiffs of this § 102(g) theory. Putting aside that amendment through an interrogatory response on the last day of discovery is not the equivalent of timely seeking leave to amend invalidity contentions, this argument misstates the content of the interrogatory response. Defendants supplemented their interrogatory response on the last day of discovery and stated: "Mr. Johnston contributed to the conception of the asserted claims in this case, and those claims are invalid for failure to add Mr. Johnston as a named inventor." Doc. 509-3. This supplement identifies Mr. Johnston but not the invention. And it again sounds in derivation under § 102(f), not prior inventorship under § 102(g). None of these arguments convince the Court that Defendants disclosed a § 102(g) theory about Johnston being a prior inventor before Stevick's report.

Defendants' final argument is that Plaintiffs are not prejudiced by inclusion of this theory because of the volume of discovery about Johnston. The Court again disagrees. The Court disagrees in principle because this argument allows Defendants to avoid their obligations under the patent local rules based on discovery efforts, which potentially renders the patent local rules a nullity. The Court disagrees in fact because Plaintiffs have identified several additional areas of discovery that they would have pursued had Defendants disclosed this theory earlier. Plaintiffs are not required to rely on Defendants' representations that further discovery would not yield anything more. Overarchingly accepting this argument would mean that Plaintiffs were expected to glean from the one-paragraph disclosure that un-named Johnston was the alleged prior inventor and then also divine from the discovery which of the devices or prototypes being tested by the ASTM

F15:10 group was his invention. This outcome neither complies with the patent rules nor notions of fair play.

The Court realizes that this ruling potentially removes a powerful theory from being presented to the jury. This is unfortunate and could have been avoided by compliance with the rules. But the Court agrees with Plaintiffs that Defendant did not disclose a § 102(g)(2) theory based on Johnston being a prior inventor and that inclusion of this theory at this time prejudices Plaintiffs and is simply unfair. The Court grants summary judgment to Plaintiffs and rules that Defendants will not be allowed to present at trial a § 102(g)(2) theory based on Johnston.

**B.    Blitz Flame Arrester (product) Disclosure**

The next issue concerns the discrepancy between Defendants' disclosure in their invalidity contentions about the Blitz Flame Arrester product and Stevick's disclosure in his expert report about this product. Plaintiffs contend that Stevick's report inappropriately expands the disclosure on this product while Defendants contend that Stevick merely identifies other information learned during discovery that supports their stated contention.

This disclosure issue is different than the preceding one because the parties agree that Defendants did disclose the Blitz Flame Arrester product as an invalidating prior art product for all asserted claims in their July 2020 invalidity contentions. They disagree on the extent of the disclosure. Plaintiffs contend that Defendants never produced a physical product and are therefore limited to Image 1, which is an image disclosed in the invalidity contentions. Doc. 549 at 42. Defendants contend that they are not limited to Image 1 because their invalidity contentions expressly disclose additional references. Doc. 566-1 at 40.

The Court addressed this issue with the parties at the January 24 hearing. Each side is a little wrong and a little right. Plaintiff is wrong (and Defendant is right) about the necessity of a

physical product. This contention is not foreclosed because Defendants did not produce a physical product. They are also wrong to argue that Defendants are limited to Image 1. The invalidity contentions disclose the Blitz Flame Arrester product and attach a claim chart for each patent. *See* Doc. 541-25 at 28-30, 56-57; *see also* Docs. 541-22; 541-23; 567-14. The disclosure itself then states that "[v]arious references disclose the design and functionality of the Blitz Flame Arrester, including presentation from WPI to ATSM and [the Daniels provisional]." Doc. 541-25 at 29, 56. The attached claim charts then include Image 1 as well as citations to other documents. This is all fair game for use at trial to the extent it describes Image 1. Also seemingly fair is testimony and evidence procured during discovery about the Blitz Flame Arrester product disclosed in Image 1. This might include testimony about the WPI presentations or testimony from Mark Daniels and Johnston about the Daniels provisional as it relates to Image 1. Plaintiff is right (and Defendant is wrong) that the disclosure in the invalidity contentions opens a panoply of concept designs and earlier or different embodiments. It is not fair for Defendants to present evidence about concepts and embodiments that are not Image 1 even if disclosed in one of the referenced documents. This would allow Defendants to avoid the structure and confines of the patent local rules by bringing in additional (undisclosed) products.

The Court would like to provide further clarity, but the briefing before it does not allow for more precision. The briefing does not cite targeted case law on the scope of evidence allowed for a prior art product disclosed in invalidity contentions. The Court therefore can only offer the guidance it gave at the January 24 hearing and resolve ensuing disputes as they arise in subsequent motions or objections based on the case law provided at that time. Defendants disclosed a product that is shown in Image 1. They are limited to that product and evidence discussing that product. But discovery exists for a reason, and they should be allowed to use evidence gained during

discovery that is correlated to and supports their disclosed contention for the product shown in Image 1. Plaintiffs are too narrow. Defendants (particularly through Stevick) are too broad. The Court denies summary judgment on this issue.

### C.    Blitz Flame Arrester (product) as Prior Art

The next issue again involves the Blitz Flame Arrester product and whether it was in public use, on sale, or otherwise available to the public under 35 U.S.C. § 102. Section 102(a) (or pre-AIA § 102(a) and (b)) outlines the categories of prior art that are used to determine whether a claimed invention is novel. It states that a person shall be entitled to a patent unless "the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." Plaintiffs contend that the Blitz Flame Arrester product does not satisfy this criterion while Defendants contend it does.

The real dispute on this issue appears to be whether the Blitz Flame Arrester product was in public use before the critical date. The public use bar applies when (1) the product is the subject of a public use, and (2) the invention is ready for patenting. *See Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018) (internal quotation marks and citation omitted). Courts analyzing the public-use prong look to the nature of the activity that occurred in public, public access to and knowledge of the public use, and the existence of confidentiality obligations. *See Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013) (citation omitted).

Defendants contend that they can show public use. They explain that Blitz (the company) sent an FMD to WPI for testing in April 2012 and the results were published in 2012 to the ASTM F15:10 members. Defendants contend that presentations from WPI to the ASTM F15:10 members were public and disclosed the design and functionality of the Blitz Flame Arrester product. *See, e.g.*, Doc. 554-1 at 45. Defendants also argue that the characteristics of the Blitz product were

disclosed in the Daniels provisional, which was part of a public bankruptcy sale in the fall of 2012. And Stevick, who was an ASTM F15:10 member, states that he is aware of Blitz employees sharing details about the Blitz Flame Arrester directly with other ASTM members and specifically Plaintiffs. Plaintiffs respond that Defendants cannot show public use because presentations were not published and there were confidentiality agreements and other statements instructing members to "keep it to yourself." *See* Doc. 549 at 23-24. There are thus genuine disputes of material fact on this issue. And similar factual disputes infect the ready-for-patenting prong as well. *Compare* Doc. 554-1 at 62 ("[T]he ability of both designs to pass the ASTM flame test that does not use liquid fuel means that these FMDs operate (as designed) under the long established principle of the Davy miner lamp, such that any retention of fuel is an obvious and irrelevant side effect.") *with* Doc. 549 at 51 (arguing neither a butane test nor Johnston's oral testimony about testing is sufficient to justify a finding of invalidity). The jury will have to resolve this issue. Summary judgment is not appropriate.

## D.     Statutory Estoppel

The last predicate issue concerns statutory estoppel under 35 U.S.C. § 315(e)(2). This statute relates to inter partes review ("IPR") proceedings. An IPR proceeding is a post-grant adversarial proceeding conducted by the Patent Trial and Appeal Board ("PTAB"). A person who is not the owner of a patent may petition to institute IPR to challenge the validity of a patent as either anticipated by prior art under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 but "only on the basis of prior art consisting of patents or printed publication." 35 U.S.C. § 311(b). If the PTAB institutes IPR, then it must issue a final written decision within a year (or eighteen months "for good cause shown") of institution. A significant consequence of an IPR proceeding is the

statutory estoppel that is triggered when the PTAB issues its final written decision. This statutory estoppel is codified in § 315(e)(2), which states:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

Defendants filed IPR petitions challenging the validity of both asserted patents. The PTAB denied IPR for the '075 Patent but instituted IPR for the '132 Patent. The IPR petition for the '132 Patent identified seven patents or printed publications. The PTAB later issued its Final Written Decision finding that none of the claims of the '132 Patent were unpatentable. Plaintiffs now seek to enforce statutory estoppel for the '132 Patent.[11]

Defendants (as required by Doc. 393) have narrowed to six references the prior art asserted against the '132 Patent: (1) Blitz Flame Arrester (product), (2) Protectoseal Flame Arrester (product), (3) United States Patent No. 1,814,656 ("Anschicks I"), (4) Justrite Flame Arrester (product); (5) Eagle Flame Arrestor (product), and (6) United States Patent No. 2,850,038 ("Frost US 083"). Defendants assert four invalidity theories based on these prior art references, and the primary reference for each theory is a product. *See* Doc. 554-1 at 10. Stevick's invalidity report includes results for tests he performed on three of these products to support his invalidity opinions (Protectoseal, Justrite, and Eagle). *See id.* at 38-42. Stevick claims that the tests he performed on these three products were done in accordance with testing parameters Plaintiffs supplied for practicing the claimed invention during discovery in this case and demonstrate these three prior art products read on the asserted claims. *Id.*

---

[11]    Plaintiffs conceded at the January 24 hearing that statutory estoppel does not apply to the '075 Patent as the PTAB denied IPR. *See* 35 U.S.C. § 315(e)(2).

The parties do not dispute that Defendants could not have raised these prior art products during IPR. But Plaintiffs contend statutory estoppel applies to three of these products (Protectoseal, Justrite, and Eagle) because each product is <u>cumulative</u> of a patent or printed publication that was asserted during IPR. Doc. 549 at 37-41. Defendants disagree and point to the text of the statute. Neither the Supreme Court nor the Federal Circuit has squarely addressed this statutory-interpretation issue, and district courts grappling with it have come to different conclusions.

The Court therefore starts with the statutory language. Section 315(e)(2) applies on a claim-by-claim basis and bars the petitioner from asserting in a civil action "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). Section 311 states that a petitioner "in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and <u>only</u> on the basis of prior art consisting of patents or printed publications." *Id.* at § 311(b) (emphasis added). Neither statute defines "ground." But courts have interpreted "ground" in this context to mean the "specific pieces of prior art that are the basis or bases on which a petitioner challenges a claim." *Medline Indust. v. C.R. Bard, Inc.*, 2020 WL 5512132, at * 3-4 (N.D. Ill. 2020) (internal quotation and citation omitted). Reading these together yields the conclusion that statutory estoppel does not apply to a prior art product a petitioner relies on in subsequent litigation even if the product is cumulative because a petitioner reasonably could <u>not</u> have raised the prior art product during IPR. The upshot is that statutory estoppel under § 315(e)(2) does not apply to the three prior art products Defendants are relying on.[12]

---

[12]    Even if the statute extended to cumulative products, the Court finds that the three products are not cumulative. As noted above, Stevick's opening invalidity reports relies on test results from tests he performed during this litigation based on testing parameters Plaintiffs supplied during discovery for determining infringement. At a minimum, the testing parameters and test results were not available during IPR.

Plaintiffs point to several cases where courts extended statutory estoppel to prior art products that were cumulative of patents and publications offered during IPR based on a broader reading of "ground." Doc. 549 at 35-41; *see also Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 n.6 (D. Del. 2020) (citing cases). Plaintiffs urge the Court to follow these cases and contend that these decisions are consistent with Congress's purpose for the IPR process. But absent further guidance from a higher court, this Court will stick to the statutory language and the cases that do not stretch the meaning of "ground" so far. As the court in *Chemours Co. FC, LLC v. Daikin Industries Ltd.*, 2022 WL 2643517, at *2 (D. Del. 2022), adeptly noted:

> The statute at issue was the product of considered debate and careful thought. Congress could have broadened the categories of prior art on which IPR could be requested. Congress could have dictated that estoppel applies to products covered by the paper art underlying the IPR where the paper art discloses the same claim limitations as the product. But Congress did not do so. Adhering to well-accepted canons of construction, it is not for this Court to ignore Congress's omission and create additional bases for estoppel.

The Court denies summary judgment to Plaintiffs on this issue.[13]

## VII.    ANTICIPATION/OBVIOUSNESS

Having resolved the predicate issues, the Court now turns to the more traditional invalidity challenges. Both summary-judgment motions seek some ruling about anticipation or obviousness. Plaintiffs seek summary judgment that the claims in both patents are valid. Defendants are more limited and seek summary judgment that the asserted claims in the '132 Patent are invalid as

---

[13]    Plaintiffs' reply mentions collateral estoppel. Collateral estoppel and statutory estoppel are not the same. Collateral estoppel stems from common law and applies when certain factors are satisfied. Under Federal Circuit case law, it seems that collateral estoppel does not apply to PTAB decisions until the final written decision is resolved on appeal. *See Pers. Audio LLC v. CBS Corp.*, 946 F.3d 1348, 1354 (Fed. Cir. 2020). The Federal Circuit did not resolve the appeal until mid-briefing in this case. Thus, this issue is not before the Court, and it is unclear from the discussion at the January 24 hearing whether it remains an issue in this case. *See* Final Pretrial Order, Doc. 525.

anticipated or rendered obvious by the Protectoseal Flame Arrester. The Court denies both motions.

Patents are presumed valid. A challenger must prove invalidity by clear and convincing evidence. *OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 710 F.3d 698, 704 (Fed. Cir. 2012). A patent claim is invalid as anticipated under 35 U.S.C. § 102 when the accused infringer shows that "each and every limitation is found either expressly or inherently in a single prior art reference." *ArcelorMittal France v. AK Steel Corp.*, 700 F.3d 1314, 1322 (Fed. Cir. 2012) (citation omitted). A patent claim is invalid as obvious under 35 U.S.C. § 103 when the invention "is not identically disclosed or described as set forth in section 102, [but] the differences between the claimed invention and the prior art are such that claimed invention as a whole would have been obvious" to a POSITA. *See also TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1357 (Fed. Cir. 2019) (quoting pre-AIA version of statute).

The Court starts with Plaintiffs' validity arguments for the '075 Patent. Defendants have identified these six items of prior art against the '075 Patent: (1) the Blitz Flame Arrester (product), (2) Justrite Flame Arrester (product), (3) Eagle Flame Arrestor (product), (4) Glen Stevick, et al., *Failure Analysis and Prevention of Fires and Explosions with Plastic Gasoline Containers*, J. Fail. Anal. & Preven., 455 (2011) ("Stevick II"), (5) G.B. Pat. No. 734674 ("Frost GB 674"), and (6) Brian Elias, *Hazard Assessment of Portable Gasoline Container Flammability*, Master Thesis, Worchester Polytechnic Institute, Digital WPI (2011) ("Elias").

Plaintiffs initially repeat the lack-of-public-use argument for the Blitz Flame Arrester product, which the Court already rejected because genuine issues of material fact exist. Doc. 549 at 52. Plaintiffs next generally argue that the remaining five pieces of prior art were either considered by the PTAB or are cumulative of art presented to the PTAB when it rejected institution

of IPR review for the '075 Patent. Plaintiffs recognize that IPR estoppel does not apply but contend that summary judgment is nonetheless appropriate because the PTAB rejected the arguments under a lower standard of proof (a reasonably likelihood of success for at least one claim by a preponderance of the evidence) than is applicable here (clear and convincing). *Id.* at 53-54. To accept this argument seems to circumvent the limitations on statutory estoppel and ignore the contrasting expert testimony offered by Stevick and Roby. The final argument is that Stevick's testing is flawed as outlined in Plaintiff's *Daubert* motion. But the Court rejects that argument as fully detailed in that opinion. The result is another battle of the experts, which precludes summary judgment.

The Court turns to the '132 Patent. Plaintiffs first contend that IPR estoppel precludes Defendants from relying on all their identified references except for the Blitz Flame Arrester product. *See supra* Part VI.D. (outlining Defendants' six references for the '132 Patent). The Court already rejected this argument. Plaintiffs next repeat the argument that the Blitz Flame Arrester product is not prior art because it was not in public use. This issue is not amenable to summary judgment because of the underlying factual disputes as discussed above. Plaintiffs fail to show that summary judgment is appropriate.

Defendants contend that summary judgment of invalidity for the '132 Patent is warranted based on the Protectoseal product. This issue again boils down to a battle of the experts and stems from the notion that a prior art product that infringes an asserted claim also invalidates that claim. As discussed above, Roby opines that the accused products infringe the asserted claims of the '132 Patent based on his "dipped" and "shake" tests. *See supra* Part V. Stevick then replicates Roby's "dipped" and "shake" tests on the prior art Protectoseal product as outlined in his reply invalidity report. Stevick explains that he replicated Roby's testing apparatus and ran tests on the accused

products and the Protectoseal product. His test results indicate that the "Protectoseal product performed exactly like the accused product did in [Roby's] test for infringement: failing to ignite in the 'dipped' test, and igniting in the 'shaken' test." Doc. 604-4 at 15. Stevick then concludes that the asserted claims are invalid because "the accused products and the Protectoseal prior art perform the same under tests and parameters provided by Plaintiffs and [Roby] for infringement." *Id.*[14]

Roby unsurprisingly takes issue with Stevick's testing and submitted a sur-reply report outlining various criticisms and performing his own testing on Protectoseal. Doc. 534-11. He completed the dipped test and "each time after the Protectoseal flame arrestor was submerged in fresh 87 octane gasoline and promptly thereafter exposed to the spark . . . the Protectoseal flame arrestor burst into flame." *Id.* at 5-6. He concludes that his testing "proves that the Protectoseal flame arrestor does not use retained liquid gasoline to prevent the propagation of a flame." *Id.* at 6.

Two experts with tests and results and different outcomes. The differing conclusions of Stevick and Roby create a genuine issue of material fact over whether the '132 Patent is invalid. A jury will need to evaluate the strengths and weaknesses of each of their methodologies and decide who to believe. If Stevick is believed, the asserted claims of the '132 Patent are invalid. If Roby is believed, they are not. Summary judgment is not appropriate.

## VIII. CONCLUSION

This is an interesting case with several challenging issues and a voluminous record. The parties did a nice job briefing the issues and presenting their positions. The Court determines that

---

[14] The Court finds no merit in Defendants' argument that Plaintiffs should be estopped from challenging Stevick's testing methodology or his spark tool. How much spark energy should be used for testing is a matter of cross-examination. Likewise, whether the amount of spark energy matters or whether it is irrelevant because the tests are comparable is for the jury to decide.

the asserted claims are directed to patent-eligible subject matter and satisfy the definiteness requirement. The Court also determines that Defendants failed to timely disclose their 35 U.S.C. § 102(g) defense based on the alleged prior invention by Damon Johnston. The Court grants summary judgment on these issues and denies the rest of the motions. The Court and the parties can move forward preparing for trial.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 533) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for leave to file a surreply (Doc. 597) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (Doc. 539) is DENIED IN PART AND GRANTED IN PART.

IT IS FURTHER ORDERED that Defendants' motions to strike (Docs. 621 and 622) are DENIED.

IT IS SO ORDERED.

Dated: February 2, 2023                    /s/  *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE