## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NO SPILL, LLC and TC CONSULTING, INC.,**

       **Plaintiffs,**

       **v.**

**SCEPTER CANADA, INC. and SCEPTER MANUFACTURING,**

       **Defendants.**

**Case No. 2:18-cv-02681-HLT**

## ORDER

This is a patent case about flame mitigation devices ("FMDs") in portable fuel containers. Plaintiffs allege that Defendants' fuel containers literally infringe (either directly or indirectly) various claims of their two related United States Patents: 9,174,075 and 10,029,132. Defendants contend that the accused products do not infringe the asserted claims and that the asserted claims are invalid. The jury returned a status-quo verdict (all asserted claims valid; no asserted claims infringed) in this four-year-old case after a weeklong trial.

Plaintiffs now seek judgment as a matter of law and a new trial. Doc. 738. Plaintiffs contend that infringement was clear and that there was no relevant evidence to the contrary. Plaintiffs also argue that Defendants made irrelevant and improper arguments to the jury that mandate a new trial. The Court disagrees. There is a legally sufficient evidentiary basis for the no-infringement verdict. And the issues about which Plaintiffs complain do not constitute prejudicial error or warrant a new trial. The Court denies Plaintiffs' motion (Doc. 738), denies without prejudice Defendants' conditional motion (Doc. 740), and denies the motion for surreply (Doc. 753).

## I.      BACKGROUND

This litigation spans four years, hundreds of docket entries, and thousands of pages. This background is a summary to provide context. Plaintiffs[1] are the owner by assignment of the asserted patents. The '075 Patent is the parent, and the '132 Patent is a continuation. Thomas M. Cray is the sole inventor on both patents, and both patents are titled "Explosion inhibiting portable fuel container and method of inhibiting explosions." Claim 12 of the '075 Patent is a representative claim and states:

> A fuel container comprising:
>
> a hollow tank body defining a fuel-receiving chamber and a main container opening for permitting flow of a liquid fuel into and out of the fuel-receiving chamber;
> a fuel dispensing assembly coupled to the tank body proximate the main container opening and configured to dispense the liquid fuel from the container; and
> a fuel retention structure located proximate the main container opening and extending generally downwardly into the fuel-receiving chamber,
> wherein the fuel retention structure comprises a plurality of perforations through which the liquid fuel is required to flow in order to dispense the liquid fuel from the container,
> wherein the perforations are configured in a manner such that after the liquid fuel has been dispensed from the container and the fuel retention structure is no longer submerged in the liquid fuel, a quantity of the liquid fuel is retained in the perforations,
> wherein the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture within the fuel retention structure that is too rich to support combustion,
> wherein the retained quantity of the liquid fuel is held in the perforations by intermolecular forces, wherein the intermolecular forces are sufficient to retain the quantity of liquid fuel in the perforations regardless of the orientation of the portable fuel container.

---

[1]    The Court refers to Plaintiffs and Defendants collectively for ease and readability unless specific identification of a party is necessary.

Plaintiffs sued Defendants in December 2018 for patent infringement. The parties engaged in some initial motion practice and then progressed to claim construction. The parties disputed several terms, but the central dispute was Defendants' indefiniteness challenge to the "too-rich-to-support-combustion" claim elements. Plaintiffs argued that these elements did not require construction but alternatively provided a construction. Defendants argued the terms were indefinite. Both parties argued about the intrinsic and extrinsic evidence. The intrinsic record included a discussion of the prosecution history and a declaration provided by Cray during prosecution that outlined the three-step Cray test (submerge, remove, insert and activate a spark generator) to traverse an invalidity rejection. The extrinsic evidence included expert declarations from Dr. Richard Roby (Plaintiffs' expert) and Dr. Glen Stevick (Defendants' expert). The Court ultimately sided with Plaintiffs, rejected the indefiniteness challenge after tracing the claim language, specification, prosecution history, and extrinsic evidence, and construed the "too-rich-to-support-combustion" claim element in claim 12 to mean "retained quantity of the liquid fuel is sufficient to provide a fuel vapor-air mixture within the fuel retention structure that is above the upper flammability limit."[2] The parties refer to the "upper flammability limit" as "UFL." The 18-page claim construction order then includes the following passage, which is relevant to the instant motion:

> Read in its entirety, the applicant submitted these materials to demonstrate three points: (1) the cited prior art required wires to absorb and dissipate heat, (2) the claimed invention operated differently by retaining a sufficient amount of fuel to provide a fuel-air mixture too rich to support combustion, and (3) the prior art devices do not operate like the claimed invention. It is true that the three-step test is one test that could be performed to determine whether a structure is a device that retains enough liquid fuel to provide a fuel-air mixture that is above the UFL. But this test is a

---

[2]   The construction of these elements for claim 1 of the '075 Patent and claim 17 of the '132 Patent is "retained quantity of the liquid fuel is sufficient to provide a fuel vapor-air mixture proximate to the main container opening that is above the upper flammability limit."

> demonstration that was offered to distinguish the prior art devices because they did not achieve a fuel-air mixture that was too rich to combust. It did not limit the claims to this test, render this test the only test for determining infringement, or disclaim other tests. Defendants' argument to the contrary makes too much of the response and these materials.

Doc. 257 at 9.

The parties then moved to infringement and validity. The parties exchanged infringement expert reports. Roby submitted a June 2022 opening infringement report. Doc. 572-3. He outlined his infringement opinions and explained his "dipped" and "shake" tests and his "spark" test and concluded that Defendants' FMD satisfied the "too-rich-to-support-combustion" claim elements. *See, e.g.*, *id.* at 35-36 and 47-48. Stevick responded with a July 2022 report. Doc. 554-2. He identified various flaws with Roby's testing. *Id.* at 37-47. He stated that "[p]erhaps the most glaring error . . . is that he only tests freestanding flame arresters outside of a gas can." *Id.* at 38. Stevick further noted that "it would be clear to a person of ordinary skill in the art that any test for infringement must occur inside a gas can, and that any test, like [Roby's], that does not occur in a gas can would be irrelevant to determining infringement." *Id.* He also challenged Roby's spark energy. *Id.* at 39-43. And Stevick performed his own testing based on Plaintiffs' response to Interrogatory No. 26 ("the headspace test") and opined that the accused products did not infringe. *Id.* at 34-37.

Next was summary judgment and *Daubert* motions. Plaintiffs moved to exclude Stevick's headspace test because it lacks a nexus to the asserted claims and was inconsistent with the *Markman* order. The Court denied the motion. Doc. 636. The Court stated that Stevick performed the headspace test based on parameters provided by Plaintiffs in response to Interrogatory No. 26. The Court also agreed with Defendants that the *Markman* order did not limit the claims to the three-step Cray test. *Id.* at 5. The Court next rejected each side's summary judgment motion on

infringement/claim coverage. Doc. 637. The Court described Roby's dipped and shake tests as well as Stevick's tests that were based on Plaintiffs' response to Interrogatory No. 26. The Court then explained:

> Roby and Stevick take different testing approaches. And each attacks the other expert's tests as flawed and inconsistent with the claim language. *See, e.g.*, Doc. 554-2 at 37-49 (criticizing Roby's testing); Doc. 604-2 at 6-27 (criticizing Stevick's testing). This is the quintessential "battle of the experts." Each supports his own testing and reasoning while simultaneously criticizing the other's. If Stevick is believed, the accused products do not read on the asserted claims. If Roby is believed, they do. There are genuine issues of material fact that preclude summary judgment on claim coverage/noninfringement. The Court denies summary judgment.

*Id.* at 10.

Trial started in March 2023 and lasted six days. Plaintiffs alleged at trial that Defendants infringed either directly or indirectly (active inducement) claims 1, 4, 8, 13, and 17 of the '075 Patent and claims 1, 9, 14, 17, and 18 of the '132 Patent. Doc. 711. Plaintiffs called Roby to support their infringement and validity contentions. Defendants denied infringement and alleged that all asserted claims were invalid. Defendants called Stevick to support their positions. The jury returned a verdict that found all claims valid and not infringed. Plaintiffs now seek Rule 50 and Rule 59 relief. Defendants seek conditional relief and leave to file a surreply to Plaintiffs' motion.

## II.   LEGAL STANDARDS

A Rule 50(b) motion for judgment as a matter of law ("JMOL") is "cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable men could not arrive at a contrary verdict." *Black v. M&W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) (internal quotation omitted). When the party with the burden of proof moves for JMOL, then the court may grant the motion "only where the movant has

established his case by evidence that the jury would not be at liberty to disbelieve." *Id.* (internal quotation and alteration omitted).

A motion for a new trial under Rule 59 is often filed alongside a Rule 50 motion. Rule 59 states that a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). A court may set aside the jury's verdict when it concludes "the verdict to be against the weight of the evidence" or "prejudicial error has entered the record." *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990).

## III.   ANALYSIS

Plaintiffs seek relief under Rule 50 and ask the Court to enter JMOL that: (1) Scepter Canada's direct sale of the military style containers in to the United States infringes claims 13 and 17 of the '075 Patent and claims 17 and 18 of the '132 Patent, and (2) all of the accused products are covered by claims 13 and 17 of the '075 Patent and claims 17 and 18 of the '132 Patent.[3] If JMOL is granted, Plaintiffs also ask the Court to grant a new trial on induced infringement by Scepter Canada under Rule 59. If JMOL is denied, Plaintiffs ask for a new trial on infringement for all claims.[4]

### A.   The Court Denies Plaintiffs' Motion for JMOL under Rule 50

Plaintiffs ask the Court to enter JMOL that Defendants' accused products infringe or are covered by at least claims 13 and 17 of the '075 Patent and claims 17 and 18 of the '132 Patent. This is a much narrower subset of claims than Plaintiffs presented at trial and the wording between

---

[3]    Plaintiffs identify claims 16 and 17 of the '132 Patent in their motion. Plaintiffs asserted claims 17 and 18 at trial. The Court assumes Plaintiffs mean claims 17 and 18. *Compare* Docs. 709 at 13 and Doc. 711 *with* Doc. 738 at 6 (seeking JMOL on claims 16 and 17 of '132 Patent), 7 (same), 12 (same), 13 (same), and 26 (same). JMOL or a new trial on a claim not presented at trial is not warranted.

[4]    The Court denies Defendants' motion to file a surreply. Plaintiffs do not raise new arguments in their reply and there are no other grounds warranting the requested relief.

the body of claims at trial and these claims have differences. Significantly, Plaintiffs bear the burden of proof on infringement and thus had the burden at trial to prove by a preponderance of the evidence that each limitation of the asserted claims reads on the accused products. Plaintiffs argue that the "too-rich-to-support-combustion" elements were the only elements disputed at trial and that the evidence irrefutably establishes that the accused products read on these claim elements.

Plaintiffs called Roby to testify about infringement. He testified about his dipped and shake testing. Roby testified that the FMD in the accused products reads on these claim elements because combustion did not occur when the inside of the FMD was exposed to an ignition source in the dipped test but did occur when exposed to an ignition source in the shake test. *See* Doc. 728 at 76 (discussing dipped test and explaining that the accused FMD "did not ignite" and "[i]t retained enough gasoline that we were outside the rich flammability limit and it did not ignite"); *id.* at 77 (narrating video of dipped test); *id.* at 78 (explaining theory and results of the shake test); *id.* at 79 (narrating video of the shake test); *id.* 84 (relying on "all of those spark experiments with the dip to show that these holes maintained enough gasoline that you couldn't ignite it" when asked about the claim element concerning "the retained quantity of the liquid fuel is sufficient to provide a fuel-air mixture . . . that is too rich to support combustion" in claim 1 of the '075 Patent); and *id.* at 89-90 (again relying on dipped testing for claim 12 of the '075 Patent).

Defendants cross-examined Roby. Defendants confirmed that Roby had not "tipped or inverted" any of these cans to determine how much fuel was retained in the FMD, had not dispensed fuel from the container and then checked whether it passed the dipped test (*id.* at 116), had not tested any FMD with diesel or kerosene, and had not measured how much gasoline came off the FMD during the shake test. Defendants later called Stevick to testify. Stevick criticized

Roby's dipped and shake testing for being outside the can. Doc. 730 at 34-39. He also criticized Roby's testing for using too low of a spark energy. Stevick testified that "[s]o in all the cases that Dr. Roby tested, if you used the butane flame, they all would have lit, every single one." *Id.* at 38. He also concluded that "testing with a spark is really nonsensical" because "[y]ou really have to use a Bic lighter and a flame to have a realistic test." *Id.* at 44; *see generally id.* at 39-44 (discussing spark energy). Stevick then discussed a test he designed to replicate Roby's testing but utilizing a variable range. He testified that the FMD in the accused products would light in his testing and concluded that accused products did not infringe "because you can always go to an energy high enough to get it to ignite . . . ." *Id.* at 46; *see also id.* at 47.

Stevick also testified about other criticisms of Roby's testing and other testing he performed to support his noninfringement opinions. *See, e.g., id.* at 49-59. The Court presided over the trial, heard the evidence as it came in, and reviewed the evidentiary record in resolving this motion. There is a sufficient evidentiary basis to support the jury's finding of no infringement. There is evidence from which the jury was entitled to find that Plaintiffs had not proved infringement/claim coverage or to find that Roby was not a credible witness (or both). Defendants criticized Roby's testing during cross-examination. Stevick also criticized Roby's testing[5] and offered the results of his own testing to show no infringement. The jury's no-infringement verdict has evidentiary support, and Plaintiffs have not established infringement by evidence that the jury would not be at liberty to disbelieve.

---

[5]    Plaintiffs argue that Stevick's criticisms of the spark energy is *ipse dixit* and unsupported. Roby relied on peer-reviewed literature by Lewis & Von Elbe to support his testimony that 4 millijoules was the minimum energy necessary to test whether a gasoline-vapor mixture was above the UFL. Plaintiffs did not introduce Lewis & Von Elbe into evidence and instead used a graph from the treatise on a demonstrative slide. Stevick testified that Roby's spark energy was too low and that 2,000 times more energy was necessary to perform a valid test. He clarified that the graph from which Roby extrapolated his spark energy was only a fraction of the overall flammability curve and why that was problematic. The jury was free to weigh the credibility of Roby's and Stevick's testimony on this issue. Plaintiffs also attack Stevick as basing his opinions on methane. Again, Stevick explained that testimony to the jury, and the jury could determine credibility.

Plaintiffs seek to avoid this outcome by arguing that irrefutable scientific evidence mandates JMOL because the FMD retained 5.69 milliliters of gasoline and had an internal volume of 87 cubic centimeters and it is "beyond peradventure" that this amount is above the UFL. This is neither the evidence nor explanation that Plaintiffs or Roby advanced at trial for the "too-rich-to-support-combustion" elements. Roby did testify that the FMD retained 5.69 milliliters of liquid gasoline when removed from the liquid gasoline after being submerged and that it had an internal volume of 87 cubic centimeters. But Roby used this evidence to support other claim elements. *See, e.g.*, Doc. 728 at 84 (referring to 5.69 milliliters when discussing the claim element requiring the fuel retention structure be configured to "retain a quantity of the liquid fuel in the chamber" when tipped or inverted). The record suggests that Plaintiffs and Roby made a strategic decision based on the totality of the claims and issues to rely on the dipped and shake tests to argue that the accused products read on the too-rich-to-support-combustion claim limitation. *Id.* (referring to "all of those spark experiments with the dip to show that these holes maintained enough gasoline that you couldn't ignite it" to establish the too-rich-to-support-combustion elements).

This conclusion is bolstered by the citations Plaintiffs rely upon to support this argument. The citations are cobbled together from different portions of the record. Plaintiffs jump between witnesses to find support for discrete aspects of this argument. And Plaintiffs never identify a specific portion of the trial record that cogently advances this argument for this claim limitation. At best and with hindsight, Plaintiffs may have generically suggested this argument during their closing when discussing the factual overview of the evidence (first topic), but they again referred to Roby's testing when discussing infringement (third topic). *Compare* Doc. 731 at 63-64 and 73-74. The bottom line is that JMOL remains inappropriate. The Court did not understand Plaintiffs to make this specific argument for the too-rich-to-support-combustion elements during trial but,

even if they did, the jury heard it during closing arguments and rejected it, which the jury was entitled to do based on the undeveloped record on this point and the other record evidence. There is ample evidence supporting the jury's verdict of no-infringement. The Court denies the motion for JMOL.

**B.      The Court Denies Plaintiffs' Motion for a New Trial under Rule 59**

Plaintiffs alternatively ask for a new trial on infringement for all asserted claims because there was "palpable jury confusion" based on a mix of irrelevant and improper arguments. Plaintiffs focus on two perceived errors.

**1.    *Markman* Order**

Plaintiffs first contend prejudicial error occurred because Defendants and Stevick openly challenged the *Markman* order to the jury. Plaintiffs explain that the Court unambiguously ruled in its *Markman* order that the three-step Cray test[6] is a test that could be performed to show infringement and that Defendants and Stevick defied that ruling by arguing to the jury that Roby performed the wrong test. Plaintiffs rely on this portion of the *Markman* order:

> Read in its entirety, the applicant submitted these materials to demonstrate three points: (1) the cited prior art required wires to absorb and dissipate heat, (2) the claimed invention operated differently by retaining a sufficient amount of fuel to provide a fuel-air mixture too rich to support combustion, and (3) the prior art devices do not operate like the claimed invention. <u>It is true that the three-step test is one test that could be performed to determine whether a structure is a device that retains enough liquid fuel to provide a fuel-air mixture that is above the UFL.</u> But this test is a demonstration that was offered to distinguish the prior art devices because they did not achieve a fuel-air mixture that was too rich to combust. <u>It did not limit the claims to this test, render this test the only test for determining infringement, or disclaim other tests.</u> Defendants' argument to the contrary makes too much of the response and these materials.

---

[6]    Plaintiffs contend the dipped-test portion of Roby's infringement testing is the three-step Cray test.

Doc. 257 at 9 (emphasis added).

Plaintiffs overstate the *Markman* order and ignore the subsequent litigation history. This paragraph is a single paragraph in a four-year lawsuit that spans hundreds of docket entries and thousands of pages. The paragraph does not use the phrase "fuel retention structure" or "flash suppressor" or "flame mitigation device" even though the Court was fully aware of those terms. And Plaintiffs conveniently convert the penultimate sentence from a negative to a positive. Perhaps the Court could have worded this paragraph differently, but the overall context of the opinion makes clear that the Court <u>was</u> rejecting an indefiniteness challenge and construing the claims and <u>was not</u> protecting from reproach the three-step Cray test or Roby's tests when the claims (with different elements and limitations) and testing methodologies had yet to be crystalized.[7]

The case progressed, and Stevick articulated his criticisms of Roby's testing in his reports. *See* Doc. 554-2 at 38. The issue came up during *Daubert* when Plaintiffs challenged Stevick's headspace test.[8] The Court noted that his headspace test was based on parameters that <u>Plaintiffs</u> provided in response to an interrogatory. And the Court addressed Plaintiffs' arguments concerning the *Markman* order by stating:

> Plaintiffs likewise argue that Stevick's test is inconsistent with the claim construction order and claim language. The claim construction order is 18 pages and construes multiple terms. There is significant briefing and context underlying that order. Plaintiffs cite a portion where the Court is rejecting Defendants' claim construction argument that the applicant disclaimed any other test

---

[7]   The *Markman* order later compares this case to *Presidio Components, Inc. v. American Technical Ceramics, Corp.*, and quotes the Federal Circuit's comment that "even where the claims require a particular test result, there may be (and often are) disputes between the parties as to the proper application of the test methodology in the circumstances of an individual case" but that "those disputes are disputes about whether there is infringement, not disputes about whether the patent claims are indefinite." Doc. 257 at 11 (quoting *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1375-76 (Fed. Cir. 2017)).

[8]   Plaintiffs challenged Stevick's test, but not Stevick's criticism of Roby's test. *Compare* Doc. 537-1 at 19 (Plaintiffs' *Daubert* motion, summarizing Plaintiffs' request to exclude Opinions 1-4 and 6-9 of Stevick's June 2022 report, Opinion 1 of Stevick's July 2022 report, and Section 3.0 of Stevick's August 2022 report) *with* Doc. 554-2 at 37-49 (Stevick's July 2022 report discussing Opinion 2, which criticized Roby's testing).

for satisfying the "too-rich-to-combust" term. The order notes that the materials offered during prosecution outline a three-step test that is "one test that could be performed to determine whether a structure is a device that retains enough liquid fuel to provide a fuel-air mixture that is above the UFL." Doc. 257 at 9. But the order expressly recognizes that the three-step test "did not limit the claims to this test, render this test the only test for determining infringement, or disclaim other tests." *Id*. Defendants and Stevick thus correctly contend that the claim construction order did not limit the tests for infringement to only one test or claim-coverage approach. The claim construction order construes the disputed terms and rejects an indefiniteness argument. That is it. Defendants and Stevick also identify other language in the patent and the claims that they contend support Stevick's overall testing (and undermines Roby's). *See, e.g.*, Doc. 568 at 14-15.

Doc. 636 at 5. The Court then resolved summary judgment and expressed its view that this case is a classic battle of the experts wherein "[e]ach [expert] supports his own testing and reasoning while simultaneously criticizing the other's." Doc. 637 at 10 (emphasis added).

Plaintiffs did not seek relief from the Court after these rulings. They did not move to reopen discovery, supplement Roby's reports, modify infringement contentions, clarify this portion of the *Markman* order, preclude Defendants from criticizing Roby's testing based on the *Markman* order through a motion in limine, or continue the trial date. The parties instead proceeded to trial knowing it was a battle of the experts.

The issue came up at trial during the second day. Defendants criticized Roby's test as the wrong test to show infringement during opening statement. Doc. 725 at 192-193; 210-211. Plaintiffs did not immediately object but raised the issue the next day when they argued that "in your *Markman* order you had found that testing outside of the can was an okay way to test for infringement of the patent." Doc. 727 at 141. The Court responded that "I don't think I ever specifically approved of or disapproved of a specific test at any point." Doc. 727 at 142-144. And when further pressed on whether the Court had approved Roby's test as a viable method for testing for infringement, the Court responded that "[i]f it wasn't he wouldn't be allowed to present it." *Id.*

at 144. Trial continued. The Court denied Rule 50(a) motions.[9] The jury ultimately returned a no-infringement verdict.

The Court recognizes that Plaintiffs are disappointed with the jury's verdict on this issue. But the verdict is not against the weight of the evidence as discussed above, and Plaintiffs have not shown that prejudicial error has entered the record. The Court has a tremendous interest in its orders being followed and would have quickly acted had it thought a party was contravening its orders or findings. That did not occur here. The Court explained that it understood this case to be a battle of the experts and that each side would be criticizing the other expert's testing. The Court also did not modify or change its claim constructions; the constructions in the *Markman* order were used at trial. The Court does not discern prejudicial error or even error. The Court denies Plaintiffs' motion for a new trial based on this argument.

### 2.    Headspace Test

Plaintiffs next contend a new trial is warranted because Defendants presented improper testimony from Stevick on his headspace test that contradicts the Court's ruling on Defendants' eleventh-hour claim construction arguments. The Court disagrees. Plaintiffs challenged Stevick's headspace testing through a *Daubert* motion. The Court rejected that challenge in part because Stevick's headspace test was derived from parameters Plaintiffs provided in an interrogatory response that Plaintiffs served after the *Markman* order. Doc. 636 at 3-4. Thus, Stevick was allowed to present his headspace test at trial regardless of the late claim construction argument. The Court discerns no error in its *Daubert* ruling or in Stevick's trial testimony.[10] The Court also

---

[9]    In arguing against Defendants' Rule 50(a) motion, Plaintiffs noted that there "are disputed facts as to the propriety of tests" and there is a "battle of experts for the jury to resolve." Doc. 729 at 87.

[10]    There is some suggestion that Defendants improperly raised a utility defense. The Court finds that the stray comments during trial when read in context do not amount to Defendants asserting an improper defense.

rejected Defendants' late claim construction argument because it was not supported by the claim language or specification. *See* Doc. 731 at 20-24. The Court carefully reviewed this argument and discerns no grounds warranting a new trial. The Court denies the motion on this argument as well.

### C.    The Court Denies Defendants' Conditional Motion

The Court carefully reviewed Plaintiffs' motion and finds that Plaintiffs have not shown an entitlement to JMOL or a new trial. Defendants filed a conditional motion for a new trial. Because the Court denies Plaintiffs' motion on the merits, it denies without prejudice Defendants' conditional motion as moot.

## IV.    CONCLUSION

This has been a hard-fought and interesting case with many nuanced issues. The Court recognizes that the verdict is likely unsatisfying to all parties. But the jury's verdict is amply supported by the evidentiary record, and the Court finds no error or other basis warranting a new trial.

THE COURT THEREFORE ORDERS that Plaintiffs' combined motion (Doc. 738) is DENIED.

THE COURT FURTHER ORDERS that Defendants' conditional motion (Doc. 740) is DENIED WITHOUT PREJUDICE.

THE COURT FURTHER ORDERS that Defendants' motion for leave (Doc. 753) is DENIED.

IT IS SO ORDERED.

Dated: September 5, 2023            /s/ *Holly L. Teeter*
                                   HOLLY L. TEETER
                                   UNITED STATES DISTRICT JUDGE